1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   STEVEN B. SACKS, Cal. Bar No. 98875
3  ssacks@sheppardmullin.com
   MICHAEL M. LAUTER, Cal. Bar No. 246048
4  mlauter@sheppardmullin.com
   JACQUELINE A. GOTTLIEB, Cal. Bar No. 271844
5  jgottlieb@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
6  San Francisco, CA 94111-4109
   Telephone:    415-434-9100
7  Facsimile:    415-434-3947

8  Attorneys for Creditor
   MUFG UNION BANK, N.A.
9

10               UNITED STATES BANKRUPTCY COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13

14                                          Bk. No. 15-50801

15  In re                                   Chapter 11

16  ROBERT BROWER, SR.,                     **EX PARTE APPLICATION FOR
                                            ORDER UNDER BANKRUPTCY
17               Debtor.                     RULE 2004 COMPELLING
                                            EXAMINATION OF AND
18                                          PRODUCTION OF DOCUMENTS BY
                                            THE DEBTOR**

19

20

21

22

23

24

25

26

27

28

-1-

**TO: THE UNITED STATES BANKRUPTCY COURT:**

Creditor MUFG Union Bank, N.A. (the "Bank") hereby makes this Ex Parte Application ("Application") to the Court pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Local Rule 2004-1 for an order in the form attached hereto as <u>Exhibit B</u>: (i) requiring the above-captioned debtor, Robert S. Brower (the "Debtor"), to appear for examination at the offices Eller and River's counsel, Sheppard Mullin Richter & Hampton LLP, Four Embarcadero Center, 17th Floor, San Francisco, CA 94111 on July 27, 2015 at 9:00 a.m.; and (ii) requiring the Debtor to produce certain documents specified in <u>Exhibit A</u> hereto to the Bank's counsel on or before July 16, 2015.  In support of this Application, the Bank represents as follows:

Federal Rule of Bankruptcy Procedure 2004 permits the Court to order the "examination of any entity" with respect to the "property," "liabilities" and "financial condition" of the debtor and with respect to "any matter which may affect the administration of the debtor's estate, or the debtor's right to discharge."  Fed. R. Bankr. P. 2004.

As reflected in the Bank's proof of claim filed as Claim No. 7, the Debtor is indebted to the Bank in the amount of approximately $5,091,299.30 pursuant to an unsecured guaranty.  The Debtor's schedules of assets and liabilities reflect assets of $412,856.00, and liabilities of over $11 million, though approximately $6 million of those liabilities related to a guaranty by Brower of another loan by the Bank which has since been repaid in full.  Thus, the Bank's roughly $5 million claim makes up the large majority of the Debtor's creditor body, and the Debtor's asserted assets would repay only a very small portion of that debt.

As stated at the Debtor's 341 meeting, the Debtor asserts that he and his wife hold no community property, and that each of them instead holds all of their assets as separate property.  The Debtor asserts a number of assets listed on financial statements provided to the Bank to be the separate property of his wife.  The Bank wishes to examine Mr. Brower regarding the basis of that assertion, and also to determine whether there were any transfers of estate property that may be recovered as avoidance actions for the benefit of the estate.

SMRH:439102505.2

2004 APPLICATION – DEBTOR

In addition, the primary admitted asset of Brower's estate is his partial interest in Coastal Cypress Corporation, which recently closed a sale of its sole asset, real property in Carmel, CA. The Bank requests documentation of the value of Brower's interest, including without limitation a copy of the closing statement from the recent sale.

**WHEREFORE,** the Bank respectfully requests that an order be entered in the form attached hereto as <u>Exhibit B</u> compelling:

1.     The Debtor to appear for examination at the offices of the Bank's counsel, Sheppard Mullin Richter & Hampton LLP, Four Embarcadero Center, 17th Floor, San Francisco, CA 94111 on July 27, 2015 at 9:00 a.m.;

2.     The Debtor to produce the documents described and specified in <u>Exhibit A</u> attached hereto to the Bank's counsel at the law offices of Sheppard Mullin Richter & Hampton LLP, Four Embarcadero Center, 17th Floor, San Francisco, CA 94111 on or before July 16, 2015; and

3.     The Debtor to provide a custodian of records declaration authenticating all documents so produced.

Dated: June 25, 2015

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By         /s/ Michael M. Lauter
             MICHAEL M. LAUTER

Attorneys for MUFG UNION BANK, N.A.

