SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
STEVEN B. SACKS, Cal. Bar No. 98875
ssacks@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947

Attorneys for Creditor
MUFG UNION BANK, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re

ROBERT BROWER, SR.,

    Debtor.

Bk. No. 15-50801

Chapter 11

**CREDITOR MUFG UNION BANK, N.A.'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS AND FOR AN AWARD OF FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[*Declaration of Steven B. Sacks filed concurrently herewith*]

Hearing Date: March 17, 2016
Time: 8:30 a.m.
Courtroom: 3020

**TO THE DEBTOR AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 17, 2016, at 8:30 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Elaine Hammond, United States Bankruptcy Judge, located at 280 S. First Street, Room 3070, San Jose, CA 95113, MUFG Union Bank N.A. ("the Bank") will and hereby does move the Court under Federal Rule of Bankruptcy 7037, 9014(c), and 9016 for an Order compelling Coastal Cypress Corporation, Hayashi Wayland, and Richard Babcock (collectively "the Subpoenaed Parties") to produce documents responsive to the subpoenas the Bank served on them in December 2015 (the "Motion") and for an award of the fees incurred in obtain such an order in the amount of $28,975 from the Subpoenaed Parties and their counsel.

This Motion is necessitated by the Subpoenaed Parties' refusal to produce documents responsive to the Bank's subpoenas in this contested proceeding. Prior to filing this Motion, the Bank engaged in extensive meet-and confer discussions with the Subpoenaed Parties' counsel (retained by Debtor on their behalf) and reached an agreement to modify the scope of the subpoenas and for the Subpoenaed Parties to produce responsive documents within that scope by February 18, 2016. Before the actual production occurred, Debtor hired new counsel for the Subpoenaed Parties, who reneged on the agreement and now, even after extensive meet and confer discussions and an informal hearing on February 23, states that his clients will not abide by the agreement reached with prior counsel. This Motion further seeks an award of fees of $28,975 to compensate the Bank for the fees incurred during its extensive meet and confer efforts and in bringing this motion.

Pursuant to N.D. Local Civil Rule 37-1 and as detailed in the Declaration of Steven B. Sacks, the parties have met and conferred by email exchange and telephone conference and have participated in Judge Hammond's informal discovery dispute resolution procedure (including the submission of opposing letter briefs and participating in an informal hearing with Judge Hammond on February 23) regarding this discovery dispute and have been unable to come to a resolution. The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the attached Declaration of Steven B. Sacks filed concurrently herewith, the attached

-2-

Exhibits, the pleadings and records on file in this action, other matters of which the Court may take judicial notice, and such matters as may be presented at the hearing on the Motion.

Dated: March 2, 2016

                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                By      */s/ Steven B. Sacks*
                        STEVEN B. SACKS
                        MICHAEL M. LAUTER
                        ISAIAH Z. WEEDN
                Attorneys for MUFG UNION BANK, N.A.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Upon receiving a subpoena an entity has a duty to respond promptly by asserting any objections within 14 days or making an agreement with the requesting party with regard to producing the subpoenaed items. If the entity retains counsel to represent it in regard to the subpoena, then the requesting party has to deal with that counsel and, through counsel, negotiate a resolution of any dispute concerning the discovery in good faith. When an agreement is reached and set out in writing, the parties are bound by the resolution and cannot choose to ignore the agreement, and cannot belatedly assert objections instead of adhering to the agreement. Unfortunately, in this case, the Debtor has played fast and loose with the discovery process by allowing his counsel to make an agreement to produce documents pursuant to subpoenas and then seeking to abandon the agreement in favor of litigating the relevance of the items sought in the subpoena. The Bank seeks an order from this Court rejecting that approach and compelling production of the agreed-upon documents.

