1  CAMPEAU GOODSELL SMITH, L.C.
   SCOTT L. GOODSELL, #122223
2  WILLIAM J. HEALY, #146158
   440 N. 1st Street, Suite 100
3  San Jose, California  95112
   Telephone:  (408) 295-9555
4  Facsimile:   (408) 295-6606

5  Attorneys for Debtor

6

7

8                   UNITED STATES BANKRUPTCY COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                           San Jose Division

11

12  In re:                          )  Case No. 15-50801
                                    )
13  ROBERT S. BROWER, SR.,          )  CHAPTER 11
                                    )
14                   Debtor.        )  **SECOND AND FINAL**
                                    )  **APPLICATION FOR**
15                                  )  **COMPENSATION AND**
                                    )  **REIMBURSEMENT OF EXPENSES**
16                                  )  **BY FORMER ATTORNEY FOR**
                                    )  **DEBTOR**
17                                  )
                                    )  Date:  July 27, 2017
18                                  )  Time: 10:30 a.m.
                                       Location:
19                                        United States Bankruptcy Court
                                          280 S. First St., Rm. 3020
20                                        San Jose, CA 95113
                                       Judge: Hon. M. Elaine Hammond
21

22  _____ )

23  **TO THE HONORABLE M. ELAINE HAMMOND, UNITED STATES**

24  **BANKRUPTCY COURT JUDGE; THE UNITED STATES TRUSTEE; ROBERT S.**

25  **BROWER, SR. ("BROWER" OR "DEBTOR"), AND OTHER PARTIES IN**

26  **INTEREST:**

27        Campeau Goodsell Smith ("CGS" or "Applicant"), former general bankruptcy counsel

28  to Robert S. Brower, Sr., debtor-in-possession ("Debtor") in the above entitled bankruptcy

---

case ("Bankruptcy Case"), submits this Second and Final Application for Compensation And Reimbursement of Expenses by Former Attorney for Debtor ("Final Application") pursuant to sections 328 and 330 of title 11 of the United States Code, as amended (the "Bankruptcy Code"); Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses (the "Compensation Guidelines" or "Guidelines") promulgated by the Executive Office of the United States Trustee pursuant to 28 U.S.C. § 586 (a)(3)(A). By this Final Application, Applicant seeks, among other things, (a) final approval of compensation for services rendered and costs incurred relative to the period of March 11, 2015 through September 30, 2015 in the sum of $87,655.00 for attorney's fees and $1,838.50 for costs (before credit for retainer in the amount of $25,000.00 and after a voluntary reduction of $5,745 in attorney's fees) ("First Application Period"), (b) final approval of compensation for services rendered and costs incurred for the period of October 1, 2015 through June 29, 2017 in the sum of $66,229.50 for attorney's fees and $0.00 for costs ("Second Application Period"), and (c) final approval of compensation and costs incurred by Applicant in the Adversary Proceeding entitled MFUG Union Bank, N.A. v. Robert Brower, Sr., Case No.: 15-05119 in the sum of $123,455.00 for attorney's fees and $1,682.28 for costs ("Adversary Proceeding").

In support of this Final Application, CGS submits the CERTIFICATION ON SECOND AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY FORMER ATTORNEY FOR DEBTOR ("Applicant Declaration") and respectfully represents as follows.

**I. Introduction.**

Since the initial meeting with Debtor, commencement of the Bankruptcy Case, appointment of Applicant as counsel for the Debtor, and throughout Applicant's representation of Debtor, Applicant served as the Debtor's general bankruptcy counsel. Applicant took a lead role in preparing, submitting, arguing, and/or negotiating a number of pleadings relating to the commencement of the Bankruptcy Case, the administration of the

Case: 15-50801    Doc# 198    Filed: 07/06/17    Entered: 07/06/17 14:03:35    Page 2 of 13

Bankruptcy Case, and the various aspects of Debtor's reorganization efforts. Applicant worked extensively with the Debtor, creditors, and others throughout its representation of the Debtor.

