CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st St., #100
San Jose, California   95113
Telephone:   (408) 295-9555

ATTORNEYS FOR
Campeau Goodsell Smith, L.C.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

In re:  ) Case No. 15-50801
)
ROBERT S. BROWER, Sr.,  ) CHAPTER 11
)
)
Debtor.  ) **OBJECTION TO CREDITOR MUFG UNION BANK, N.A.'S SECOND AMENDED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT DATED AUGUST 17, 2017**

Date: September 28, 2017
Time: 10:30 a.m.
Place: 280 S. First Street
        San Jose, CA 95113
        Courtroom 3020
Judge: Hon. M. Elaine Hammond

_____ )

COMES NOW, Campeau Goodsell Smith, L.C. ("CGS"), administrative claimant pursuant to 11 U.S.C. 330, 503 (b), and 507 (a)(2) and post-petition creditor[1], and submits the following Objection to Creditor MUFG Union Bank, N.A.'s Second Amended Combined Plan of Reorganization and Disclosure Statement Dated August 17, 2017 (Doc#213) ("Objection") as follows:

//

---

[1] Pursuant to 11 U.S.C. 101 (10) post-petition creditors are not 'creditors' except as set forth therein.

# I. Summary of Objection.

The Plan cannot be confirmed because, inter alia, the Effective Date is illusory and as such the Plan has not been proposed in good faith, is not feasible, and is forbidden by law, the Plan provides for the payment of Debtor's disposable income, which is illusory, without Debtor's consent[2], and the Plan provides for the immediate discharge of post-petition pre-confirmation debts notwithstanding that the Effective Date is illusory, performance has not occurred, and at least CGS' post-petition pre-confirmation debt is not against the estate.

# II. Burden of Proof On Confirmation Rests With The Plan Proponent.

Proponents of the Plan bear the burden of establishing each of these elements (In re Acequia, Inc., 787 F.2d 1352 (9th Cir. 1986)) by a preponderance of the evidence (In re Arnold and Baker Farms, 177 B.R. 648 (9th Cir. BAP 1994), aff'd, 85 F.3d 1415 (9th Cir. 1996), cert. denied, 519 U.S. 1054, 117 S.Ct. 681 (1997)).

# III. The Plan Cannot Be Confirmed Because It Does Not Comply with 11 U.S.C. 1129.

## A. The Plan Fails To Provide For Payment of Administrative Claims on The Effective Date.

11 U.S.C. 1129 (a)(9) provides, in pertinent part, that:

> ". . . with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim . . ."

The Plan provides, in part:

> **"**The "Effective Date" of the Plan will be the fifteenth (15th) business day after the Confirmation Date, provided the condition to effectiveness of the Plan set forth in paragraph 3 of Article X of this Plan has been satisfied. To the extent such condition is not then satisfied, the Effective Date shall occur on the day such condition becomes satisfied.**"** (i.e. Plan, page 1, lines 12-16; see also Conditions To Effectiveness of the Plan, Plan, Section X, page 20)

The Plan's Effective Date is illusory because, as discussed hereinafter, for all practical purposes and for some unknown time (and maybe never), the Plan does not provide for

---

[2]The Plan asserts it is not a liquidating plan but a reorganization plan (Plan, page 16, lines 21-23) which is consistent with its apparent attempted inclusion of Debtor's post-petition income (Plan, page 17, lines 18-20).

payment of administrative claims on the Effective Date. The inclusion and clear reliance on pre-conditions for the Effective Date to occur renders the Effective Date as nothing more than a distant, if ever, speculation and contingency (i.e. contingency agreement).

**B. The Effective Date Remains Illusory and May Never Occur.**

The Plan cannot be confirmed because the Effective Date, subject to the non-specific and open-ended conditions, is illusory and may never occur.

The Plan's Effective Date, as presented and under foreseeable circumstances, could occur at any time, could occur in 1-5 years or more, and could never occur and the open-ended conditions insure that nothing can be done to expedite or insure the Effective Date will ever occur. The Plan provides that nothing of substance will occur unless and until the Liquidating Trustee has sold an estate asset and/or settled the Estate Enhancement Action and received sufficient settlement monies or collected on a favorable judgment in the Estate Enhancement Action at an amount sufficient to satisfy the trustee's fees and expenses, the trustee's related attorney's fees and costs, and administrative claims[3]. In short, the Effective Date is illusory and may never occur.

