JAURIGUE LAW GROUP
Michael J. Jaurigue (SBN 208123)
  michael@jlglawyers.com
Ryan A. Stubbe (SBN 289074)
  ryan@jlglawyers.com
300 W. Glenoaks Blvd., Suite 300
Glendale, California 91202
Telephone: (818) 630-7280
Facsimile: (888) 879-1697

*[Proposed] Attorneys for Robert S. Brower, Sr.,
Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 15-50801 |
| ROBERT S. BROWER, SR., | Chapter 11 |
| Debtor. | **OBJECTION TO CREDITOR MUFG UNION BANK, N.A.'S SECOND AMENDED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT DATED AUGUST 17, 2017** |
| | <u>Plan Confirmation Hearing</u> |
| | Date: September 28, 2017<br>Time: 10:30 a.m.<br>Place: 280 S. First Street<br>      Courtroom 3020<br>      San Jose, CA 95113<br>Judge: Hon. Elaine Hammond |

Robert S. Brower, Sr., the debtor and debtor-in-possession ("Debtor") submits the following Objection to the Second Amended Combined Plan of Reorganization and Disclosure Statement Dated August 17, 2017 (Docket No. 216) (the "Plan") filed by Creditor MUFG Union Bank, N.A. (the "Bank").

## I. INTRODUCTION

The Bank, as plan proponent, carries the burden of proving by a preponderance of evidence that the Plan complies with the statutory requirements for confirmation under §§ 1129(a) & (b). *In re Arnold & Baker Farms*, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994), *aff'd*, 85 F.3d 1415 (9th Cir. 1996). The Bank has failed to meet its burden.

First, the Plan cannot be confirmed because the Effective Date is uncertain—the Plan could take years to become effective, if it ever does. The Plan unreasonably shifts the risk attendant to this delay, including potential plan failure, onto the estate's priority and general unsecured creditors (other than the Bank).

Second, the Bank has failed to establish that the Plan is feasible or in the best interests of creditors. The Bank has presented no evidence of the value of the estate's assets as of the Effective Date of the Plan. Given the potentially long and indeterminate delay until the Effective Date, asset values could decrease and priority claims could be substantially higher than estimated in the Plan. Without evidence of the estate's assets and liabilities as of the Effective Date, the Court has no basis for finding that the Plan is feasible or in the best interest of creditors.

Third, the Plan impermissibly transfers the Debtor's privileged books and records, including any attorney-client privilege and work product privilege to the Liquidating Trust. The attorney that created the work product privilege is the sole holder of the privilege, and it is therefore not property of the estate. In addition, federal common law prohibits an individual debtor's attorney-client privilege from passing to a bankruptcy trustee.

Because the Plan fails to satisfy the requirements of the Bankruptcy Code, confirmation should be denied.

## II. THE EFFECTIVE DATE IS DELAYED AND UNCERTAIN, UNREASONABLY SHIFTING RISKS OF FAILURE TO CLAIMANTS

The effective date of a proposed Chapter 11 plan should be reasonably close to the date of confirmation, especially where the gap between those two events is likely to prejudice creditors or affect any relevant findings on confirmability of the plan. *In re European Industrial Development Co., LLC*, 288 B.R. 572, 577 n. 7 (Bankr. N.D. Cal. 2003); *see also* Kenneth K. Klee, Adjusting Chapter 11: Fine Tuning the Plan Process, 69 Am. Bankr. L.J. 551, 560-61 (1995) (proposing the enactment of a statute defining "effective date" to bear "some reasonable relationship to the confirmation-hearing date").

Here, the Effective Date is contingent on the Liquidating Trustee securing a sale of the Estate's assets in an amount sufficient to pay administrative creditors in full. (Plan at 20:8-9.) The Plan does not specify an exact Effective Date, and it could take years to occur. (*See, e.g.,* Plan at 1:26 (effective date is anticipated to take effect after the resolution of the Bank's recently filed adversary proceeding).) Indeed, the Effective Date may not occur at all, if the Liquidating Trustee fails to obtain adequate sale proceeds. (Plan at 22:12-15.)

Several courts have held that a Plan with a delayed and contingent effective date is unconfirmable, especially where the Plan shifts risks to claimants:

> Courts are typically reluctant to confirm a plan that shifts risk to the claimants. The plan of reorganization must provide the claimants with at least as much as they would receive in liquidation. Although the present Plan proposes to pay claimants required to be paid on the effective date, extending and creating uncertainty as to the effective date forces these priority claimants to subsidize the proposed joint Plan and bear the risks of failure...