# EXHIBIT A

## DEFINITIONS

For purposes of these requests for document production, the following words shall have the meaning indicated below, unless otherwise stated:

1.    "You," "your" or "Debtor" means Robert S. Brower, debtor and debtor-in-possession in the above-captioned bankruptcy case.

2.    "American Commercial Properties" means American Commercial Properties, Inc., a Nevada corporation. and its officers, directors, partners, agents, employees, representatives, investigators, accountants and attorneys, and any merged, consolidated or acquired corporation and its predecessor, parent, subsidiary, division or affiliate, and any person acting on its behalf.

3.    "Chateau Julien" means Chateau Julien Inc., a California corporation. and its officers, directors, partners, agents, employees, representatives, investigators, accountants and attorneys, and any merged, consolidated or acquired corporation and its predecessor, parent, subsidiary, division or affiliate, and any person acting on its behalf.

4.    "Coastal Cypress" means Coastal Cypress Corporation, a California corporation. and its officers, directors, partners, agents, employees, representatives, investigators, accountants and attorneys, and any merged, consolidated or acquired corporation and its predecessor, parent, subsidiary, division or affiliate, and any person acting on its behalf.

5.    "Patricia Brower" means Your wife, Patricia Brower.

6.    "Bank" means MUFG Union Bank, N.A. and any predecessor in interest, assignor, or transferor with regard to the loan and guaranty presently held by MUFG Union Bank, N.A. from Chateau Julien and You, including without limitation Santa Barbara Bank & Trust, N.A. f/k/a Pacific Capital Bank, N.A.

7.    "Transfer" is used as that term is defined under 11 U.S.C. § 101(54) – *i.e.*, "'transfer' means the creation of a lien; the retention of title as a security interest; the foreclosure of a debtor's equity of redemption; or each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property; or an interest in property."

8.    "Document" or "Record' means any document or record in your custody, possession or control, including, but not limited to, any printed, written, recorded, taped, electronic, graphic, or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any non-identical copy (whether different from the original because of notes made on or attached to such copy or otherwise) of any and all writings, correspondence, letters, telegrams, telex communications, cables, notes, notations, papers, newsletters, memoranda, inter-office communications, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings or other memorials or any type of personal or telephone conversations, meetings or conferences (including, but not limited to, telephone bills and long distance charge slips), reports, analyses, evaluations, estimates, projections, forecasts, receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment books, stenographer's notebooks, transcripts, ledgers, registers, worksheets, journals, statistical records, cost sheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, invoices, billings, purchase orders, hotel charges, accountant's reports, financial statements, checks, ledgers, deposit records, bank statements, newspapers, periodical or magazine materials, and any material underlying, supporting or used in the preparation of any

documents.  The term "Document" also means any and all computer records, data and information of whatever kind whether printed out or stored on or retrievable from any floppy diskette, compact diskette, magnetic tape, optical or magnetic-optical disk, hard drive or rapid access memory, including without limitation, all back-up copies, undeleted data, and dormant or remnant files. The Term ""document" and "documents" includes, without limitation, any electronically stored information ("ESI"), including metadata, by which, on which, or through which information of any type is communicated, transmitted, recorded or preserved.

9.      "Concerning" means: with respect to, relating to, referring to, regarding, supporting, substantiating, purporting, embodying, establishing, identifying, listing, evidencing, comprising, connected with, memorializing, recording, commenting upon, responding to, showing, describing, analyzing, reflecting, representing, constituting, supporting, contradicting, or explaining, whether in who or in part.

10.      "Person" means any individual, corporation, partnership, joint venture, firm, association, proprietorship, agency, governmental body, commission or other such entity, and shall include its persons, agents and employees.

11.      The term "Control" means having the right or ability to secure information or documents or a copy thereof, including, without limitation, from another person, or public or private entity having access to or possession thereof.

12.      "Identify" or "Identity" means: (i) as to an individual, the full name, present or last known business and residence addresses, telephone number, occupation, job title and dates so employed, and, if not an individual, the type of entity and the address of its principal place of business; (ii) as to a document, the type of document (letter, memo, etc.), the identity of the author or originator, the date authored or originated, the identity of each person whose name appears on the document and to whom the original or copy was addressed or delivered, the identity of each person you believe has present possession, custody, or control of the document and a description of the subject matter with sufficient particularity to identify and describe its production; and (iii) as to an event, occurrence or other fact, including oral conversations, the time, date, and location of such event, the persons present, a detailed description of the occurrences and surrounding circumstances and the substance of any conversations or other communications.