In this case, Debtor Robert Brower, Sr. ("Debtor") filed a motion to sell the primary asset of his estate – his shares in Coastal Cypress Corporation ("Coastal"). (*See* Docket No. 77). Debtor is the president of Coastal Cypress and has at all relevant times been the person who acted on behalf of Coastal Cypress. In December 2015, the Bank had three virtually identical subpoenas served on Coastal, Hayashi Wayland (Coastal's accountant whose valuation was the basis of Debtor's first motion to sell his shares), and Richard Babcock (Coastal's "special corporate counsel" whose "valuation" was cited in Debtor's second, currently pending motion to sell his shares) (collectively "the Subpoenaed Parties"). The subpoenas sought the production of the documents referred to in the declarations offered in support of Debtor's motions to sell his Coastal shares as well as additional documents relevant to an understanding of Coastal's assets, liabilities, business activities, involvement with the Debtor, and, ultimately, the value of Debtor's interest in Coastal before and during this bankruptcy case.

On January 20, 2016, the Bank reached an agreement with the Subpoenaed Parties' counsel, Neal Wolf, as to which documents would be produced in response to these subpoenas, the

details of which are set forth below. The Debtor, acting on behalf of Coastal, which is in turn acting on behalf of Babcock and Hayashi Wayland, then retained new counsel. The Subpoenaed Parties, through their new counsel, David Balch, have reneged on the prior agreement and refused to produce the key documents sought by the subpoenas. Coastal, which had negotiated the production agreement with the Bank instead of serving objections, has recently served an untimely objection to its subpoena in which it refuses to produce nearly all the requested documents. No formal response has ever been served as to the other two subpoenas.

Accordingly, the Bank moves this Court for an Order directing the Subpoenaed Parties to comply with the agreement reached through their former counsel and produce the documents that Coastal and the other parties thereby agreed would be produced.

## II. **SPECIFIC RELIEF REQUESTED**

The Bank respectfully requests that this Court order the Subpoenaed Parties to comply with the agreement reached with their prior counsel. Specifically, the Subpoenaed Parties should be ordered to provide, within no more than ten (10) business days, complete, unredacted copies of all documents in their possession, custody, or control that are responsive to the subpoenas, subject to the following, agreed-upon limitations:

1. Though certain of the requests originally asked for documents dating back to January 1, 2004, the reach-back period for such requests is revised to extend no earlier than January 1, 2011 (without prejudice to a subsequent request for earlier documents).

2. Request No. 17 (seeking documents reflecting transactions, payments, transfers etc. by Coastal to individuals or entities) would extend only to transactions of $20,000 or more (not the $5,000 specified in the original request), and would not extend to attorneys' fees payments of any amount.

3. No documents subject to the attorney-client privilege or work product protection shall be produced.

To the extent that the Subpoenaed Parties contend that any documents requested in the subpoenas call for the disclosure of privileged information, the Subpoenaed Parties may serve a

-5-

MUFG UNION BANK, N.A.'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS

SMRH:475576987.4

privilege log concurrent with their response. The Bank further requests that sanctions be awarded to compensate the Bank for the costs and fees incurred in meeting and conferring and bringing this Motion.

In addition, the Bank respectfully requests that the Court set a new date for the hearing on Debtor's motion to sell his Coastal shares that is approximately 60 days from the date of this hearing. The Bank cannot evaluate the share valuation proffered in Debtor's motion without the documents sought via its subpoenas to Coastal, Hayashi Wayland, and Mr. Babcock and this motion to compel and may also need to pursue follow up discovery depending on the results of the document productions.

## III. STATEMENT OF FACTS

### A. Background

This case was filed in March 2015 for the purpose of avoiding an attachment lien the Bank had obtained against Debtor in a guaranty enforcement action in state court arising from the Bank's $4.85 million loan to Chateau Julien, Inc., an entity run by Debtor for 30 years. (Sacks Decl., ¶ 4). Debtor claims he has never actually been an owner of Chateau Julien, yet before he filed for bankruptcy, he always described himself as Chateau Julien's owner and/or proprietor. (*Id.*) Similarly, Debtor ran at least three other corporations during that time period, but now he claims to only own a small share of one, his alleged 24 percent interest in Coastal, and none of the other two. (*Id.*) During this case, after closing the sale of the sole real property owned by Coastal, the Debtor closed Chateau Julien, and testified that he destroyed its business records and computers. (*Id.*) The Debtor sought no approval from the Court for these activities. (*Id.*) The only person Debtor will admit is involved in the ownership of any of these entities is his wife of over 35 years, who he now claims owns interests in these corporations as her separate property. (*Id.*) He refuses on grounds of purported privacy rights to reveal the other supposed owners of any other entity, including Coastal.[1] (*Id.*) He also refuses to produce basic documents pertaining