**II. Background.**

In approximately 1982 Debtor and various investors formed Coastal Cypress Corporation ("Coastal") to purchase and own land for a winery in Monterey County. Pursuant to Debtor's schedules he holds approximately 24% ownership interest in Coastal. The property purchase was later financed by two 30 year real property loan from Pacific Capital Bank (now Union Bank) in the amount of approximately $4,800,000. In 1985 Chateau Julien, Inc. ("CJ") was formed to develop and market varietal wines utilizing grapes from Monterey County vineyards. Pursuant to Debtor's schedules he was not a shareholder in CJ. In 1989 CJ obtained a revolving line of credit from Pacific Capital Bank (now Union Bank) and each year thereafter until 2012 the lender renewed (and over time increased) the line of credit to $4,850,000. Applicant understands Debtor guaranteed the loans held by Union Bank and issued to Coastal and to CJ. Although Union Bank was not the original lender on the loans to Coastal and the loan to CJ, as of March 2015 the loans to Coastal totaled approximately $5-6 million and loans to CJ totaled approximately $5 million.

In April 2014 Union Bank gave notice of commencement of default interest claims on the credit line to CJ. CJ continued to send monthly payments to Union Bank, but commencing in late 2014, Union Bank refused some, but not all, of the monthly payments made by CJ.

In September 2014 Union Bank commenced an action in Monterey County Superior Court against CJ and Debtor asserting various causes of action, including breach of contract, appointment of receiver, and breach of guarantee ("State Court Action") and moved for a pre-judgment writ of attachment. This State Court Action and a related Right To Attach Order jeopardized Debtor's ability to recover his investment from Coastal and receive loan payments from Coastal and CJ, challenged the ability of Coastal to close its sale and fulfill its financial obligations, and placed substantial hardship on CJ's ability to fulfill its financial

obligations and continue to operate.

On March 11, 2015 Debtor commenced a Chapter 11 bankruptcy proceeding to preserve his investment in Coastal and loan payments from Coastal and CJ, to protect Coastal's ability to close its sale and fulfill its financial obligations without undue influence from Union Bank, and to protect CJ's ability to continue to operate and fulfill its financial obligations. Per Debtor's schedules, his primary assets consisted of his 24% ownership interest in Coastal (estimated value $600,000), a note payable from Coastal (estimated value $80,000), and a note payable from CJ (stated principal $140,000). At all times Debtor maintained that his assets were his sole and separate property, he did not have any community property, and he was subject to a signed and notarized pre-marital (aka pre-nuptial) agreement which pre-dated his November 8, 1980 marriage to Patricia Brower (then Hendrickson) and provided that their respective property was and shall remain separate property.

On/about April 17, 2015 Coastal sold the real property to an unrelated buyer. The 'closing' was substantially delayed due to a contingency relating to a neighbor's challenge to the sale and an applicable use permit. Upon and after closing Coastal's debts to Union Bank, and Debtor's associated guarantee, were paid in full, CJ's tenancy at Coastal's real property came to a conclusion, and CJ, for all practical purposes and through the work of a receiver appointed in the State Court Action, essentially closed. Applicant understands Coastal has not made a distribution to its shareholders, including Debtor and CJ is subject to a substantial judgment in favor of Union Bank and is without substantive assets.

In October 2015 Debtor, through Applicant, filed a Motion to Sell (aka redeem) his shares in Coastal and bring into the estate $584,200 (230,000 shares at approximately $2.54/share) based on a calculation done by Coastal's accountants Hayashi Wayland, Debtor's declaration, and Debtor's agreement with Coastal (Doc#59). The Motion was subject to opposition from Union Bank and was subsequently denied by the court without prejudice.