**C. The Plan Ignores Post-Petition Debts, Fails to Provide For Them Or Allow Them To Object or Vote, But Seeks To Discharge Them.**

As addressed in CGS's Final Fee Application (Doc#198 and #203), MFUG's opposition to CGS's Final Fee Application (Doc#201), and the court's Final Order Allowing Fees and Expenses of Campeau Goodsell Smith, L.C. (Doc#209) CGS asserts against Brower, but not against the estate, a post-petition debt associated with CGS's representation of Brower in the Adversary Proceeding (AP Case No. 15-5119). As against CGS's Final Fee Application MFUG argued and the court agreed, as did CGS, that CGS's post-petition debt for the Adversary Proceeding was against Brower and was not against the estate, was not an administrative claim, and therefore was not an allowed claim in the Chapter 11 case.

Accordingly, CGS's post-petition 'claim' against Brower should be excluded from the Plan and not subject to a discharge or injunction.

//

---

[3]Administrative Claims of CGS and potentially of Debtor's current counsel, but apparently not, at least initially, MFUG.

**D. The Proposed Liquidating Trust Asserts a Transfer of Assets Not Belonging to Debtor.**[4]

The Plan cannot be confirmed because it asserts rights over property which is not property of the estate, namely CGS's work product. The Plan (page 17, lines 16-18) asserts that the proposed Liquidating Trust includes "all of the books and records of the Debtor, including attorney-client privilege, work product privilege, or other privilege or immunity in connection therewith . . .".

CGS, and not Debtor, holds the work product privilege. (Tucker Ellis LLP v. Superior Court of San Francisco, 2017 Cal. App. LEXIS 571 (Cal. Ct. App. 2017) or (June 21, 2017, A148956) 12 Cal.App.5th 1233) (the law firm holds the "privilege"). Neither Debtor nor the Plan can assert rights over non-debtor or non-estate property.

**E. The Plan Purports to Have CGS Violate The Attorney-Client Privilege.**[5]

The Plan cannot be confirmed because it asserts rights over and a fundamental waiver of Debtor's and non-debtor Brower's attorney-client privilege. The Plan (page 17, lines 16-18) asserts that the proposed Liquidating Trust includes "all of the books and records of the Debtor, including attorney-client privilege, work product privilege, or other privilege or immunity in connection therewith . . .". Thus, the Plan appears to provide that CGS to violate Debtor's and non-debtor Brower's attorney-client privilege with respect to the main case and now closed adversary proceeding respectively). (See Cal.Evid.Code Sections 950-962)

One of the most important duties of an attorney is to preserve the secrets of his client. "No rule in the ethics of the legal profession is better established nor more rigorously enforced than this one." Wutchumna Water Co. v. Bailey, 216 Cal. 564, 572 (1932). That duty is enforced not only by rule 3-100, but also by statute. The State Bar Act, Business and Professions Code section 6068(e)(1), states it is the duty of an attorney "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Cal. Bus. & Prof. Code § 6068(e)(1) (West 2004). It is undisputed that a lawyer's duty of confidentiality, as well as his duty to preserve attorney-client privileged

---

[4] CGS does not speak for Debtor's and defendant Brower's current counsel.

[5] CGS does not speak for Debtor's and defendant Brower's current counsel.

communications, survives the termination of the lawyer-client relationship. See People v. SpeeDee Oil Change Sys., Inc., 20 Cal. 4th 1135, 1147 (1999). After all, if a client knew that his lawyer could disclose his darkest secrets the minute the relationship ended, no rational client would trust his lawyer with those secrets in the first place. But the duty to maintain a former client's secrets may be broader than many lawyers realize. The duty requires not only refraining from telling others the secrets of one's client, but also refraining from using the confidential knowledge against the former client.

### F. The Plan Cannot Be Confirmed Because It Was Not Presented In Good Faith.

The Plan cannot be confirmed because it was not presented in good faith. Three further (to those listed hereinabove) examples of the lack of good faith are (1) the illusory Effective Date; (2) the Plan's provision to exclude post-petition creditors (i.e. Plan, Page 24, lines 3-4), (3) the Plan's assertion that it "believes that GAW is liable to it for the debts of Chateau Julien . . . the Bank does not believe that the Debtor or his bankruptcy estate has claims against GAW such that the Liquidating Trustee would succeed to them" (Plan, page 19, lines 11-13), and (4) the Plan's failure to address the apparent potential conflict of interest between the Union Bank's prosecution of the Estate Enhancement Action and its own intention to assert alter ego claims by and for itself (Plan, page 19, lines 11-13).

The illusory nature of the Effective Date indicates the Plan was not proposed in good faith and is nothing more than a speculative, contingency plan.

To the extent the Plan seeks to exclude and then discharge post-petition creditors, without identification, without notice, or without the right to vote, demonstrates the Plan was not proposed in good faith especially when such claims are not against the estate.