*In re Premier Network Services, Inc.*, No. 04-33402-HDH-11, 2005 WL 6443624 at *5 (Bankr. N.D. Tex. July 1, 2005) (finding plan infeasible due to delayed and uncertain effective date); *In re Yates Development, Inc.*, 258 B.R. 36, 43 (Bankr. M.D. Fla. 2000) (plan with a delayed and contingent effective date failed to comply with Section 1123(a)(5), where claimants bore all the risk of delay); *Potomac Iron Works*, 217 B.R. 170, 174 (Bankr. D. Md. 1997) (holding that a delay of more than one year between the confirmation order and the effective date is unreasonable where it forces claimants to bear risk of delay); *In re Krueger*, 66 B.R. 463, 465 (Bankr. S.D. Fla. 1986) (finding a four month delay in effective date unreasonably resulted in claimants subsidizing plan); *compare Financial Security*

*Assurance, Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 188 B.R. 799, 805 (E.D. La. 1995) (where debtor would continue to make cash collateral payments there was no prejudice in delays to effective date if secured creditor appealed), *aff'd*, 116 F.3d 790 (5th Cir. 1997);

By extending and creating uncertainty as to the Effective Date, the Bank's Plan shifts the risks of delay and potential Plan failure to the estate's priority claimants and general unsecured creditors (other than the Bank). The estate's claimants are forced to wait for a date that may occur years after confirmation, if it occurs at all. The estate's claimants bear several risks attendant with such a delay, including potential diminishment of estate assets, and increased priority expenses. Moreover, unlike the debtor in *Financial Security Assurance, Inc.*, the Plan offers nothing (such as periodic payments) to claimants to mitigate any prejudice from delaying the Effective Date.

The Plan exacerbates the delay of the Effective Date by depriving the Liquidating Trustee of authority over the estate's Causes of Action during the post-confirmation, pre-effective period. (Plan at 18:9-14.) By depriving the Liquidating Trustee of the ability to settle or sell the Causes of Action, including the Estate Enhancement Action, the Plan unreasonably limits the possibility of early liquidation. *See In re Krueger*, *supra*, 66 B.R. at 465 (effective date deferred beyond the reasonable interval for liquidation is unreasonable).

### III. THE BANK HAS FAILED TO ESTABLISH THAT THE PLAN IS FEASIBLE OR IN THE BEST INTERSTS OF CREDITORS

The "effective date" of the plan is expressly designated as the critical point for the major financial standards for confirmation. *See* §§ 1129(a)(7), 1129(a)(9), 1129(b). The valuations required by these sections are less accurate if the effective date is not close to the date of the confirmation hearing. *In re Jones*, 32 B.R. 951, 958 n.13 (Bankr. D. Utah 1983). Denial of confirmation is appropriate where the gap between confirmation and effectiveness would likely affect any relevant findings on confirmability of the plan. *In re European Industrial Development Co., LLC*, 288 B.R. 572, 577 n. 7 (Bankr. N.D. Cal. 2003). Here, as a result of the delayed and uncertain Effective Date, the Bank has failed to meet its burden of establishing that the Plan is both (1) in the best interests of creditors, and (2) feasible.

A confirmable Chapter 11 plan must meet the "best interests of creditors test," which protects

individual class members who did not vote to accept the plan. 11 U.S.C. § 1129(a)(7). The Court must make specific findings whether each impaired claim holder would receive, as of the effective date, no less under the plan than it would under Chapter 7. 11 U.S.C. § 1129(a)(7)(A)(ii); *see also In re M. Long Arabians*, 103 B.R. 211, 217 (9th Cir. BAP 1989) (without information regarding assets, "court did not have a proper factual basis to make an informed decision" to find compliance with Section 1129(a)(7)). A Chapter 11 reorganization plan must also be feasible to be confirmed. 11 U.S.C. § 1129(a)(11). In order to establish feasibility, a plan proponent must establish (1) the ability to make payments due on the plan's effective date, and (2) ability to make payments due over the life of the plan.

Here, the estate's assets and liabilities are uncertain as of the effective date. The only evidence that the Bank offers regarding the value of the estate's assets is a reference to the Debtor's most recent sale motion, filed in December 2015 and subsequently withdrawn, which asserted that his 24% interest in Coastal was worth $448,500. The Bank offers no evidence or projections of the value of the estate's assets as of the Effective Date, which could occur several years in the future, if it occurs at all. There is also no evidence of the marketability of the Debtor's uncontested 24% interest in Coastal, a privately-held company. The estate's assets could easily diminish in value due to Coastal's ongoing litigation-related expenses if the effective date occurs years in the future. Similarly, administrative and priority claims that are to be paid in full on the effective date could easily increase. Without evidence of the value of the estate's assets and liabilities as of the *effective date*, the Bank has failed to meet its burden of establishing that the Plan is feasible or in the best interest of creditors. *Compare In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986) (plan feasible where plan proponent provided both "conservative" and "best case" projections, and where plan proponent's experts testified that the estate's assets were attractive and in demand); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 269-272 (Bankr. D. N.J. 1988) (detailed discussion of evidence supporting liquidation analysis for "best interest of creditors" test).

IV. **THE PLAN IMPERMISSIBLY WAIVES WORK PRODUCT AND ATTORNEY-CLIENT PRIVILEGE**

The Plan purports to transfer to the Liquidating Trust "all of the books and records of the Debtor, including attorney-client privilege, work product privilege, or other privilege or immunity in connection therewith…" (Plan at 17:12-20.) This is improper and cannot be confirmed.