13.      "Including" means "including but not limited to."

14.      "And" and "or" each mean "and/or."

15.      The singular includes the plural number and vice versa and the masculine includes the feminine and neuter genders.  The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

### INSTRUCTIONS

1.      Any document as to which a claim of privilege is or will be asserted should be identified by author, signatory, description (e.g., letter, memorandum, telecopy, recording, computer image etc.), title (if any), dates, addressees (if any), general subject matter, characteristics substantiating the claim of privilege, present depository and present custodian and a complete statement of the ground for the claim of privilege should be set forth. If it is maintained that any document which is requested has been destroyed, set forth the contents of the documents, the date of such destruction and the name of the person who authorized or directed such destruction.

Case: 15-50801    Doc# 42    Filed: 06/25/15    Entered: 06/25/15 16:32:34    Page 5 of
16

1      2.      If any of the documents cannot be produced in full, produce to the extent possible, specifying the reasons for the inability to produce the remainder.

2

3      3.      If any of the documents requested by a request for production of documents are not within your possession, identify each person who has possession of the Documents.

4      4.      Electronically Stored Information ("ESI") shall be produced as follows.

5      (a)      ESI should be produced in its native format, with all metadata intact, on compact discs, DVDs, zip drives, or hard drives and in the following format: (a) databases are to be produced in a computer searchable and reasonably usable form; (b) emails are to be produced in Personal Storage Table ("PST") or Extensible Markup Language ("XML") format; (c) word processing documents are to be produced in Microsoft Word or Word Perfect format, unless such documents to not exist in the native format, in which case such documents should be produced in searchable Portable Document Format ("PDF"), if they are maintained in this format in the ordinary course of business, or in Tagged Image File Format ("TIFF"), if they are maintained in any other format, consistent with the instructions below; (d) spreadsheets are to be produced in Microsoft Excel format; and (e) audio files are to be produced in MPEG-1 Audio Layer 3 ("MP3") format.

11      (b)      To the extent no native data exists for a particular document, the document should be produced in TIFF, single page, black and white, dithered (if appropriate), Group 4 TIFF at 300 x300 dpi resolution and 8 1/2 x 11 inch page size, except for documents requiring different resolution or page size. Each TIFF formatted file shall be produced with a unitization/load file in standard format (i.e., Opticon (.opt), Summation (.dii), IPRO (.lfp), Concordance (.opt, .dat) or the like) showing the Bates number of each page and the appropriate unitization of the documents. The TIFF images shall also be accompanied by extracted data or Optical Character Recognition data (OCR) in single page format.

15      (c)      To the extent TIFF images are produced, the producing party shall provide a declaration by the custodian of records, or other party responsible for the collection and production of the subject documents, setting forth the reason/s why it is producing data in this format and, if appropriate, the nature of the due diligence in attempting to confirm whether data exists in native format.

18      (d)      For electronic documents produced in TIFF or native format, the producing party should produce the following metadata, to the extent such metadata exists: (a) for all electronic documents: starting Bates Number, ending Bates Number, number of pages in a document, starting attachment Bates Number and ending Bates Number; (b) for non-email electronic documents: file name (including extension), creation date, modified date, title, subject, author, company, last saved, file path (for files located on a shared space or server only), custodian of the record (for files located on the hard drive of a personal computer only) and MD-5 Hash values; (c) for emails: sent date, received date, to name, to address, from name, from address, cc name(s), cc address(es), bcc name(s), bcc address(es), subject, "re" or "fwd", replies sent to, attachment count and MD5 Hash values. Both paths and file names of images must exactly match their text files (except for the file extensions), including case sensitivity. A chart setting forth the appropriate load files for this metadata is attached as Exhibit B.

25      (e)      Paper production of ESI is permissible only in the following circumstances:

26      (i)      The document was originally created and maintained as a paper document, i.e., handwritten notes.

27

28

SMRH:439102505.2                                                2004 APPLICATION – DEBTOR

(ii)     The document was originally created electronically, but upon reasonable due diligence, the producing party has determined that it no longer exists in that format and only exists as a paper file.

(iii)     The responsive data includes pleadings and orders filed with any court and letters between counsel.

(iv)     In circumstances where such a production would be unreasonably burdensome or otherwise not permissible under the Federal Rules of Civil Procedure, and where the producing party has raised the issue with the other party.