---

[1] The Debtor, wearing his Coastal hat, has never provided any support for his assertion that shareholders have legally cognizable privacy rights that need to be protected. In fact, the opposite is true. Since the Debtor's shares in Coastal are property of the estate, the estate is a shareholder in Coastal. California Corporations Code section 1600 provides that shareholders, such as the

-6-

to the value of the Coastal shares, such as the closing statement for the April 2015 sale of its sole real estate holding, the purported contents of which are recited by Mr. Babcock and Debtor in their declarations in support of Debtor's motion to sell. (*Id.*)

B. **Motion to Sell**

The only action taken by Debtor in this case has been to file two half-hearted motions to sell what he claims is the only significant asset of the estate – his shares in Coastal Cypress, a company he controls. (Sacks Decl. ¶ 5). Based on Debtor's previous statements as well as the moving papers, Coastal Cypress's primary asset was a parcel of real estate that it allegedly recently sold for $12 million. (*Id.*). But no documents reflecting the terms of that sale or the proposed distribution of proceeds have ever been produced. (*Id.*) The Debtor's Coastal Cypress shares allegedly comprise 24 percent of the total outstanding shares, but Debtor is unwilling to disclose the identities of the other purported shareholders other than his wife, who he claims owns 13 percent as her separate property. (*Id.*) Based on the lack of any evidence of an actual beneficial interest in Coastal held by anyone besides the Debtor and his spouse, and the fact that the Debtor was the only person managing Coastal's affairs, the Bank has sought to ascertain who else, if anyone, benefits from the sale of Coastal's real estate. (*Id.*)

The first motion to sell Debtor's Coastal shares was denied without prejudice on November 12, 2015 due to Debtor's failure to present any admissible evidence to support his proposed share valuation. (Sacks Decl. ¶ 6). Indeed, it was the Bank that pointed out that the only purported evidence of the share value was an e-mail from Coastal's accountant at Hayashi Wayland – an e-mail that had not been mentioned in the brief itself – in which the accountant asserted that the per share value of Coastal's shares was approximately $2.54 per share without any explanation of how that valuation was determined or what documents and information were relied on. (*Id*).

---

Debtor's bankruptcy estate, have the right to review corporate records, including specifically "the record of shareholders' names and addresses and shareholdings…" *See*, Cal. Corp. Code § 1600(a) and (c). Thus the Debtor's refusal to provide this basic information is contrary to applicable non-bankruptcy law, not to mention the Debtor's own duties as fiduciary of his bankruptcy estate.

-7-

The second motion to sell Debtor's Coastal shares, filed less than one month after the first motion was denied, offers the estate a substantially reduced price – $448,500 or $1.95 per share – based on purported and undocumented expenses dating back to well before the first motion was filed. (*See* Docket No. 77). The motion includes a declaration containing wholly inadmissible hearsay from Mr. Babcock reciting the purported contents of documents that he allegedly reviewed in order to assert that the Board of Coastal (Debtor and his wife) proposed to buy back the shares for $1.95 a share. (*Id*, ¶ 7). Debtor's declaration in support of the sale makes the same assertions, adding only that Debtor thinks the sale is for fair value. (*Id.*) The Bank informed Debtor's counsel that, having provided Mr. Babcock with the documents, which are not privileged, and having had Debtor cite the documents in his declaration, Debtor was obligated to produce the documents, as well as other documents pertaining to the real estate sale, and Coastal's ownership, income, assets, liabilities, and value. (*Id..* ¶ 8). Debtor refused to voluntarily produce these documents. (*Id.*)