In December 2015 Debtor, through Applicant, filed a Motion to Sell (aka redeem) his shares in Coastal and bring into the estate $448,500 (230,000 shares at approximately

$1.95/share) based on a calculation done by Coastal's special counsel, Debtor's declaration, and Debtor's agreement with Coastal following calculation of Coastal then net cash position (Doc#77). This Motion to Sell was delayed several times and for several months at the request of Union Bank so Union Bank could conduct discovery related (and some seemingly unrelated) to the motion. In August 2016 Debtor withdrew the motion because he and the estate did not have the resources (and time prior to the hearing) to respond to all the allegations contained in Union Bank's opposition and, as understood by Applicant, Coastal may have no longer been in a financial position to redeem Debtor's shares at the previously agreed price and amount.

From August 2016 through the conclusion of Applicant's representation of Debtor Applicant sought Debtor's renewal of the motion to sell either independently, as part of a compromise with Union Bank, and/or as part of a Chapter 11 plan.

In April 2017 Union Bank, after securing a non-dischargeable judgment against the Debtor in the Adversary Proceeding, filed a Motion for Relief From Stay to proceed with the State Court Action against Debtor (Doc#154) in order to liquidate its claim against Debtor. Debtor, through Applicant, opposed the motion on the grounds, inter alia, that requiring Debtor to defend himself in the State Court Action, without counsel and financial resources, runs counter to the prime objectives of the bankruptcy, the claims process, and require Debtor to defend himself in forma pauperis. Debtor was not agreeable to resolve the State Court Action by stipulation. Applicant, which recognized it was counsel of record for Debtor in the State Court Action, filed a motion to be relieved as counsel. Immediately prior to the continued June 30, 2017 hearing on Applicant's motion, Debtor secured alternative counsel.

In May 2017 Debtor filed a Status Conference Statement indicating Debtor required ninety (90) days to put forth a Chapter 11 plan–a plan which Applicant believed would include a sale (or redemption) of Debtor's shares in Coastal.

In May 2017 Union Bank filed an Adversary Proceeding against Debtor, Debtor's spouse, Coastal, and various others asserting declaratory relief causes of action relative to Debtor's potential assets (MFUG Union Bank, N.A. v. Robert Brower, Sr., USBC (ND CA)

#17-05044)("2nd Adversary Proceeding"). Union Bank subsequently amended the 2nd Adversary Proceeding to include a cause of action for recovery of an alleged post-petition transfer of assets relating to Coastal's merger with a newly formed non-California entity also known as Coastal. Applicant was unaware and not involved in any aspect of Coastal's alleged merger until it read the assertion in Union Bank's May Status Conference (Dock#170). Applicant promptly advised Debtor of the filing of the 2nd Adversary Proceeding, advised Debtor that it would not be representing Debtor in that action, and was not directly involved in that action.

On May 18, 2017 Applicant filed a Motion to Withdraw as Debtor's counsel (Doc#167). Applicant's motion was granted effective July 7, 2017. On June 30, 2017 a Substitution of Attorneys was filed whereby Applicant substituted out as Debtor's counsel and new counsel appeared (Doc#197).

In May 2017 Union Bank filed a Combined Plan of Reorganization and Disclosure Statement Dated May 23, 2017 (Doc#173). Debtor, through Applicant, asserted objections to the Combined Plan of Reorganization and Disclosure Statement. The court held a hearing on the Combined Plan of Reorganization and Disclosure Statement on June 15, 2017. Union Bank subsequently filed a First Amended Combined Plan of Reorganization and Disclosure Statement (Doc#193). In May 2017 Union Bank also filed a Motion for Derivative Standing belatedly seeking standing to pursue the 2nd Adversary Proceeding (Doc#177). Debtor, through Applicant, opposed the motion on the grounds, inter alia, that the motion failed to adequately address the potential recovery, costs, risks, and net benefit to the estate. The court held a hearing on June 15, 2017 and granted the motion.