Pursuant to In re O'Reilly & Collins, No. C 13-3177 PJH (N.D. Cal. Feb. 3, 2014) and In re Howrey LLP, No. 14-cv-03062-JD (N.D. Cal. July 14, 2014), discussing AHCOM, LTD., v. Hendrik SMEDING, 623 F.3d 1248, 1250 (9th Cir. 2010), the extent of the Debtor's or estate's rights to pursue alter ego or similar claims against Great American Wineries, Inc. ("GAW") is potentially broader then represented in the Plan and the 'under sell' of this potential claim demonstrates the Plan was not proposed in good faith.

The Plan does not address the potential inherent conflict of interest between the Union

Bank and the estate, and thus the Liquidating Trustee, relative to alter ego or similar claims against GAW and Chateau Julien, Inc. ("Chateau Julien"). Debtor's schedules indicate Debtor guaranteed the debt of Chateau Julien to Union Bank, as the court is aware Coastal Cypress loaned GAW substantial funds, and prosecution and enforcement of claims against GA, whether by Union Bank or the Liquidating Trustee, potentially jeopardizes the recovery of Debtor's interest in Coastal Cypress. Also, to the extent that GAW is the successor in interest to, alter ego of, and/or liable for the debts of Chateau Julien, then there is a potential inherent conflict between Union Bank's actions and the Liquidating Trustee's against GAW, i.e. who has standing, which recovery is primary, one party's recovery potentially lessens the other's recovery, and which recovery will Union Bank pursue (its own claim or the estate's claim as proposed counsel for the Liquidating Trustee).

Also, the Plan page 21, lines 24-28) improperly allows Union Bank to enforce its potential judgment against the very same estate assets which results in a further inherent conflict between Union Bank, the Liquidating Trustee, and the estate.

**G. The Plan Does Not Satisfy the Requirements of Section 1129 (a)(5).**

The Plan does not satisfy the requirements of Section 1129 (a)(5) because the Plan proponent has not disclosed any relationship and affiliation between and with the Plan proponent and the proposed Liquidating Trustee.

**H. The Plan Cannot Be Confirmed Because It Purports to Include Debtor's Post-Petition Income.**

Notwithstanding the Plan's acknowledgment that Debtor is unemployed and only receiving limited social security benefits, the Plan purports to include all of the Debtor's net disposable income for the five (5) year period following the Effective Date of the Plan (Plan, page 17, lines 18-20). However, absent Debtor's consent, this provision appears beyond the language of the very section cited in the Plan, namely 11 U.S.C. 1129 (a)(15).

**I. The Plan Cannot Be Confirmed Because It Prematurely Grants a Discharge.**

The Plan cannot be confirmed because it purports to grant Debtor a discharge of debts (other than to Union Bank) upon the effective date (Plan, Section XI, pages 20-21) without

notice and cause. This granting of discharge is premature and should be dependent upon completion of the Plan pursuant to 11 U.S.C. 1141 (d)(5) especially to the extent it seeks to discharge post-petition, pre-confirmation non-administrative debts.

**J. The Plan Cannot Be Confirmed Because It Is Void of Default Provisions.**

The Plan mentions 'default' (Plan, Section X1, page 21) relative to a discharge injunction, but does not have any default provisions which can be referred to, referenced, or relied upon to determine if and when there is a default.

**K. The Plan Cannot Be Confirmed Because the US Trustee Fee and Quarterly Report Provisions Lack Enforcement and Feasibility.**

The Plan provides, in summary, that post-confirmation and pre-effective date the Debtor shall pay US Trustee fees and file quarterly reports (Plan, Section XVI, pages 26-27), but lacks an enforcement provisions or any evidence of feasibility[6].

Similarly, the Plan provides that post the effective date the Liquidating Trustee shall pay US Trustee fees and file quarterly reports (Plan, Section XVI, page 26-27), but lacks any evidence of feasibility relative to payment of US Trustee fees. The effectiveness of the Plan (Plan, Section X, page 20) is conditioned upon, among other things, "sufficient funds to pay all Allowed administrative claims in this Case in full". Thus, the Plan may be effective but leave the estate or Liquidating Trustee without sufficient funds to pay US Trustee fees post the effective date. These omissions are compounded by the absence of any default provisions (see part J hereinabove)

**IV. Conclusion.**

For the foregoing reasons the Plan cannot be confirmed.

Dated: September 21, 2017
                            CAMPEAU GOODSELL SMITH
                             /s/ William J. Healy
                            William J. Healy

---

[6]CGS recognizes Debtor may express willingness and ability to make said payments and file such reports but submits there is no evidence of such willingness or ability and the commitment from Debtor is unlikely.