The work product privilege is not property of the estate and therefore cannot be transferred by the Plan. The attorney who created the work product is the sole holder of the work product privilege and may effectively assert it even against a client. *Lasky, Haas, Cohler & Munter v. Superior Court*, 172 Cal. App. 3d 264, 278 (Cal. Ct. App. 1985); *see also Clark v. Adams*, No. 2:06-CV-00733-JKS, 2009 WL 807448, at *16 (E.D. Cal. Mar. 27, 2009) (work product privilege is held by the attorney).

Similarly, the Plan cannot waive all of the Debtor's privileges, including the attorney-client privilege. Federal common law prohibits an individual debtor's attorney-client privilege from passing to a bankruptcy trustee. *In re Ginzburg*, 517 B.R. 175, 181 (Bankr. C.D. Cal. 2014).

Historically, several courts considered the Supreme Court's holding in *Commodity Futures Trading Com v. Weintraub*, 471 U.S. 343 (1985) to require, in individual bankruptcy cases, a balancing test that measures the harm to the individual debtor and to the attorney-client privilege against the bankruptcy trustee's need for information. *See, e.g., In re Bazemore*, 216 B.R. 1020, 1024 (Bankr. S.D. Ga. 1998). The Supreme Court has subsequently clarified, however, that the "balancing of interests" test is not recognized as an exception to "one of the oldest, recognized privileges in law." *Swidler & Berlin v. United States*, 524 U.S. 399, 410 (1998). In *Swidler*, the Supreme Court flatly refused to permit any balancing of the attorney-client privilege:

> Balancing *ex post* the importance of the information against client interests, even limited to criminal cases, introduces substantial uncertainty into the privilege's application. For just that reason, we have rejected use of a balance test in defining the contours of the privilege.

*Swidler*, *supra*, 524 U.S. at 409. Any "loss of evidence admittedly caused by the privilege is justified in part by the fact that without the privilege, the client may not have made such communications in the first place. *Id.* at 408. In light of *Swidler*, "federal common law simply prohibits the balancing of the [bankruptcy] trustee's duties and need for the information with the debtor's attorney client privilege." *In re Ginzburg*, *supra*, 517 B.R. at 182 (citing *Murdoch v. Castro*, 609 F.3d 983, 994 (9th Cir. 2010)).

Even if the balancing test applied, the Bank has failed to establish that the Plan's broad privilege waiver is appropriate. The Plan fails to limit the waiver to any specific documents, and fails to provide

5

any justification for why the estate would need such information, or how it would maximize the value of the estate.

On the other hand, there are abundant reasons *not* to permit such a waiver, even if the balancing test applied. The primary purpose of the attorney-client privilege is to encourage clients' "full and frank communication" of facts to their attorneys. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). As the 10th Circuit Court of Appeals stated:

> To let bankruptcy trustees control an individual debtors' attorney client privileges would discourage client confidences; violate individuals' reasonable expectations that so long as they do not abuse the privilege, they alone will decide to waive it; and ignore the distinction that, while a trustee may control a corporate debtor as would its prebankruptcy management, a trustee can no more control an individual debtor than could someone who bought all of the debtor's assets.

*In re Foster*, 188 F.3d 1259, 1268 (10th Cir. 1999); s*ee also In re Hunt*, 153 B.R. 445, 451 (Bankr.N.D.Tex.1992) (in the context of a liquidating trust of Chapter 11 individual debtors' estates, a trustee's attempt to avoid fraudulent transfers and pre-petition preferences of the individual debtors, by examining the debtors' attorneys would chill a full and frank attorney-client communication if sensitive information might be revealed during bankruptcy).

Thus, the Plan should not be confirmed because it provides for a broad waiver of the Debtor's privileges, which is not consistent with federal common law after *Swidler*. Even if the balancing test applied, it would weigh against transferring the privileged books and records to the Liquidating Trust, in light of the non-existent benefit to the estate, and the harm to the Debtor and the attorney-client privilege.

V.      **THE PLAN IS INCONSISTENT WITH SECTION 1129(a)(15)**

The Plan also purports to transfer to the Liquidating Trust "the right to receive all of the Debtor's 'net disposable income' for the five (5) year period following the Effective Date of the Plan, as provided in Section 1129(a)(15) of the Bankruptcy Code." (Plan at 17:18-20.) The language of the Plan is not consistent with the language of Section 1129(a)(15), which only requires that "the value of property to be distributed under the plan is not less than the projected disposable income of the debtor … to be received during the 5-year period beginning on the date that the first payment is due under the plan …"

11 U.S.C. § 1129(a)(15). Moreover, that section only applies if "the holder of an allowed unsecured claim objects to confirmation of the plan."

## VI. CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that confirmation of the Plan be denied.

Dated: September 21, 2017
JAURIGUE LAW GROUP

/s/ *Ryan Stubbe*
Michael J. Jaurigue
Ryan A. Stubbe
*[Proposed] Attorneys for*
*Robert S. Brower, Sr.,*
*Debtor and Debtor-in-Possession*