(v)     By separate stipulation.

(vi)     To the extent paper files are produced, the producing party shall provide a declaration by the custodian of records, or other party responsible for the collection and production of the subject documents, setting forth the reason/s why it is producing data in paper form and, if appropriate, the nature of the due diligence in attempting to confirm whether data exists electronically.

(f)     The producing party should maintain the inherent integrity of all ESI such that it will not separate documents attached to one another.  Said another way, it will preserve the "parent-child" relationship between the primary document and any attachments.  The producing party should produce all documents in their entirety and without deletion, redaction or excision, except as set forth below, regardless of whether the producing party considers the entire document or only part of it to be relevant or responsive.

(g)     Should any portion of a document need to be redacted, the producing party should these documents as TIFF images as set forth above.  If any portion of the documents is redacted, the producing party should stamp the word "REDACTED" beside the redacted information on each page of the document that is redacted and to provide a log detailing the nature of the redaction.

5.     This request is a continuing one to the extent required by applicable law.


## REQUESTS FOR DOCUMENTS

1.     Any and all Documents Concerning your assertion that You and Patricia Brower hold no assets as community property, including copies of any agreements between You and Patricia Brower delineating specific assets to be separate property.

2.     Any and all Documents Concerning the ownership interests in American Commercial Properties, including without limitation records of shareholdings, transfers, assignments, and pledges.

3.     Any and all Documents Concerning your assertion that Patricia Brower owns 13% of the outstanding stock of Coastal Cypress as her sole and separate property.

4.     Any and all Documents Concerning your assertion that Patricia Brower owns 50% of the outstanding stock of Chateau Julien as her sole and separate property.

5.     Any and all Documents Concerning any Transfers within the four year period prior to Your bankruptcy filing between You and Patricia Brower.

6.     Any and all Documents Concerning any Transfers within the four year period prior to Your bankruptcy filing between You and American Commercial Properties.

7.     Any and all Documents Concerning any Transfers within the four year period prior to Your bankruptcy filing between You and Chateau Julien.

8.     Any and all Documents Concerning any Transfers within the four year period prior to Your bankruptcy filing between You and Coastal Cypress.

9.     Any and all Documents Concerning the value of Your shares in Coastal Cypress, including without limitation a copy of the closing statement for the April 2015 sale of the real property owned by Coastal Cypress.

10.     Any and all Documents provided by You to the Bank regarding Your assets, liabilities, financial status or financial condition, including without limitation financial statements, loan or extension applications, budgets, asset and liability lists.

11.     Any and all Documents constituting communications with the Bank.

12.     Any and all Documents within the four year period prior to Your bankruptcy filing Concerning monies or other obligations owed to you by Chateau Julien, Coastal Cypress, Patricia Brower, and/or American Commercial Properties.

13.     Any and all Documents within the four year period prior to Your bankruptcy filing Concerning monies or other obligations owed by you to Chateau Julien, Coastal Cypress, Patricia Brower, and/or American Commercial Properties.

14.     Any and all Documents concerning the ownership interests in Coastal Cypress, including without limitation records of shareholdings, transfers, assignments, and pledges.

15.     Any and all Documents concerning the ownership interests in Chateau Julien, including without limitation records of shareholdings, transfers, assignments, and pledges..

# EXHIBIT B

1  SHEPPARD, MULLIN, RICHTER &
   HAMPTON LLP
2  A Limited Liability Partnership
   Including Professional Corporations
3  STEVEN B. SACKS,
   Cal. Bar No. 98875
4  ssacks@sheppardmullin.com
   MICHAEL M. LAUTER,
5  Cal. Bar No. 246048
   mlauter@sheppardmullin.com
6  JACQUELINE A. GOTTLIEB,
   Cal. Bar No. 271844
7  jgottlieb@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
8  San Francisco, CA 94111-4109
   Telephone:    415-434-9100
9  Facsimile:    415-434-3947

10 Attorneys for Creditor
   MUFG UNION BANK, N.A.

11

12              UNITED STATES BANKRUPTCY COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                   SAN JOSE DIVISION

15

16                                    | Case No. 15-50801

17 In re                             | Chapter 11

18 ROBERT BROWER, SR.,               | **[PROPOSED] ORDER UNDER
                                      | BANKRUPTCY RULE 2004
19            Debtor.                 | COMPELLING EXAMINATION OF
                                      | AND PRODUCTION OF
20                                    | DOCUMENTS BY THE DEBTOR**