C. **The Three Subpoenas**

The Bank served virtually identical subpoenas on Coastal, Hayashi Wayland, and Mr. Babcock, seeking all documents they reviewed in connection with the value of Debtor's Coastal shares as well as other documents related to Coastal's financial status, the value of the shares, and the $12 million sale of Coastal's major asset, the aforementioned real estate. (Sacks Decl. ¶ 4, Ex. A, B, and C). Those subpoenas were served in December and, in light of the originally-noticed January 7, 2016 sale motion hearing date, specified a December 28, 2015 compliance deadline. (*Id.*, ¶ 8).

D. **The Bank's Meet and Confer Efforts**

Neal Wolf was retained by Coastal in December 2015 to act as its attorney and to represent the interests of Richard Babcock and Hayashi Wayland with regard to the Coastal documents in their possession. (Sacks Decl. ¶ 9). On December 23, 2015, Mr. Wolf contacted counsel for the Bank in writing and by telephone and identified himself as counsel for the Subpoenaed Parties and acknowledged service of the subpoenas on them. (*Id.*) At Mr. Wolf's request, and following Debtor's agreement to continue the hearing on the Motion to sell the shares, the Bank extended the

-8-

date for compliance with the subpoenas from the December 28, 2015 date stated in the subpoenas to allow Mr. Wolf to confer with Coastal regarding which documents Coastal and the other entities would agree to produce. (*Id.*, ¶ 10).

Thereafter, Mr. Wolf informed the Bank that he had discussed the subpoenas extensively with Debtor, who was directing the Subpoenaed Parties' actions with respect to the subpoenas. (Sacks Decl. ¶ 11). Mr. Wolf first advised that though certain of the requests originally asked for documents dating back to January 1, 2004, the reach-back period would be revised to extend no earlier than January 1, 2010. But before that agreement was finalized, Mr. Wolf advised that he had had a further conversation with Mr. Brower and that Coastal was only willing to produce documents as of January 1, 2011 and thereafter. (*Id.*)

Mr. Wolf said that he had authority to proceed on the Subpoenaed Parties' behalf with a resolution and on January 20, 2016, Mr. Wolf sent an email to the Bank's counsel stating that "Coastal will agree both to produce the documents called for in the subpoenas issued in the main Robert Brower, Sr. bankruptcy case, and to have both Richard Babcock and Hayashi Wayland produce such documents" by February 18, 2016 subject to the following limitations:

1. Though certain of the requests originally asked for documents dating back to January 1, 2004, the reach-back period would be revised to extend no earlier than January 1, 2011.

2. Request No. 17 (seeking documents reflecting transactions, payments, transfers etc. by Coastal to individuals or entities) would extend only to transactions of $20,000 or more (not the $5,000 specified in the original request), and would not extend to attorneys' fees payments of any amount.

3. No documents subject to the attorney-client privilege or work product protection would be produced.

(Sacks Decl., ¶ 12, Exh. H).

Mr. Wolf further noted that if this proposal was acceptable to the Bank, Debtor had agreed to have his counsel, Mr. Healy, further continue the hearing of Debtor's motion to sell the Coastal Cypress shares from February 1, 2016 to March 17, 2016. (Sacks Decl. ¶ 13). After the Bank

responded that it would accept the proposed limitations detailed above so long as it was without prejudice to a subsequent request for documents from an earlier time period, Mr. Wolf advised that his "client accepted" the resolution, and Debtor instructed his counsel to move the hearing date pursuant to the agreement. (*Id.*) Mr. Wolf subsequently informed the Bank's counsel that he was moving to a new law firm and would be transferring the handling of the matter to a colleague at his firm. (*Id.*, ¶ 14 and Ex. I).