**II. Prior Application for Compensation.**

On October 14, 2015 Applicant filed its First Interim Application for Compensation for the period of March 11, 2015 through September 30, 2015 (Doc#57)("First Application") wherein Applicant sought attorneys fees totaling $87,655 ($83,787.50 in attorneys fees and $3,867.50 in compensation for preparation of the First Application) and costs of $1,838.50. Debtor supported the First Application (Doc#64). Applicant submitted a voluntary reduction

of $5,745 to the First Application (See Reply, Doc#66). On November 10, 2015 this court issued an Order Re: First Interim Application for Compensation and Reimbursement of Expenses by Attorney for Debtor (Doc#70) regarding the First Application and First Application Period (Doc#70) and awarded Applicant, on an interim basis, attorney's fees of $61,432.50 and costs of $1,838.50[1].

Applicant applied the $25,000 retainer referenced in its Rule 2016(b) Disclosure of Compensation (Doc#2) and Application for Order Appointing Counsel for Debtor (Doc#16). Applicant has not been paid additional monies by the Debtor, or any third party, relative to the Bankruptcy Case, First Application, or November 10, 2015 order.

## III. General Case Administration.

Applicant also conferred with Debtor concerning the obligations required of him pursuant to the Bankruptcy Rules and the U.S. Trustee Guidelines, including preparation of monthly operating reports, U.S. Trustee Quarterly Fees, and Periodic Reports and assisted Debtor in the preparation of such reports. Applicant communicated on various subjects with representatives of the U.S. Trustee's office and the Bankruptcy Clerk's office with respect to issues arising in this case. Applicant regularly conferred with various other counsel taking part in this case either as creditor, interested party, or third party.

In connection with the foregoing, over the past 21 months, Applicant has expended 47.0 hours, at a cost to the estate of $19,792.50.

## IV. Main Case Discovery.

Debtor and Applicant experienced various discovery in the main case and not directly related to the sale motions. This main case discovery included, but was not limited to 2004 subpoena(s), the State Court Action and liquidation of a creditor claim, the work of the Receiver in the State Court Action relative to the potential and actual recovery against the underlying debt associated with Debtor's guarantee, background information regarding Debtor and his business interest, and other potential issues.

---

[1]The court, as reflected on the docket (Docket Entry dated 11/05/2015), allowed on an interim basis attorneys fees at 75% ($61,432.50 is 75% of $81,910 ($87,655-$5,745)) and costs.

In connection with the foregoing, over the past 21 months, Applicant has expended 24.8 hours, at a cost to the estate of $9,927.50.

**V. Asset Sales.**

As discussed hereinabove, Debtor, with Applicant concluded that the sale of Debtor's primary assets, namely his interest in Coastal. As Debtor's interest in Coastal rests in a private corporation, Applicant conferred with Debtor regarding various options to market and sell the asset, redeeming said asset, the necessity of securing court approval of same, and related distribution, valuation, and tax issues.

In connection with the foregoing, over the past 21 months, Applicant has expended 27.1 hours, at a cost to the estate of $10,747.50.

**VI. Sale Motion Discovery.**

As discussed hereinabove, Union Bank sought and obtained multiple and extended delays relative to the second sale motion in order to conduct discovery primarily related to the number and value of Debtor's interest in Coastal and conducted various discovery from Debtor and from third parties as part of this effort.

In connection with the foregoing, over the past 21 months, Applicant has expended 37 hours, at a cost to the estate of $15,705.00.

**VII. Creditor Motions and Plan.**

As discussed hereinabove, Union Bank filed and pursued three substantive motions, namely relief from stay to pursue liquidation of its claim in the State Court Action, belated derivative standing to pursue the 2nd Adversary Proceeding, and approval of its Combined Disclosure Statement and Plan. Applicant advised and consulted Debtor regarding these various motions and responses thereto, asserted, as discussed hereinabove, Debtor's position and objections to these various motions, and argued Debtor's position and objections to these various motions on behalf of the Debtor and estate.

In connection with the foregoing, over the past 21 months, Applicant has expended 16.5 hours, at a cost to the estate of $7,082.00.

*//*

**VIII. Adversary Proceeding.**

Applicant recognizes that defense of the Debtor[2] as defendant in the Adversary Proceeding is generally not subject to Sections 327-331 and consistently advised Debtor. However, Applicant submits that this Court, rather than an unfamiliar trier of fact or jurisdiction, is best suited to address the nature, extent, and reasonableness of Applicant's compensation for the Adversary Proceeding.