21

22

23

24

25

26

27

28

1

SMRH:439107158.1

The Court having considered the *Ex Parte Application For Order Under Bankruptcy Rule 2004 Compelling Examination Of And Production Of Documents By the Debtor* (the "Application"), filed on June 25, 2015 by creditor MUFG Union Bank, N.A. (the "Bank"), and good cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      Robert S. Brower, the above-captioned debtor (the "Debtor") shall appear for examination at the offices of the Bank's counsel, Sheppard Mullin Richter & Hampton LLP, Four Embarcadero Center, 17th Floor, San Francisco, CA 94111 on July 27, 2015 at 9:00 a.m.;

2.      The Debtor shall produce the documents described and specified below to the Bank's counsel at the law offices of Sheppard Mullin Richter & Hampton LLP, Four Embarcadero Center, 17th Floor, San Francisco, CA 94111 on or before July 16, 2015; and

3.      The Debtor shall provide a custodian of records declaration authenticating all documents so produced.

Case: 15-50801    Doc# 42    Filed: 06/25/15    Entered: 06/25/15 16:32:34    Page 11 of 16
SMRH:439107158.1

**EXHIBIT A**

**<u>DEFINITIONS</u>**

For purposes of these requests for document production, the following words shall have the meaning indicated below, unless otherwise stated:

1.    "You," "your" or "Debtor" means Robert S. Brower, debtor and debtor-in-possession in the above-captioned bankruptcy case.

2.    "American Commercial Properties" means American Commercial Properties, Inc., a Nevada corporation. and its officers, directors, partners, agents, employees, representatives, investigators, accountants and attorneys, and any merged, consolidated or acquired corporation and its predecessor, parent, subsidiary, division or affiliate, and any person acting on its behalf.

3.    "Chateau Julien" means Chateau Julien Inc., a California corporation. and its officers, directors, partners, agents, employees, representatives, investigators, accountants and attorneys, and any merged, consolidated or acquired corporation and its predecessor, parent, subsidiary, division or affiliate, and any person acting on its behalf.

4.    "Coastal Cypress" means Coastal Cypress Corporation, a California corporation. and its officers, directors, partners, agents, employees, representatives, investigators, accountants and attorneys, and any merged, consolidated or acquired corporation and its predecessor, parent, subsidiary, division or affiliate, and any person acting on its behalf.

5.    "Patricia Brower" means Your wife, Patricia Brower.

6.    "Bank" means MUFG Union Bank, N.A. and any predecessor in interest, assignor, or transferor with regard to the loan and guaranty presently held by MUFG Union Bank, N.A. from Chateau Julien and You, including without limitation Santa Barbara Bank & Trust, N.A. f/k/a Pacific Capital Bank, N.A.

7.    "Transfer" is used as that term is defined under 11 U.S.C. § 101(54) – *i.e.*, "'transfer' means the creation of a lien; the retention of title as a security interest; the foreclosure of a debtor's equity of redemption; or each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property; or an interest in property."

8.    "Document" or "Record' means any document or record in your custody, possession or control, including, but not limited to, any printed, written, recorded, taped, electronic, graphic, or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any non-identical copy (whether different from the original because of notes made on or attached to such copy or otherwise) of any and all writings, correspondence, letters, telegrams, telex communications, cables, notes, notations, papers, newsletters, memoranda, inter-office communications, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings or other memorials or any type of personal or telephone conversations, meetings or conferences (including, but not limited to, telephone bills and long distance charge slips), reports, analyses, evaluations, estimates, projections, forecasts, receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment books, stenographer's notebooks, transcripts, ledgers, registers, worksheets, journals, statistical records, cost sheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, invoices, billings, purchase orders, hotel charges, accountant's reports, financial statements, checks, ledgers, deposit records, bank statements, newspapers, periodical or magazine materials, and any material underlying, supporting or used in the preparation of any

3

documents. The term "Document" also means any and all computer records, data and information of whatever kind whether printed out or stored on or retrievable from any floppy diskette, compact diskette, magnetic tape, optical or magnetic-optical disk, hard drive or rapid access memory, including without limitation, all back-up copies, undeleted data, and dormant or remnant files. The Term ""document" and "documents" includes, without limitation, any electronically stored information ("ESI"), including metadata, by which, on which, or through which information of any type is communicated, transmitted, recorded or preserved.