### E. The Subpoenaed Parties Renege On Their Agreement At Debtor's Behest

On January 27, 2016, counsel for the Bank was contacted by attorney David Balch, who stated that he was new counsel for the Subpoenaed Parties. (*Id.*, ¶ 15). During subsequent discussions, Mr. Balch informed the Bank that Debtor, on behalf of the Subpoenaed Parties, disavowed the previous subpoena compliance agreement and contended that Mr. Wolf was not authorized to make it. (*Id.*) Accordingly, he sought to wholly renegotiate the documents that the Subpoenaed Parties would produce. (*Id.*)

The Bank declined to renegotiate and insisted that the Subpoenaed Parties abide by the original agreement struck when Mr. Wolf was their counsel. (Id.) Mr. Balch offered no reason for Debtor's change of heart. (*Id.*) Aside from the agreement, the Bank asserted to Mr. Balch, as it had to Mr. Wolf, that the subpoenas sought documents that were relevant and appropriate to the issues pending in this bankruptcy case, such that there was no basis to withhold documents regardless of who was serving as counsel. (*Id.*) Coastal refused to produce documents as called for by the subpoena and instead Mr. Balch served objections on behalf of Coastal on February 10, nearly two months after Mr. Wolf first contacted the Bank's counsel. (*Id.*, ¶ 16). Therein, Coastal Cypress agreed to produce certain, limited documents, and even as to those, it proposed to redact the identities of Coastal Cypress's alleged other shareholders (which Debtor has done in previous productions of his own documents). The compliance promised in these belated responses falls far short of what was requested, or the scope agreed to by the Subpoenaed Parties' previous counsel. (*Id.*)

Accordingly, the Bank had no other choice but to initiate the motion to compel process by sending the Court its letter brief detailing the instant dispute. The Subpoenaed Parties and Debtor

-10-

Case: 15-50801    Doc# 101    Filed: 03/02/16    Entered: 03/02/16 19:58:36    Page 10 of 15

each submitted a letter brief in opposition and an informal, telephonic hearing was held on February 23. Despite the Court's tentative ruling that the Subpoenaed Parties should be held to the subpoena compliance agreement made by their former counsel, the Subpoenaed Parties "regretfully" rejected the tentative ruling and forced the Bank to file this formal motion to compel.

## IV. A MOTION TO COMPEL IS PROPER WHEN A NONPARTY FAILS TO COMPLY WITH A SUBPOENA FOR THE PRODUCTION OF DOCUMENTS

Disobedience of a subpoena by a nonparty may be remedied through a motion to compel or alternatively through contempt proceedings. Fed. R. Civ. P. 37(a)(1), 45(g). Because the Subpoenaed Parties have failed to produce the documents specified in the Bank's subpoenas (as modified by the agreement reached with the Subpoenaed Parties' prior counsel), the Bank seeks an order compelling compliance pursuant to Rule 37.

Under Rule 45, a party may serve a subpoena that commands any person to produce designated documents. Here, the Bank was faced with Debtor's Motion to sell the Coastal shares for ever lower amounts without providing the documents supporting the motion. Moreover, the Bank is entitled to documentation generally as to the Debtor's relationship to Coastal and, relatedly, documentation sufficient to provide a full understanding of the value of Debtor's interest in Coastal and to determine whether Debtor has structured his interest in Coastal to maintain control over and receive the benefit of it while not holding it in his name. (Sacks Decl. ¶ 5) The subpoenas and attendant document requests were drafted and served to obtain the documents necessary for the Bank to make these evaluations. Subpoenaing Parties' responsive documents were originally due on December 28, 2015, and their original counsel, Mr. Wolf, agreed that the documents (subject to the agreed upon limitations) would be produced by February 18, 2016. (Sacks Decl., ¶ 12).