The Adversary Proceeding was filed on August 14, 2015, initially asserted 4 distinct causes of action (2 pursuant to Section 523 and 2 pursuant to Section 727), and sought, in simple terms, to determine Union Bank's debt, asserted at $5,091,299.30 as of the Petition Date[3] as non-dischargeable and to deny Debtor any discharge of his debts—initially scheduled at $11,200,574 but subsequently reduced to approximately $5,230.574 (reduced by $5,970,000 following the exoneration of a debt allegedly guaranteed by Debtor).

Union Bank was represented by at least 2 attorneys throughout the entire pendency of the matter. Attorney William J. Healy was primarily responsible for representation of Debtor in the matter, although Attorney Scott L. Goodsell charged 0.3 hours to the matter.

Applicant conducted an initial evaluation of the Adversary Proceeding, consulted with the Debtor regarding the various claims and causes of action, with Debtor prepared an answer to the matter, with Debtor prepared a discovery plan, and with Debtor prepared a defense to the matter.

Debtor's discovery was focused primarily on the claims and causes of action asserted in the Adversary Proceeding and on 1st Party discovery to Union Bank. Union Bank's document productions were numerous, were spread over several months, and consisted of approximately ten-thousand pages of documents. Union Bank's discovery was directed as both the Debtor and to various third parties, each of which was represented by separate

---

[2]Applicant uses the term "Debtor" although the correct title for the Debtor in the Adversary Proceeding was "Defendant" or "defendant".

[3]This figure appears to exclude attorney's fees and costs potentially recoverable pursuant to Union Bank's underlying documentation with its borrower and with Debtor.

Case: 15-50801    Doc# 198    Filed: 07/06/17    Entered: 07/06/17 14:03:35    Page 9 of 13

counsel and each which separately asserted rights in response to Union Bank's discovery. Applicant was required to address, to the extent necessary, certain aspects of such third party discovery. Non-written discovery consisted of numerous 3rd party depositions and Debtor's deposition in Monterey and the deposition of Union Bank's designated representative in Los Angeles. Numerous other factual witness depositions were contemplated and/or noticed, but eventually were not taken[4].

Applicant provided Debtor with guidance and recommendations regarding resolution of the Adversary Proceeding throughout the representation, including prior to, during, and after a mediation before Hon. Stephen L. Johnson and relative to discussions between counsel.

Immediately prior to trial and formally at the pre-trial conference Union Bank abandoned 2 of its claims/causes of action (1 under each Section 523 and 727). Following submission and approval of a joint pre-trial conference statement, submission of various motions and briefing, the matter proceeded to trial. After a 2 day trial and closing arguments, the court issued its decision finding for Debtor under Section 727 and against Debtor under Section 523.

Applicant services concluded at the conclusion of the trial.

In connection with the foregoing, over the course of approximately 20 months, Applicant has expended 300.50 hours, charged Debtor for 291.40 hours at a cost of $123,455[5], and incurred costs of $1,682.28. The hours expended by Applicant are broken down as follows:

| | | |
|---|---|---|
| A. General Case Administration. | $18,317.50 | 43.1 hours |
| B. General Pleadings and Research. | $19,720.00 | 47.4 hours |
| C. 1st party Written Discovery. | $12,452.50 | 29.3 hours |
| D. 3rd party Written Discovery. | $19,075.00 | 44.8 hours |
| E. Non-Written Discovery. | $17,850.00 | 42.0 hours |
| F. Pre-Trial Preparation. | $18,785.00 | 44.2 hours |
| G. Trial. | $17,255.00 | 40.6 hours |

[4]Some discovery material existed in the form of deposition and trial testimony, including of Debtor, and substantial document productions, from Union Bank's State Court Action against its borrower Chateau Julien, Inc.

[5]Applicant received a payment of $8,075 in December 2015 from non-estate funds.