9. "Concerning" means: with respect to, relating to, referring to, regarding, supporting, substantiating, purporting, embodying, establishing, identifying, listing, evidencing, comprising, connected with, memorializing, recording, commenting upon, responding to, showing, describing, analyzing, reflecting, representing, constituting, supporting, contradicting, or explaining, whether in who or in part.

10. "Person" means any individual, corporation, partnership, joint venture, firm, association, proprietorship, agency, governmental body, commission or other such entity, and shall include its persons, agents and employees.

11. The term "Control" means having the right or ability to secure information or documents or a copy thereof, including, without limitation, from another person, or public or private entity having access to or possession thereof.

12. "Identify" or "Identity" means: (i) as to an individual, the full name, present or last known business and residence addresses, telephone number, occupation, job title and dates so employed, and, if not an individual, the type of entity and the address of its principal place of business; (ii) as to a document, the type of document (letter, memo, etc.), the identity of the author or originator, the date authored or originated, the identity of each person whose name appears on the document and to whom the original or copy was addressed or delivered, the identity of each person you believe has present possession, custody, or control of the document and a description of the subject matter with sufficient particularity to identify and describe its production; and (iii) as to an event, occurrence or other fact, including oral conversations, the time, date, and location of such event, the persons present, a detailed description of the occurrences and surrounding circumstances and the substance of any conversations or other communications.

13. "Including" means "including but not limited to."

14. "And" and "or" each mean "and/or."

15. The singular includes the plural number and vice versa and the masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

## INSTRUCTIONS

1. Any document as to which a claim of privilege is or will be asserted should be identified by author, signatory, description (e.g., letter, memorandum, telecopy, recording, computer image etc.), title (if any), dates, addressees (if any), general subject matter, characteristics substantiating the claim of privilege, present depository and present custodian and a complete statement of the ground for the claim of privilege should be set forth. If it is maintained that any document which is requested has been destroyed, set forth the contents of the documents, the date of such destruction and the name of the person who authorized or directed such destruction.

Case: 15-50801   Doc# 42   Filed: 06/25/15   Entered: 06/25/15 16:32:34   Page 13 of
16
SMRH:439107158.1

1    2.    If any of the documents cannot be produced in full, produce to the extent possible, specifying the reasons for the inability to produce the remainder.

2

3    3.    If any of the documents requested by a request for production of documents are not within your possession, identify each person who has possession of the Documents.

4    4.    Electronically Stored Information ("ESI") shall be produced as follows.

5    (a)    ESI should be produced in its native format, with all metadata intact, on compact discs, DVDs, zip drives, or hard drives and in the following format: (a) databases are to be produced in a computer searchable and reasonably usable form; (b) emails are to be produced in Personal Storage Table ("PST") or Extensible Markup Language ("XML") format; (c) word processing documents are to be produced in Microsoft Word or Word Perfect format, unless such documents to not exist in the native format, in which case such documents should be produced in searchable Portable Document Format ("PDF"), if they are maintained in this format in the ordinary course of business, or in Tagged Image File Format ("TIFF"), if they are maintained in any other format, consistent with the instructions below; (d) spreadsheets are to be produced in Microsoft Excel format; and (e) audio files are to be produced in MPEG-1 Audio Layer 3 ("MP3") format.

11    (b)    To the extent no native data exists for a particular document, the document should be produced in TIFF, single page, black and white, dithered (if appropriate), Group 4 TIFF at 300 x300 dpi resolution and 8 1/2 x 11 inch page size, except for documents requiring different resolution or page size.  Each TIFF formatted file shall be produced with a unitization/load file in standard format (i.e., Opticon (.opt), Summation (.dii), IPRO (.lfp), Concordance (.opt, .dat) or the like) showing the Bates number of each page and the appropriate unitization of the documents. The TIFF images shall also be accompanied by extracted data or Optical Character Recognition data (OCR) in single page format.

16    (c)    To the extent TIFF images are produced, the producing party shall provide a declaration by the custodian of records, or other party responsible for the collection and production of the subject documents, setting forth the reason/s why it is producing data in this format and, if appropriate, the nature of the due diligence in attempting to confirm whether data exists in native format.