No formal subpoena responses have been served by Hayashi Wayland or Mr. Babcock at any time. (Sacks Decl. ¶ 16). Coastal similarly waived its objections by failing to timely serve them. Coastal did not serve its Objections and Responses to Subpoena until February 10, 2016,

-11-

untimely served some seven weeks after service was acknowledged.[2] (*Id.*) Any objections to a subpoena must be asserted within 14 days of service. Fed.R.Civ.P. 45(d)(2)(B). Because the Subpoenaed Parties failed to serve timely responses to the subpoenas, they waived any objections. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) ("A nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have been waived."). There are no unusual circumstances here that would show good cause to avoid the waiver of objections. To the contrary, the Subpoenaed Parties timely retained counsel and negotiated an agreement to respond to the subpoenas as modified. They have no good cause to disclaim the agreement they made and instead start over again as if the agreement was a non-event.

Reference to Coastal's belated objections/responses demonstrates that Coastal cannot show good cause to interpose belated objections. Rather, the objections illustrate the degree to which the Subpoenaed Parties (at Debtor's behest) are seeking to hide Coastal's financial condition, its actual ownership, its assets, and the true value of Debtor's interest in the company. For instance, Request No. 8 sought "All DOCUMENTS reflecting or relating to the value of the ownership interests in COASTAL." (Sacks Decl. ¶ 2, Ex. A). In response, Coastal stated it would produce "Responding Party's annual financial statements, balance statement, and income sheets from 2011 to the present, and a redacted copy of the Stock ledger (redacting out names of persons other than Debtor)." (Sacks Decl. ¶ 16, Ex. K). Since Coastal's entire value is tied to the sale of its real estate, not what it stated on its financial statements, and the value of Debtor's shares depends on the interest he actually holds, these proffered documents are plainly insufficient. Further, the Bank's more pointed Request No. 18 seeking "The preliminary and final closing statements from the escrow holder for COASTAL's sale of the COASTAL PROPERTY" was summarily rebuffed as "not relevant or reasonably likely to lead to the discovery of admissible evidence in this action,

---

[2] Therein, Coastal agreed to produce certain, limited documents, and even as to those, it proposed to redact the identities of Coastal's alleged other shareholders (which Debtor has done in previous productions of his own documents). (*Id.*) The compliance promised in these belated responses falls far short of what was requested, or the scope agreed to by the Subpoenaed Parties' previous counsel.

and no documents will be produced," with no explanation as to why the document that shows how proceeds of the sale were distributed and what Coastal received could possibly be irrelevant to Debtor's bankruptcy case or the value of Coastal at issue in the Motion. (*Id.*) Indeed, just the recitation of the information from the closing statement in the declarations submitted with the Motion argues for further investigation, as Debtor states that Coastal paid $2,020,000 in "various broker fees and sales commissions" to unnamed persons (i.e., an extravagant 16.83% commission on a $12 million real estate sale). *See* Docket No. 77. Debtor's refusal over the course of the past year since the sale to release the contents of that closing statement only furthers the suspicion that he has reason to hide its contents.

Coastal has rejected even the Bank's Request No. 20 seeking all documents provided to Mr. Babcock or relied upon by Mr. Babcock to form the opinions stated in his Declaration submitted in support of Debtor's motion to sell his Coastal shares. Coastal agreed to produce only certain documents and specifically excluded, among other things, documentation of the sale of Coastal's real estate and the same banking records it provided to Mr. Babcock. (Sacks Decl. ¶ 16, Ex. K). It is inexplicable how Debtor could file a motion with this Court that included as supporting evidence a declaration of opinion concerning the Coastal share value, but then refuse a request informally and by subpoena for the documents that were provided to the declarant to facilitate his valuation.

Debtor contends that he did not authorize Mr. Wolf on behalf of Coastal to make the agreement described above. (Sacks Decl. ¶ 15). But such an explanation also does not demonstrate good cause to consider Coastal's present objections to the subpoenas. Counsel for the Bank could only negotiate a resolution to any issues concerning the subpoenas with counsel retained by Coastal. That counsel, Mr. Wolf, told the Bank's counsel that he was in discussions with Debtor about the subpoenas and, ultimately, that he had Debtor's agreement on behalf of Coastal to reach a resolution. With regard to these subpoenas, this was a final resolution and the agreement was evidenced in a writing from Coastal's counsel. Then, Debtor himself acted on the agreed upon resolution by having his bankruptcy counsel continue the pending sale motion.