**IX. Final Fee Application.**

Applicant has spent approximately 7 hours in preparing this Final Application at a cost of approximately $2,975.00. (Per Guidelines, $3,162.50 is 5% of the Final Application sum).

Time spent on the Adversary Proceeding portion of the Final Application was not included in the Final Application or this calculation.

**X. Debtor's Financial Status.**

Applicant is informed and believes that Debtor has approximately $2,849 in cash in his DIP account, a vehicle valued at $15,715, $259,900 in stock in corporations (apparently Coastal shares were valued at approximately $1.00/share), and $159,784 in retirement monies (per May 2017 Monthly Operating Report/Doc#179). As discussed hereinabove, the nature, extent, and value of Debtor's assets are subject to the 2nd Adversary Proceeding (AP#17-05044).

**XI. Conclusion[6].**

In the course of representation in these matters during the Second Application Period, Applicant has devoted in excess of 152 hours of professional services in the main case and in excess of 291 hours in the Adversary Proceeding, as indicated on Applicant's project billing statements, which are attached as Exhibit A and Exhibit D respectively. The hours and individuals who have performed specific services relative to the main case (not the Adversary Proceeding which is summarized above) are summarized as follows:

| | | |
|---|---|---|
| Scott L. Goodsell (SLG) | $475.00/hr. | 7.1 hours |
| Scott L. Goodsell (SLG) | No Charge | ----------- |
| William J. Healy (WJH) | $425.00/hr. | 144.4 hours |
| William J. Healy (WJH) | No Charge. | 0.9 hours |

In view of the time expended and the responsibilities assumed, Applicant respectfully submits that the reasonable value of its services hereinabove set forth is $63,255.00 during the Second Application Period (Adversary Proceeding totals are summarized above).

Applicant has also expended the sum of $0.00 for court fees, transcripts, photocopying,

---

[6]Applicant's hourly rates were not changed during its representation of Debtor.

postage, telephone and other costs, as set forth in Exhibit B[7]. All requests for costs are based on the Guidelines for Compensation of Professionals.

Applicant believes that the services so rendered and costs so incurred herein were necessary and that the fees and costs requested constitute reasonable and necessary fees expended on behalf of the estate. In accordance with its Rule 2016(b) Disclosure of Compensation, Applicant has previously received $25,000.00 pursuant to the agreed upon retainer in connection with the Chapter 11 case. No part of the monies previously received by Applicant has been shared with any person, and no agreement or understanding exists between Applicant and any other person for the sharing of compensation received or to be received for services rendered in connection with this case, except with the members and associates of Applicant's law firm.

WHEREFORE, Applicant prays that this court enter an order granting (a) final approval of compensation for services rendered and costs incurred relative to the period of March 11, 2015 through September 30, 2015 in the sum of $87,655.00 for attorney's fees and $1,838.50 for costs (before credit for retainer in the amount of $25,000.00 and after a voluntary reduction of $5,745 in attorney's fees) ("First Application Period"), (b) final approval of compensation for services rendered and costs incurred for the period of October 1, 2015 through June 29, 2017 in the sum of $66,229.50 for attorney's fees and $0.00 for costs ("Second Application Period"), (c) final approval of compensation and costs incurred by Applicant in the Adversary Proceeding entitled MFUG Union Bank, N.A. v. Robert Brower, Sr., Case No.: 15-05119 in the sum of $123,455.00 for attorney's fees and $1,682.28 for costs ("Adversary Proceeding"), (d) an order directing the Debtor to pay such amounts heretofore unpaid; and (e) for such further relief as this court deems proper.

Dated: July 6, 2017                              CAMPEAU GOODSELL SMITH
                                                /s/ William J. Healy
                                                William J. Healy

---

[7]For administrative and convenience purposes costs, i.e. copying, mailing, etc., have not been included and Exhibit B is not included.

Case: 15-50801    Doc# 198    Filed: 07/06/17    Entered: 07/06/17 14:03:35    Page 13 of
13