19    (d)    For electronic documents produced in TIFF or native format, the producing party should produce the following metadata, to the extent such metadata exists: (a) for all electronic documents: starting Bates Number, ending Bates Number, number of pages in a document, starting attachment Bates Number and ending Bates Number; (b) for non-email electronic documents: file name (including extension), creation date, modified date, title, subject, author, company, last saved, file path (for files located on a shared space or server only), custodian of the record (for files located on the hard drive of a personal computer only) and MD-5 Hash values; (c) for emails: sent date, received date, to name, to address, from name, from address, cc name(s), cc address(es), bcc name(s), bcc address(es), subject, "re" or "fwd", replies sent to, attachment count and MD5 Hash values.  Both paths and file names of images must exactly match their text files (except for the file extensions), including case sensitivity.  A chart setting forth the appropriate load files for this metadata is attached as Exhibit B.

25    (e)    Paper production of ESI is permissible only in the following circumstances:

26    (i)    The document was originally created and maintained as a paper document, i.e., handwritten notes.

27

28

SMRH:439107158.1

(ii)    The document was originally created electronically, but upon reasonable due diligence, the producing party has determined that it no longer exists in that format and only exists as a paper file.

(iii)    The responsive data includes pleadings and orders filed with any court and letters between counsel.

(iv)    In circumstances where such a production would be unreasonably burdensome or otherwise not permissible under the Federal Rules of Civil Procedure, and where the producing party has raised the issue with the other party.

(v)    By separate stipulation.

(vi)    To the extent paper files are produced, the producing party shall provide a declaration by the custodian of records, or other party responsible for the collection and production of the subject documents, setting forth the reason/s why it is producing data in paper form and, if appropriate, the nature of the due diligence in attempting to confirm whether data exists electronically.

(f)    The producing party should maintain the inherent integrity of all ESI such that it will not separate documents attached to one another. Said another way, it will preserve the "parent-child" relationship between the primary document and any attachments. The producing party should produce all documents in their entirety and without deletion, redaction or excision, except as set forth below, regardless of whether the producing party considers the entire document or only part of it to be relevant or responsive.

(g)    Should any portion of a document need to be redacted, the producing party should these documents as TIFF images as set forth above. If any portion of the documents is redacted, the producing party should stamp the word "REDACTED" beside the redacted information on each page of the document that is redacted and to provide a log detailing the nature of the redaction.

5.    This request is a continuing one to the extent required by applicable law.

## REQUESTS FOR DOCUMENTS

1.    Any and all Documents Concerning your assertion that You and Patricia Brower hold no assets as community property, including copies of any agreements between You and Patricia Brower delineating specific assets to be separate property.

2.    Any and all Documents Concerning the ownership interests in American Commercial Properties, including without limitation records of shareholdings, transfers, assignments, and pledges.

3.    Any and all Documents Concerning your assertion that Patricia Brower owns 13% of the outstanding stock of Coastal Cypress as her sole and separate property.

4.    Any and all Documents Concerning your assertion that Patricia Brower owns 50% of the outstanding stock of Chateau Julien as her sole and separate property.

5.    Any and all Documents Concerning any Transfers within the four year period prior to Your bankruptcy filing between You and Patricia Brower.

6

SMRH:439107158.1

6.   Any and all Documents Concerning any Transfers within the four year period prior to Your bankruptcy filing between You and American Commercial Properties.

7.   Any and all Documents Concerning any Transfers within the four year period prior to Your bankruptcy filing between You and Chateau Julien.

8.   Any and all Documents Concerning any Transfers within the four year period prior to Your bankruptcy filing between You and Coastal Cypress.

9.   Any and all Documents Concerning the value of Your shares in Coastal Cypress, including without limitation a copy of the closing statement for the April 2015 sale of the real property owned by Coastal Cypress.

10.  Any and all Documents provided by You to the Bank regarding Your assets, liabilities, financial status or financial condition, including without limitation financial statements, loan or extension applications, budgets, asset and liability lists.

11.  Any and all Documents constituting communications with the Bank.

12.  Any and all Documents within the four year period prior to Your bankruptcy filing Concerning monies or other obligations owed to you by Chateau Julien, Coastal Cypress, Patricia Brower, and/or American Commercial Properties.

13.  Any and all Documents within the four year period prior to Your bankruptcy filing Concerning monies or other obligations owed by you to Chateau Julien, Coastal Cypress, Patricia Brower, and/or American Commercial Properties.

14.  Any and all Documents concerning the ownership interests in Coastal Cypress, including without limitation records of shareholdings, transfers, assignments, and pledges.

15.  Any and all Documents concerning the ownership interests in Chateau Julien, including without limitation records of shareholdings, transfers, assignments, and pledges..

**\*\*END OF ORDER\*\***