Whatever limitations that Debtor claims to have placed on Mr. Wolf's authority were in no way communicated to or apparent to the Bank, whose counsel accepted the proposed settlement of the dispute in good faith in compliance with their obligation to resolve discovery disputes by meeting and conferring with counsel for the opposing party. Accordingly, the Subpoenaed Parties are bound by the agreement of their counsel on their behalf following his representations that he had been authorized to make the agreement, either as a matter of counsel's actual or apparent authority. *See Tomerlin v. Canadian Indemnity Co.*, 61 Cal.2d 638, 643-44 (1964) (holding that an attorney had authority to bind his principal). Accordingly, the Subpoenaed Parties should be ordered to comply with the agreement struck by their former counsel and produce all responsive documents in their possession, custody, or control subject to the agreed upon limitations.

## V. MONETARY SANCTIONS ARE APPROPRIATE WHERE THE SUBPOENAED PARTIES AND THEIR COUNSEL FAILED TO COOPERATE

A Court must require a nonparty, its counsel advising the conduct, or both, to pay for expenses and attorney fees involved in bringing a successful motion to compel absent a showing that the nonparty's conduct is substantially justified or it would be unjust. Fed.R.Civ.P. 37(a)(5)(A); *Marquis v. Chrysler Corp.*, 577 F.2d 624, 641-2 (9th Cir. 1978). As already discussed above, the Bank provided an extension for the Subpoenaed Parties to respond to its subpoena and met and conferred extensively in an effort to obtain the Subpoenaed Parties' compliance without resorting to motion practice. Now, over two months after the original deadline for compliance has passed, the Subpoenaed Parties have still not complied with the subpoenas and have reneged on the agreement struck by their counsel, thereby necessitating the present motion.

The Subpoenaed Parties, at the direction of the Debtor, have forced the Bank to bring this Motion without substantial justification. Both the Bank and the Subpoenaed Parties submitted letter briefs to Judge Hammond regarding this discovery dispute. (See Docket Nos. 97-98; Sacks Decl. ¶ 19) On February 23, the Court issued a tentative order in the Bank's favor, saying that the Subpoenaed Parties lack any apparent basis to avoid the agreement made on their behalf by their

counsel. (See Docket No. 99). The Subpoenaed Parties still have no basis to do so. Accordingly they cannot show that an award of fees and costs would be unjust, or that they have been substantially justified in refusing to produce the requested documents.

As set forth in the supporting Declaration of Steven B. Sacks, the Bank has incurred and will incur no less than $28,975 as a result of having to again pursue a meet and confer process with new counsel for the Subpoenaed Parties and then preparing the letter briefs, filing this motion to compel, preparing a reply brief, and appearing at the hearing. Therefore, the Bank requests that the Subpoenaed Parties and their counsel be ordered to pay, jointly and severally, in the amount of $28,975 to the Bank.

## VI. CONCLUSION

It is now more than two months past the original deadline for the Subpoenaed Parties to produce their responsive documents. Aside from some illusory participation in meet and confer discussions, the Subpoenaed Parties (at Debtor's behest) have responded to the subpoenas with unrepentant obstruction, reneged on agreements, and refused to produce the documents necessary for a fair assessment of Debtor's interest in Coastal Cypress and the value thereof. For the foregoing reasons, the Bank respectfully requests that the Court order the Subpoenaed Parties to abide by the agreement struck by their former counsel and produce all required documents within 10 days of the Court's ruling on this motion. Further, the Bank requests that it be awarded sanctions in the amount of $28,975, as compensation for the costs and fees incurred to obtain the Subpoenaed Parties' compliance with the subpoenas.

Dated: March 2, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     */s/ Steven B. Sacks*
STEVEN B. SACKS
MICHAEL M. LAUTER
ISAIAH Z. WEEDN
Attorneys for MUFG UNION BANK, N.A.