1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   STEVEN B. SACKS, Cal. Bar No. 98875
3  ssacks@sheppardmullin.com
   MICHAEL M. LAUTER, Cal. Bar No. 246048
4  mlauter@sheppardmullin.com
   ISAIAH Z. WEEDN, Cal. Bar No. 229111
5  iweedn@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
6  San Francisco, CA 94111-4109
   Telephone:    415-434-9100
7  Facsimile:    415-434-3947

8  Attorneys for Creditor
   MUFG UNION BANK, N.A.
9

10             UNITED STATES BANKRUPTCY COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13

14  In re                              | Case No. 15-50801

15  ROBERT BROWER, SR.,                 | Chapter 11

16              Debtor.                 | **MEMORANDUM OF POINTS AND**
                                        | **AUTHORITIES IN SUPPORT OF**
17                                      | **CONFIRMATION OF CREDITOR MUFG**
                                        | **UNION BANK, N.A.'S SECOND**
18                                      | **AMENDED COMBINED PLAN OF**
                                        | **REORGANIZATION AND DISCLOSURE**
19                                      | **STATEMENT DATED AUGUST 17, 2017**

20                                      | Plan Confirmation Hearing:

21                                      | Date:    November 2, 2017
                                        | Time:    10:30 a.m.
22                                      | Place:   280 S. First Street
                                        |          San Jose, CA 95113
23                                      |          Courtroom 3020
                                        | Judge:   Hon. Elaine Hammond
24

25

26

27

28

SMRH:484144267.3                                                    PLAN CONFIRMATION BRIEF

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ...................................................................... 1

II.   FACTUAL BACKGROUND ...................................................... 2

III.  ARGUMENT ............................................................................. 4

      A.    Responses to Objections from the Debtor and CGS. ............ 4

      B.    The Plan Complies With Bankruptcy Code Section 1129(a)(1). ............................ 8

            1.    The Plan Complies With The Classification Requirements Of Bankruptcy Code Section 1122. ....................................... 8

            2.    The Plan Contains All Mandatory Provisions And Certain Permissive Provisions Set Forth In Bankruptcy Code Section 1123. .......... 9

                  a.    Compliance With Bankruptcy Code Section 1123(a)(1) (Classification of Claims) .................................. 9

                  b.    Compliance With Bankruptcy Code Section 1123(a)(2) (Specification of Unimpaired Classes and Interests). ................... 10

                  c.    Compliance With Bankruptcy Code Section 1123(a)(3) (Specification of Treatment of Impaired Classes and Interests). ............ 10

                  d.    Compliance With Bankruptcy Code Section 1123(a)(4) (Provide Same Treatment For Each Claim or Interest Within a Class). ........ 10

                  e.    Compliance With Bankruptcy Code Section 1123(a)(5) (Adequate Means for Implementation of Plan). ................. 10

                  f.    Section 1123(a)(6) Does Not Apply .............................. 11

                  g.    Compliance With Bankruptcy Code Section 1123(a)(7) (Selection of Trustee). ................................... 11

                  h.    Compliance with Section 1123(a)(8) (Payment of Debtor's Future Income to Creditors) ............................. 12

                  i.    Compliance With Bankruptcy Code Section 1123(b) (Permissive Plan Provisions). ............................ 12

      C.    The Debtor Has Complied With The Requirements Of Bankruptcy Code Section 1129(a)(2) (Compliance With Applicable Provisions of Title 11) ............ 13

            1.    Compliance With Bankruptcy Code Section 1121(a) (Who May File a Plan). ................................... 13

            2.    Compliance With Bankruptcy Code Section 1125 (Post-petition Disclosure and Solicitation). ..................... 13

Case: 15-50801    Doc# 228    Filed: 10/26/17    Entered: 10/26/17 13:54:38    Page 2 of 68

3. The Plan Has Been Proposed In Good Faith In Compliance With Bankruptcy Code Section 1129(a)(3)..................................................... 14

4. The Plan Complies With The Requirements Of Bankruptcy Code Section 1129(a)(4) (Payment for Services or Costs in Connection With the Case). ......................................................................... 16

5. The Plan Complies With Bankruptcy Code Section 1129(a)(5) Regarding the Identity of Officers, Directors, and Insiders. ..................... 16

6. The Plan Complies With Bankruptcy Code Section 1129(a)(6) Regarding Governmental Regulatory Approval of Rates. ......................... 16

7. The Plan Satisfies the Requirements Of Bankruptcy Code Section 1129(a)(7) ("Best Interest" Test)..................................................... 17

8. Each Class of Claims and Interests Has Accepted the Plan – Sections 1129(a)(8). ................................................................... 18

9. The Plan Complies With Bankruptcy Code Section 1129(a)(9). ................ 18

10. The Plan Has Been Accepted By At Least One Impaired Class in Compliance With Bankruptcy Code Section 1129(a)(10). ......................... 19

11. The Plan is Feasible and in Compliance with  Bankruptcy Code Section 1129(a)(11). .................................................................. 19

12. The Debtor Will Pay on or Before the Effective Date All Fees Payable Under 28 U.S.C. § 1930 in Compliance With Bankruptcy Code Section 1129(a)(12). ...................................................... 21

13. Section 1129(a)(13) Regarding Retiree Benefits Does Not Apply. ............ 21

14. Section 1129(a)(14) Regarding Domestic Support Obligations Does Not Apply. ......................................................................... 21

15. The Plan Complies with Section 1129(a)(15) Regarding Payments to Unsecured Creditors in the Event of an Objection.................................... 21

16. The Plan Complies With Bankruptcy Code Section 1129(d) Because The Principal Purpose Of The Plan Is Not To Avoid Taxes Or Applicable Securities Laws. ......................................................... 21

IV.  CONCLUSION ......................................................................... 22

SMRH:484144267.3

PLAN CONFIRMATION BRIEF

# **TABLE OF AUTHORITIES**

**Page(s)**

## FEDERAL CASES

*In re Acequia, Inc.*
   787 F.2d 1352 (9th Cir. 1986)...................................................................20

*Brady v. Andrew (In re Commercial Western Fin. Corp.)*
   761 F.2d 1329 (9th Cir. 1985)..................................................................4, 9

*In re Cent. European Indus. Dev. Co. LLC*
   288 B.R. 572 (Bankr. N.D. Cal. 2003) (Montali, J.).................................5

*In re Del Biaggio*
   496 B.R. 600 (Bankr. N.D. Cal. 2012)......................................................15

*In re Drexel Burnham Lambert Group*
   138 B.R. 723 (Bankr. S.D.N.Y. 1992).......................................................17

*In re Eagle-Picher Indus., Inc.*
   203 B.R. 256 (Bankr. S.D. Ohio 1996)......................................................14

*Fla. Partners Corp. v. Southeast Co. (In re Southeast Co.)*
   868 F.2d 335 (9th Cir. 1989)......................................................................11

*In re Haardt*
   65 B.R. 697 (Bankr. E.D. Pa. 1986)............................................................9

*In re Hoff*
   54 B.R. 746 (Bankr. D.N.D. 1985).............................................................13

*In re Jeppson*
   66 B.R. 269 (Bankr. D. Utah 1986)............................................................13

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
   843 F.2d 636 (2d Cir. 1988)........................................................................8

*Katchen v. Landy*
   382 U.S. 323 (1966) .....................................................................................1

*In re Krueger*
   66 B.R. 463 (Bankr. S.D. Fla. 1986)...........................................................5

*In re Montclair Retail Ctr., L.P.*
   177 B.R. 663 (B.A.P. 9th Cir. 1995)...........................................................8

*In re Patrician St. Joseph Partners*
   169 B.R. 669 (Bankr. D. Ariz. 1994).........................................................19

Case: 15-50801    Doc# 228    Filed: 10/26/17    Entered: 10/26/17 13:54:38    Page 4 of
68

*In re Potomac Iron Works, Inc.*
   217 B.R. 170 (Bankr. D. Md. 1997) ...................................................................5

*In re Premiere Services, Inc.*
   2005 WL 6443624 (Bankr. N.D. Tex. July 1, 2005) ........................................5

*Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*
   67 F.3d 1394 (9th Cir. 1995) ..........................................................................8

*In re Rexford Properties LLC*
   558 B.R. 352 (Bankr. C.D. Cal. 2016) ...........................................................8

*In re Smith*
   123 B.R. 863 (Bankr. C.D. Cal. 1991) ..........................................................10

*Steelcase Inc. v. Johnston (In re Johnston)*
   21 F.3d 323 (9th Cir. 1994) ...........................................................................8

*In re Texaco Inc.*
   84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed*
   92 B.R. 38 (S.D.N.Y. 1988) ...........................................................................8

*In re Toy & Sports Warehouse, Inc.*
   37 B.R. 141 (Bankr. S.D.N.Y. 1984) ............................................................13

*United States v. Energy Resources Co.*
   495 U.S. 545 (1990) .....................................................................................20

*In re WCI Cable, Inc.*
   282 B.R. 457 (Bankr. D. Or. 2002) ..............................................................20

*In re Yates Development, Inc.*
   258 B.R. 36 (Bankr. M.D. Fla. 2000) .............................................................5

### FEDERAL STATUTES & RULES

11 U.S.C.
   § 507(a)(2) ....................................................................................................9
   § 507(a)(3) ....................................................................................................9
   § 507(a)(8) ....................................................................................................9
   § 1121 ..........................................................................................................13
   § 1121(a) .....................................................................................................13
   § 1121(c) .....................................................................................................13
   § 1122 .......................................................................................................8, 9
   § 1122(a) ...................................................................................................8, 9
   § 1123 .......................................................................................................8, 9
   § 1123(a) .....................................................................................................9
   § 1123(a)(1) .................................................................................................9
   § 1123(a)(2) ...............................................................................................10
   § 1123(a)(3) ...............................................................................................10

Case: 15-50801   Doc# 228   Filed: 10/26/17   Entered: 10/26/17 13:54:38   Page 5 of 68

SMRH:484144267.3

PLAN CONFIRMATION BRIEF

§ 1123(a)(4)........................................................................................................................10
§ 1123(a)(5)........................................................................................................................10
§ 1123(a)(6)........................................................................................................................11
§ 1123(a)(7)........................................................................................................................11
§ 1123(a)(8)........................................................................................................................12
§ 1123(b)..........................................................................................................................9, 12
§ 1123(b)(1)........................................................................................................................12
§ 1123(b)(2)........................................................................................................................12
§ 1123(b)(3)(B)...................................................................................................................12
§ 1123(b)(4)........................................................................................................................13
§ 1123(b)(5)........................................................................................................................13
§ 1124...................................................................................................................................10
§ 1125............................................................................................................................13, 14
§ 1125(b)..............................................................................................................................13
§ 1126(c)..............................................................................................................................18
§ 1128(a)(7).........................................................................................................................17
§ 1129...............................................................................................................................4, 22
§ 1129(a)(1)...........................................................................................................................8
§ 1129(a)(2).....................................................................................................................13, 14
§ 1129(a)(3).......................................................................................................................6, 14
§ 1129(a)(4)..........................................................................................................................16
§ 1129(a)(5).......................................................................................................................6, 16
§ 1129(a)(5)(A)(i)................................................................................................................16
§ 1129(a)(6)..........................................................................................................................16
§ 1129(a)(7).......................................................................................................................6, 17
§ 1129(a)(8)..........................................................................................................................18
§ 1129(a)(9).........................................................................................................2, 6, 18, 19
§ 1129(a)(10)........................................................................................................................19
§ 1129(a)(11)....................................................................................................2, 6, 19, 20
§ 1129(a)(12)........................................................................................................................21
§ 1129(a)(13)........................................................................................................................21
§ 1129(a)(14)........................................................................................................................21
§ 1129(a)(15).............................................................................................................7, 12, 21
§ 1129(d).........................................................................................................................21, 22
§ 1141(d)................................................................................................................................6
§ 1141(d)(5)...........................................................................................................................7

28 U.S.C.
§ 1930...................................................................................................................................21
§ 1930...................................................................................................................................21
§ 1930(a)(6)..........................................................................................................................21

Federal Rules of Bankruptcy Procedure
Rule 3017(d).........................................................................................................................14

# I.

## INTRODUCTION

The Plan[1] proposed by creditor MUFG Union Bank, N.A. ("Union Bank") in this case establishes a simple mechanism for the liquidation of the estate's assets and distribution of the proceeds to creditors which will be set into place immediately following the resolution of the Estate Enhancement Action,[2] in which Union Bank seeks to augment the estate. The voting creditors in the case <u>unanimously</u> approved the Plan and its simple and expedient liquidation mechanism, which is unsurprising given that the Debtor allowed over two years to pass without even hinting at a resolution to this case that would pay creditors.

The Debtor and his former bankruptcy counsel, Campeau Goodsell Smith ("CGS"), have submitted the only objections to the Plan. They primarily object to the open-ended nature of the Effective Date – there is no set deadline for it to occur, because it will follow the resolution of the Estate Enhancement Action. The objections to the open-ended Effective Date fail on the merits of the Bankruptcy Code sections cited, but also, importantly, on the underlying equities.

One of the primary goals of the bankruptcy process is to promote a prompt and efficient distribution of a bankrupt's limited assets to creditors.[3] The Plan does just that by setting up a mechanism for a quick liquidation that can be implemented as soon as the Estate Enhancement Action is resolved. The Plan involves no ongoing payments or complicated formulas, but will simply take what the Debtor has, liquidate it, and pay the proceeds to creditors.

The Debtor and his now-withdrawn counsel now argue, with great pretense, that the lack of a specific deadline for the occurrence of the Effective Date will prejudice creditors. But the purported delay is wholly attributable to the Debtor's own conduct—he filed this case under

---

[1] "Plan" refers to Union Bank's second amended combined plan and disclosure statement filed on August 17, 2017, as it may be further amended.

[2] The "Estate Enhancement Action" refers to Adversary Proceeding No. 17-05044 filed by Union Bank, as plaintiff, against the Debtor and various other parties, as defendants.

[3] *See, e.g., Katchen v. Landy*, 382 U.S. 323, 328 (1966) ("this Court has long recognized that a chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period") (internal quotations omitted).

1 Chapter 11 in March 2015 but never pursued any course of conduct leading to a plan of
2 reorganization.  But for Union Bank's action in filing this Plan, the Court could have determined
3 this case suitable for dismissal or conversion.

4 In the Estate Enhancement Action, Union Bank contends that the Debtor failed to include
5 all of his assets on his schedules and that creditors are entitled to far more than the Debtor claims.
6 The Debtor's pre-bankruptcy conduct has already led the Court to find Union Bank's claim in this
7 case to be non-dischargeable.  Under these circumstances, the court should confirm the present
8 plan before the final adjudication of the size of the bankruptcy estate, since that is the best and
9 most expedient path to a distribution to creditors.

10 The Debtor's assertions that Union Bank cannot show that the assets will be sufficient to
11 pay administrative creditors is similarly specious, given that the Debtor himself has valued the few
12 assets he admits to having as being worth approximately $450,000, and the administrative claims
13 are estimated to be approximately $150,000.  Short of a cataclysmic drop in value, the liquidation
14 of these assets alone will be sufficient to pay administrative claims, easily satisfying the standards
15 of Sections 1129(a)(9) and 1129(a)(11).

16 Finally, in a few instances, Union Bank has resolved certain specific objections of the
17 Debtor and CGS by making proposed modifications to the Plan.  These proposed modifications set
18 forth in the revised clean and redline copies of a proposed Third Amended Plan filed as <u>Exhibits A</u>
19 <u>and B</u> to this Memorandum.  In addition, certain factual assertions in this Memorandum are
20 supported by the concurrently filed Declarations of Steven B. Sacks, Mark Menda, and Michael
21 Kasolas.  The results of the voting described in this Memorandum are set forth in the Declaration
22 of Michael M. Lauter filed on September 23, 2017.

23 **II.**

24 **FACTUAL BACKGROUND**

25 The Debtor filed this voluntary chapter 11 case roughly 2 ½ years ago, on March 11, 2015,
26 in order dissolve an attachment lien that Union Bank had obtained on his assets in a state court
27 litigation over Union Bank's defaulted loan to the Debtor's company, Chateau Julien, Inc.
28 ("Chateau Julien"), and the Debtor's guarantee of that loan.  *See*, Dkt. No. 1.

SMRH:484144267.3                                                    PLAN CONFIRMATION BRIEF

1   This case seemed relatively straightforward at first blush, with the only asset of any

2   asserted value being the Debtor's interest in Coastal Cypress Corporation ("Coastal"), a real estate

3   holding company that closed a sale of its sole asset in April 2015 shortly after the case was filed.

4   However, further discovery into the Debtor's assets and liabilities revealed that the Debtor's assets

5   were likely much more significant than he claimed in his schedules. Evidence obtained in

6   discovery by Union Bank also raised a number of questions regarding the whereabouts of the

7   proceeds of the Coastal sale, which appeared to have been quickly dissipated by the Debtor, even

8   though he was acting as an estate fiduciary. As a result, Union Bank recently filed the Estate

9   Enhancement Action in order to determine the extent of the Debtor's interests in various assets

10  that he has enjoyed the benefit of but claims to be outside of his estate.

11      Meanwhile, other than dissolving the pre-petition attachment lien by operation of law

12  through the mere filing of the petition, the Debtor achieved nothing in this case. The only

13  significant pleadings even filed by the Debtor were two half-hearted motions to sell the Debtor's

14  interest in Coastal Cypress Corporation ("Coastal") back to Coastal. *See*, Dkt. Nos. 59 and 77.

15  The first sale motion was denied for lack of any evidence supporting the proposed sale price. *See*,

16  Dkt. No. 72. The Debtor voluntarily withdrew the second sale motion after the Bank filed an

17  objection. *See*, Dkt. No. 133.

18      This case languished with no hint of any sort of exit strategy until Union Bank filed the

19  first iteration of the Plan on May 23, 2017. *See*, Dkt. No. 173. The Plan creates a liquidating trust

20  run by a liquidating trustee in order to quickly and efficiently liquidate the estate's assets for the

21  benefit of creditors, once the extent of the estate's assets is resolved via the Estate Enhancement

22  Action.

23      There is only one class of impaired claims or interests in the Plan – Class 1 General

24  Unsecured Claims. As set forth in the Declaration of Michael M. Lauter filed on September 23,

25  2017, Class 1 claimants voted unanimously in favor of accepting the Plan. No votes were

26  submitted in opposition to the Plan. *See*, Dkt. No. 223.

27      There are only two objections to the Plan, predictably both from the Debtor's side – one

28  from the Debtor himself, and one from his former counsel. *See*, Dkt. Nos. 221 and 222. Other

1    than a few minor points which have been corrected through voluntary modifications, none of the

2    arguments have any merit.  The creditors' voice in this case, long ignored as the Debtor sat asleep

3    at the wheel for over two years, should finally be heard by supporting their unanimous choice and

4    confirming this Plan.

**III.**

**ARGUMENT**

7          Under the Bankruptcy Code, a plan "shall" be confirmed if all of the applicable

8    confirmation requirements set forth in Bankruptcy Code Section 1129 are satisfied.  *See Brady v.*

9    *Andrew (In re Commercial Western Fin. Corp.)*, 761 F.2d 1329, 1338 (9th Cir. 1985).  As

10   discussed below, the Plan satisfies all of the applicable confirmation requirements of Section 1129

11   and should therefore be confirmed.

12  **A.**      **Responses to Objections from the Debtor and CGS.**

13         The Debtor and his former counsel, CGS, make a series of objections to confirmation of

14  the Plan.  Most of the objections are baseless and should be rejected, though in certain cases Union

15  Bank has voluntarily modified the Plan in order to address the objection, all as discussed below.

16        (1)     Both the Debtor and CGS make arguments regarding the lack of a specific deadline

17  for the occurrence of the Effective Date in the Plan.  The Debtor argues that the lack of a specific

18  deadline renders the Plan unconfirmable because it "shifts the risk to claimants."  (Debtor

19  Objection, at pp. 2-3).  First and foremost, this argument is specious coming from the Debtor in a

20  situation where: (a) creditors have unanimously voted in favor of the Plan; and (b) the Debtor

21  himself has "shifted the risk" to creditors by doing nothing to pay creditors in his failed two-plus

22  year reign as an estate fiduciary.  The Debtor's feigned concern for a timely payment to creditors

23  at this stage is absurd.  Indeed, the Debtor pretends to care about a timely distribution to creditors,

24  but seeks to deny confirmation of a plan that will actually pay creditors while not proposing any

25  alternative of his own.  So the net effect of accepting the Debtor's argument, purportedly based on

26  a concern to pay creditors promptly, would be to significantly delay any payment to creditors by

27  avoiding any structure that would pay them and sending the case back to the proverbial drawing

28  board.

PLAN CONFIRMATION BRIEF

Second, the Plan will facilitate and expedite a distribution to creditors, not delay it. The reason Union Bank is seeking to confirm the Plan now as opposed to waiting until the Estate Enhancement Action is over is so that there can be a quick and smooth transition from the resolution of that action to the commencement of distributions. If Union Bank were to wait until the Estate Enhancement Action were resolved to propose a plan, there would be a delay of several months in the payment to creditors while the plan process proceeded. Confirming Union Bank's Plan now significantly minimizes the delay between that resolution and commencement of distributions to creditors. Bankruptcy courts have stated that the lack of prejudice to creditors by a delay in the occurrence of the effective date justifies such delay. *See, e.g., In re Cent. European Indus. Dev. Co. LLC*, 288 B.R. 572, 577 n.7 (Bankr. N.D. Cal. 2003) (Montali, J.) (stating that if "there were no real danger of changed facts or prejudice," then a delay of months or years may be appropriate). Here, there is not just a lack of prejudice to creditors; the Plan actually improves their position and decreases, not increases, the time in which they will be paid.

Finally, the cases cited by the Debtor are all distinguishable because they are all debtor-proposed plans where the debtor seeks to use a delay in the effective date to push risk onto creditors, such as by effectively extending the payment period in the plan, or allowing a transaction at the heart of the plan to go effective without knowing if the debtor would have enough money to pay administrative claims.[4] Nothing of the sort is happening here, where the

---

[4] *See, In re Premiere Services, Inc.*, 2005 WL 6443624 at *1 (Bankr. N.D. Tex. July 1, 2005) (debtor's plan contemplated payments over time to priority tax claimants, secured creditors, and unsecured creditors that would commence on effective date, but effective date was open-ended); *In re Potomac Iron Works, Inc.*, 217 B.R. 170, 174-175 (Bankr. D. Md. 1997) (debtor's plan contemplated transfer of going concern business on confirmation date, but delayed effective date for one year to give debtor time to try to collect enough of its accounts receivable to pay administrative claims – in effect allowing the plan to go quasi-effective without having to pay administrative claims or knowing with certainty whether administrative claims would be paid); *In re Yates Development, Inc.*, 258 B.R. 36 (Bankr. M.D. Fla. 2000) (debtor's proposed plan was based on the exercise of a real estate purchase option, and had an effective date conditioned on an appellate court overruling a lower court decision that upheld a penalty clause in the option agreement); *In re Krueger*, 66 B.R. 463 (Bankr. S.D. Fla. 1986) (debtor whose sole asset was a commercial building proposed a plan based on a sale of the building without any agreement for such sale, which plan also attempted to "take unconscionable advantage" of the secured lender by forced the lender to estimate the value of its security under 506 and then attempting to sell the collateral at a higher price under 363(f), effectively subordinating a portion of the lender's claim).

plan is proposed by the Debtor's largest creditor, does not involve ongoing payments by the debtor, and represents the fastest path possible to a distribution for creditors under the circumstances of this case.

The Debtor and CGS make a number of other arguments based on the open-ended effective date. The Debtor asserts that the potential gap causes the Plan to fail the best interests of creditors test of Section 1129(a)(7) and the feasibility test of Section 1129(a)(11). (Debtor Objection, at pp. 3-4). These arguments fail for the reasons discussed in the sections on those requirements below. *See*, Sections III.C.7 and III.C.11 below. CGS, for its part, argues that the lack of a specific deadline for the occurrence of the Effective Date renders the Effective Date illusory, and causes the Plan to violate Section 1129(a)(9), respecting payment of administrative claims. (CGS Objection, at pp. 2-3). However, as discussed below, this argument has nothing to do with Section 1129(a)(9). *See*, Section III.C.9 below.

(2) CGS argues that the Plan improperly discharges its post-petition claim against Brower (as opposed to its post-petition administrative claim against the estate) for fees incurred defending Brower in the non-dischargeability action. While Section 1141(d) provides for the discharge of pre-confirmation claims, Union Bank has amended the discharge section of the Plan to carve-out CGS' claim arising from services in the non-dischargeability action from the discharge and discharge injunction. *See*, Plan, § XI.B.

(3) The Debtor and CGS assert that the Plan violates work product and attorney-client privileges by providing for privileged documents to be turned over to the Liquidating Trustee. (Debtor Objection, at pp. 4-5; CGS Objection, at pp. 4-5). In order to avoid any issue, Union Bank has amended the Plan to remove those documents from the assets transferred to the Liquidating Trust, but to require a detailed privilege log be provided with respect to each document withheld on the basis of privilege.

(4) CGS argues that the Plan was not submitted in good faith. This argument fails for the reasons discussed in the discussion of Section 1129(a)(3) below. *See*, Section III.C.3 below.

(5) CGS argues that the Plan does not satisfy Section 1129(a)(5). As discussed below, while Union Bank disagrees, it has added an additional disclosure to the Plan to address this. *See*,

SMRH:484144267.3

PLAN CONFIRMATION BRIEF

1  Section III.C.5 below.  Also filed concurrently herewith is a Declaration from Mr. Kasolas

2  establishing the lack of affiliation.

3      (6)    The Debtor and CGS argue that the Plan improperly includes the Debtor's post-

4  petition income under Section 1129(a)(15).  (Debtor Objection, at pp. 6-7; CGS Objection, at

5  p. 6).  However, all the Plan does is reserve whatever rights the estate has under that section.  *See*,

6  Plan, § XI.B.1 (including in the description of assets transferred to the Liquidating Trust, "the

7  right to receive all of the Debtor's 'net disposable income' for the five (5) year period following

8  the Effective Date of the Plan, as provided in Section 1129(a)(15) of the Bankruptcy Code").

9  Since CGS will be paid on the Effective Date on its claim against the estate, Section 1129(a)(15)

10  is satisfied by option (A) (payment in full on the effective date), and option (B), which concerns

11  net disposable income, does not apply.  To clarify the matter, Union Bank has added the words "if

12  any" between "Effective Date of the Plan," and "as provided" in the above phrase.

13      (7)    In response to CGS' objection that the discharge section needs to incorporate

14  Section 1141(d)(5) (CGS Objection, at pp. 6-7), Union Bank has revised the Plan accordingly.

15      (8)    CGS argues that the Plan lacks and needs default provisions, and that in particular,

16  the lack of default provisions renders the provision in the Plan that the Debtor will file quarterly

17  reports and pay U.S. Trustee fees in the period after confirmation and before the Effective Date

18  infeasible.  (CGS Objection, at p. 7).  First of all, there will be no distributions in this case until the

19  Effective Date, so the quarterly fee paid to the U.S. Trustee post-confirmation will continue to be

20  the bare minimum $325, which the Debtor has paid with regularity throughout the case.  The

21  Debtor has also regularly made his monthly report filings throughout the case, indicating his

22  ability to file post-confirmation reports on a quarterly basis.  Moreover though, to the extent there

23  are any unpaid U.S. Trustee fees on the Effective Date, Section VII.A of the Plan requires the

24  Liquidating Trustee to pay them on the Effective Date.  Indeed, Section VII.A even lists the U.S.

25  Trustee's fee claim as one of the Administrative Claims to be paid on that date.  Aside from the

26  narrow issue of the reports and U.S. Trustee fees in this gap period, there are no ongoing

27  obligations of the Debtor in the Plan.  The Plan merely creates a liquidating trust that liquidates

28  and distributes whatever assets the Debtor has.  Thus, the concept of a default under the Plan does

SMRH:484144267.3

PLAN CONFIRMATION BRIEF

not apply.  Union Bank has deleted the reference to a default in the Discharge Injunction section of the Plan.  (Plan, § XI.C).

**B.       The Plan Complies With Bankruptcy Code Section 1129(a)(1).**

Bankruptcy Code Section 1129(a)(1) requires that a plan comply with the "applicable provisions of this title."  *See* 11 U.S.C. § 1129(a)(1); *Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995).  "The legislative history of Subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this Subsection to mean provisions of chapter 11 that concern the *form* and *content* of reorganization plans."  *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988) (emphasis added).  The two applicable provisions relating to the form and content of a plan of reorganization are Bankruptcy Code Sections 1122 and 1123, which govern classification of claims and interests and the contents of a plan, respectively.  *See In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988), *appeal dismissed* 92 B.R. 38 (S.D.N.Y. 1988) ("In determining whether a plan complies with Section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to classification of claims and the contents of a plan of reorganization.").  As demonstrated below, the Plan complies with both Bankruptcy Code Sections 1122 and 1123, and thus satisfies the requirements of Subsection 1129(a)(1).

1.       The Plan Complies With The Classification Requirements Of Bankruptcy Code Section 1122.

Section 1122(a) of the Bankruptcy Code requires that each claim or interest within a class be substantially similar to all other claims or interests within that class.  *See* 11 U.S.C. § 1122(a).  Courts are afforded broad discretion to decide the propriety of classification in plans in light of the facts of each case.  *See Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994).  A plan proponent is afforded significant flexibility in classifying claims under § 1122(a) provided there is a reasonable, non-discriminatory basis for the classification scheme and all claims within a particular class are substantially similar.  *In re Montclair Retail Ctr., L.P.*, 177 B.R. 663, 665 (B.A.P. 9th Cir. 1995) (citing *In re Johnston, supra*); *In re Rexford Properties LLC*, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016).

Here, the Plan's classification of Claims satisfies the requirements of Bankruptcy Code Section 1122. The only class of claims in the Plan is Class 1 – General Unsecured Claims. As detailed in the Plan, these consist of Union Bank's unsecured guaranty claim, as well as unsecured claims of other parties that lent money to the Debtor in some form – Wells Fargo, First National Bank of Omaha, American Express, and the Debtor's son, who lent the Debtor money to pay a retainer to his original bankruptcy counsel. These are all general, non-priority unsecured claims substantially similar to each other, and thus are properly classified together in Class 1. There are no priority non-tax claims or secured claims, and so there is no need for any other classes of claims. Accordingly, the Plan meets the requirements of Bankruptcy Code Section 1122(a).

2. **The Plan Contains All Mandatory Provisions And Certain Permissive Provisions Set Forth In Bankruptcy Code Section 1123.**

Bankruptcy Code Section 1123(a) sets forth mandatory requirements for a plan, and Section 1123(b) identifies various permissive provisions that may be included in a plan, but which are not required. Union Bank's Plan proposed in this case complies with both Section 1123(a) and (b).

a. *Compliance With Bankruptcy Code Section 1123(a)(1) (Classification of Claims).*

Bankruptcy Code Section 1123(a)(1) requires that a plan designate classes of claims and interests, other than claims of a kind specified in Bankruptcy Code Section 507(a)(2) (administrative expense claims), Bankruptcy Code Section 507(a)(3) (claims arising during the "gap" period in an involuntary case), and Bankruptcy Code Section 507(a)(8) (priority tax claims). *See* 11 U.S.C. § 1123(a)(1); *see also In re Haardt*, 65 B.R. 697, 700 (Bankr. E.D. Pa. 1986); *accord In re Commercial W. Fin. Corp.*, 761 F.2d 1329, 1334 (9th Cir. 1985).

Section VI of the Plan designates the only class of claims in the case (General Unsecured Claims) that exists, other than administrative claims and priority tax claims. The Plan does not classify administrative or priority tax claims. Thus, the Plan satisfies the requirements of Bankruptcy Code Section 1123(a)(1).

9

SMRH:484144267.3                                                      PLAN CONFIRMATION BRIEF

b.   *Compliance With Bankruptcy Code Section 1123(a)(2) (Specification of Unimpaired Classes and Interests).*

Bankruptcy Code Section 1123(a)(2) requires that a plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2); *see also In re Smith*, 123 B.R. 863, 865 (Bankr. C.D. Cal. 1991). Under Bankruptcy Code Section 1124, a class of claims or interests is impaired unless each claim in that class is treated in either of the following ways: (1) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest is entitled; or (2) the plan cures any default, reinstates the maturity, compensates the holder for damages and does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder. *See* 11 U.S.C. § 1124.

Section VI of the Plan specifies that Class 1 General Unsecured Claims are impaired, thereby satisfying Bankruptcy Code Section 1123(a)(2).

c.   *Compliance With Bankruptcy Code Section 1123(a)(3) (Specification of Treatment of Impaired Classes and Interests).*

Bankruptcy Code Section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). In accordance with Bankruptcy Code Section 1123(a)(3), Section VII of the Plan specifies the treatment of Class 1 which is impaired under the Plan.

d.   *Compliance With Bankruptcy Code Section 1123(a)(4) (Provide Same Treatment For Each Claim or Interest Within a Class).*

Bankruptcy Code Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). As set forth in Section VII of the Plan, the same treatment is provided for each allowed claim in Class 1.

e.   *Compliance With Bankruptcy Code Section 1123(a)(5) (Adequate Means for Implementation of Plan).*

Bankruptcy Code Section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation" and sets forth several examples of such adequate means. 11 U.S.C.

SMRH:484144267.3

§ 1123(a)(5); *see also Fla. Partners Corp. v. Southeast Co. (In re Southeast Co.)*, 868 F.2d 335 (9th Cir. 1989).

The means for implementing the Plan are set forth throughout the Plan, but are primarily described in Section IX of the Plan. As set forth therein, all of the assets of the Debtor will be transferred to a Liquidating Trust established pursuant to a Liquidating Trust Agreement attached to the Plan. The Liquidating Trust will be managed by a Liquidating Trustee who shall liquidate estate assets (that have not already been liquidated), manage and object to claims, and make distributions to creditors pursuant to the provisions of the Plan and the Liquidating Trust Agreement. The Plan will be funded by a sale of the estate's assets, and the extent of those assets is being determined by this Court in the Estate Enhancement Action.

      f.    *Section 1123(a)(6) Does Not Apply.*

Section 1123(a)(6) contains a requirement about provisions of corporate charters that only applies to entity debtors, and thus is inapplicable in this case.

      g.    *Compliance With Bankruptcy Code Section 1123(a)(7) (Selection of Trustee).*

Bankruptcy Code Section 1123(a)(7) requires that a plan:

> contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee.

11 U.S.C. § 1123(a)(7). Pursuant to the Plan, Union Bank has disclosed that Michael Kasolas will be designed as the initial Liquidating Trustee. No party has indicated any objection to the selection of Mr. Kasolas as the Liquidating Trustee. As detailed in the Plan, Mr. Kasolas has extensive experience as a chapter 7 trustee, chapter 11 trustee, and liquidating trustee, and is amply qualified for the position. Mr. Kasolas' selection as Liquidating Trustee satisfies the requisites of Section 1123(a)(7). In addition, the concurrently filed Declaration of Michael Kasolas establishes his lack of prior affiliation with Union Bank.

h.    *Compliance with Section 1123(a)(8) (Payment of Debtor's Future Income to Creditors)*

Section 1123(a)(8) requires that in an individual case such as this, the plan must "provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan."

The Plan does reserve the estate's rights to future income of the Debtor pursuant to Section 1129(a)(15) by transferring such rights to the liquidating trust.  (Plan, § IX.B).  However, the Debtor says he is retired and so does not have future earnings, but the Plan calls for liquidation of the Debtor's assets in order to satisfy the payments contemplated under the Plan.  The Plan does thus take his "future other income" (*i.e.*, the proceeds of asset sales and the appreciation in any such assets) and provide for it to be paid to creditors as necessary to execute the Plan, meeting the requirement of Section 1123(a)(8).

i.    *Compliance With Bankruptcy Code Section 1123(b) (Permissive Plan Provisions).*

Bankruptcy Code Section 1123(b) describes various other provisions that are permitted in a plan.  The Plan contains a number of these provisions, all of which are intended to facilitate the liquidation of the estate's assets to cash and distribution of the proceeds thereof to holders of allowed Claims.  These include the following:

• In Section VII, the Plan provides that Class 1 is impaired, as permitted by Section 1123(b)(1).

• In Section VIII, the Plan rejects all executory contracts and unexpired leases on the Effective Date, subject to the effect of the Estate Enhancement Action on the lease with American Commercial Properties.  This is permitted by Section 1123(b)(2) of the Bankruptcy Code.

• In Section IX.B, the Plan transfers affirmative estate claims to the liquidating trustee as permitted by Section 1123(b)(3)(B).

SMRH:484144267.3

PLAN CONFIRMATION BRIEF

1      •      In Section IX, the Plan provides that the liquidating trustee will sell the Debtor's

2   assets and distribute the proceeds to holders of allowed claims, as permitted by

3   Section 1123(b)(4).

4      •      In Section VII, the Plan modifies the rights of holders of Class 1 claims as

5   permitted by Section 1123(b)(5).

6   **C.      The Debtor Has Complied With The Requirements Of Bankruptcy Code Section**

7   **1129(a)(2) (Compliance With Applicable Provisions of Title 11).**

8      Bankruptcy Code Section 1129(a)(2) requires that the proponent of the plan also comply

9   with "the applicable provisions" of title 11.  11 U.S.C. § 1129(a)(2).  The "applicable provisions"

10   of title 11 are Bankruptcy Code Section 1121 (dealing with who may file a plan) and Bankruptcy

11   Code Section 1125 (dealing with the solicitation of acceptances of a plan).  *See In re Hoff*, 54 B.R.

12   746, 750-51 (Bankr. D.N.D. 1985); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr.

13   S.D.N.Y. 1984).

14      1.      Compliance With Bankruptcy Code Section 1121(a) (Who May File a Plan).

15      Bankruptcy Code Section 1121(c) allows a creditor to propose a plan if the exclusive

16   period for the Debtor to file a plan has passed.  This case was filed two and half years ago in

17   March 2015.  The Debtor never sought any extension of exclusivity; it has long past.  Thus the

18   proposal of the Plan by Union Bank, the Debtor's largest creditor, complies with Section 1121(c).

19      2.      Compliance With Bankruptcy Code Section 1125 (Post-petition Disclosure and
         Solicitation).

20

21      One of the principal purposes of Bankruptcy Code Section 1129(a)(2) is to ensure that plan

22   proponents have complied with the requirements of Bankruptcy Code Section 1125 in the

23   solicitation of acceptances of a plan of reorganization.  *See, e.g., In re Jeppson*, 66 B.R. 269, 296-

24   97 (Bankr. D. Utah 1986).  Bankruptcy Code Section 1125(b) provides that a proponent may not

25   solicit acceptances of its plan unless, at or before the time of such solicitation, there is transmitted

26   to the claimant, or the authorized representative thereof, both a copy of the plan and a court-

27   approved disclosure statement.

28

SMRH:484144267.3                                                                    PLAN CONFIRMATION BRIEF

Union Bank has fully complied with the mandates of Section 1125.  Pursuant to the Disclosure Statement Order, the Court approved the disclosed in the combined Plan and authorized Union Bank to transmit the solicitation package on the parties entitled to vote on the Plan.  Subsequently, in compliance with Bankruptcy Rule 3017(d), on August 23, 2017, Union Bank transmitted the solicitation package to creditors entitled to vote on the Plan.  The certificate of service regarding the distribution of the solicitation package has been filed with the Bankruptcy Court as Docket No. 217.  The solicitation package provided notice of the deadline to object to confirmation, and two creditors did in fact submit timely objections.

The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the solicitation procedures, and thus the Plan complies with the requirements of Bankruptcy Code Section 1129(a)(2).

    3.    <u>The Plan Has Been Proposed In Good Faith In Compliance With Bankruptcy Code Section 1129(a)(3).</u>

Bankruptcy Code Section 1129(a)(3) requires a plan to be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  Good faith for purposes of Section 1129(a)(3) of the Bankruptcy Code also may be found where the plan is supported by key creditor constituencies, or was the result of extensive arm's-length negotiations with creditors.  *In re Eagle-Picher Indus., Inc.*, 203 B.R. 256, 274 (Bankr. S.D. Ohio 1996).  From the facts and the circumstances of this case, it is evident that Union Bank has proposed the Plan in good faith.

This case has languished for over two years.  Prior to Union Bank filing the Plan, there was no exit strategy of any kind pending or even suggested by the Debtor.  The Plan merely seeks to create a roadmap out of this case and toward a distribution to creditors by putting into place a commonly used mechanism (a liquidating trust) that will liquidate the estate's assets and distribute the proceeds to creditors once the litigation over the extent of the estate's assets is resolved.

Under these circumstances, where the Plan simply sets up a mechanism to pay creditors in a case where no end was in sight, the Plan was undoubtedly proposed in good faith under Bankruptcy Code section 1129(a)(3).

Case: 15-50801    Doc# 228    Filed: 10/26/17    Entered: 10/26/17 13:54:38    Page 20 of 68

1     CGS argues that the Plan was not submitted in good faith for a grab bag of reasons, none

2   of which add up to anything. (CGS Objection, at pp. 5-6). CGS first argues that the Plan is

3   submitted in bad faith because of the open ended effective date. However, the open-ended

4   effective date is necessary due to the ongoing litigation over the extent of the estate.

5     CGS next argues that the Plan is submitted in bad faith because it cuts off CGS' fees

6   arising from the non-dischargeability proceeding. (CGS Objection, at p. 5). But, as discussed

7   above, Union Bank has amended the discharge provisions to carve-out that fee claim.

8     CGS' remaining two arguments concern the Bank's statement that it will pursue Great

9   American Wineries ("GAW"), a company formed and controlled by the Debtor, in state court as

10  an alter ego of Chateau Julien. CGS oddly asserts that the estate's rights against GAW are

11  "potentially broader" than stated in the Plan, and that Union Bank is conflicted in pursuing both

12  the Estate Enhancement Action on behalf of the estate and an action against GAW on its own

13  behalf. (CGS Objection, at pp. 5-6). On the first point, Union Bank states in the Plan that it

14  believes GAW "is the alter ego and legal successor to Chateau Julien," and intends to pursue

15  GAW on that basis on its own behalf, as it does not believe these claims against GAW to be

16  property of the estate. (Plan, at p. 19, l. 9-15). Making GAW the alter ego of Chateau Julien

17  would benefit Union Bank individually as it has a judgment against Chateau Julien, but not the

18  estate, since the estate has no claim against either GAW or Chateau Julien. If CGS is implying

19  that GAW should also be the alter ego of the Debtor, CGS needs to provide some sort of basis for

20  that concept in order for parties to evaluate it. As to Union Bank pursuing both an action against

21  GAW and the Estate Enhancement Action, Union Bank sees no conflict. Prevailing against GAW

22  would not harm the Estate Enhancement Action and vice versa. To the contrary, while the Debtor

23  guaranteed the debt owed by Chateau Julien to Union Bank, a recovery on the Chateau Julien debt

24  from another source (GAW) would only potentially benefit the estate by possibly reducing the

25  amount of distributions from the liquidating trust to Union Bank.[5]

26  _____

27  [5] Given the realities of this case, it is unlikely that a recovery from GAW would actually affect any
    distributions to Union Bank in the case. Creditors who receive a recovery from a co-obligor are
28  not required to reduce the amount of their asserted claims, they just cannot receive actual
    distributions from both that would exceed 100% of their claims. *See, In re Del Biaggio*, 496 B.R.

SMRH:484144267.3                                                          PLAN CONFIRMATION BRIEF

1      4.    <u>The Plan Complies With The Requirements Of Bankruptcy Code</u>
2          <u>Section 1129(a)(4) (Payment for Services or Costs in Connection With the Case).</u>

3      Bankruptcy Code Section 1129(a)(4) requires payments to estate professionals to be

4 approved by the Bankruptcy Court or subject to the Bankruptcy Court's approval. 11 U.S.C.

5 § 1129(a)(4). The Plan complies with Section 1129(a)(4) because Section VII.A of the Plan

6 requires any professional claim to be "allowed by the Bankruptcy Court" in order to become

7 allowed Administrative Claims entitled to payment. *See*, Plan, at page 13, lines 6-12.

8      5.    <u>The Plan Complies With Bankruptcy Code Section 1129(a)(5) Regarding the</u>
9          <u>Identity of Officers, Directors, and Insiders.</u>

10      Pursuant to Bankruptcy Code Section 1129(a)(5)(A)(i), a proponent of a plan must disclose

11 the identity of the debtor's management post-effective date. Section IX.B.2 of the Plan discloses

12 that Michael Kasolas, an experienced trustee and estate fiduciary, will serve as the Liquidating

13 Trustee of the Liquidating Trust post-Effective Date.

14      CGS argues that the Plan does not meet the requirement of Section 1129(a)(5) because it

15 does not disclose any "affiliations" between Union Bank and Michael Kasolas, the proposed

16 liquidating trustee. To avoid any issue, Union Bank is adding a disclosure to the Plan that makes

17 it clear that there is no affiliation between Michael Kasolas and Union Bank. This disclosure is

18 supported by the concurrently filed Declaration of Michael Kasolas.

19      6.    <u>The Plan Complies With Bankruptcy Code Section 1129(a)(6) Regarding</u>
20          <u>Governmental Regulatory Approval of Rates.</u>

21      Section 1129(a)(6) requires that any regulatory commission with jurisdiction over the rates

22 of the debtor approve any changes in rates provided in the plan. *See* 11 U.S.C. § 1129(a)(6). This

23 is not applicable here, in an individual case.

24

25

26

27

---

28 600 (Bankr. N.D. Cal. 2012). In this case, it is unlikely given the size of Union Bank's claim that
a recovery from GAW and through the estate would approach a 100% recovery.

SMRH:484144267.3

PLAN CONFIRMATION BRIEF

7.     The Plan Satisfies the Requirements Of Bankruptcy Code Section 1129(a)(7) ("Best Interest" Test).

The "best interests" test set forth in Section 1129(a)(7) requires that the plan proponent demonstrate that:

> with respect to each impaired class of claims or interests –
>
> (A) each holder of a claim or interest of such class –
>
> (i) has accepted the plan, or
>
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . . .

11 U.S.C. § 1128(a)(7). The "best interests" test focuses on individual dissenting creditors rather than classes of claims. *See, In re Drexel Burnham Lambert Group*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992). On its face, Section 1129(a)(7) only applies to impaired and classified claims or interests. It does not, therefore, apply to unimpaired or unclassified claims.

In this case, all impaired claimants and/or classified claims that voted accepted the Plan. *See*, Declaration of Michael Lauter, Docket No. 223. However, there is one holder of a claim in Class 1 – Bobby Brower, Jr. – that did not affirmatively consent to the Plan. Thus, unless the Debtor's son's claim is disallowed, Section 1129(a)(7) needs to be satisfied through prong (ii).[6]

The Debtor argues that the best interests test is not met because Union Bank does not offer evidence of what the value of the assets as of the effective date is. (Debtor Objection, at pp. 3-4). This a red herring. Union Bank does not need to establish the exact value of the Debtor's assets. Rather, it needs to show that creditors in Class 1 do just as well under the Plan as they would in a chapter 7. Here, they plainly do, as the Plan will merely create a mechanism (a liquidating trust) to liquidate the assets in the same manner as would a chapter 7 trustee. The difference is that the Plan will involve fewer administrative expenses, since the chapter 7 trustee would incur ramp up

---

[6] The Debtor listed Mr. Brower, Jr. as a creditor on his amended schedules. Union Bank reserves all rights to object to or seek subordination of Mr. Brower, Jr.'s claim on any basis.

SMRH:484144267.3                                                                   PLAN CONFIRMATION BRIEF

costs for both himself and his new counsel, would re-open the claims bar date, and would receive a statutory percentage of the proceeds. Further, the Plan will permit a liquidation to occur as soon as possible after the Estate Enhancement Action is resolved. Thus Class 1 fares at least as well under the Plan as it would in a chapter 7 because the Plan involves the same sort of liquidation as a chapter 7, but one that will be done more quickly and at lesser cost.

      8.     <u>Each Class of Claims and Interests Has Accepted the Plan – Sections 1129(a)(8).</u>

Bankruptcy Code Section 1129(a)(8) requires that each class of claims and interests has either accepted the plan or is not impaired under the plan. *See* 11 U.S.C. § 1129(a)(8). A class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of claims of that class vote to accept the plan, counting only those claims whose holders actually vote on the plan. *See* 11 U.S.C. § 1126(c).

The only class of claims or interests in this case is Class 1 – General Unsecured Claims. As set forth in the Declaration of Michael M. Lauter filed on September 22, 2017 as Docket No. 223, 100% of the votes submitted by Class 1 Claims accepted the Plan. Section 1129(a)(8) is thus satisfied.

      9.     <u>The Plan Complies With Bankruptcy Code Section 1129(a)(9).</u>

Bankruptcy Code Section 1129(a)(9) provides generally that administrative and non-priority tax claims must be paid in full on the effective date of a plan, and that priority tax claims may be paid in installments over a period not greater than five years. *See* 11 U.S.C. § 1129(a)(9).

The Plan satisfies the requirements of Section 1129(a)(9). Section VII of the Plan provides that Administrative Claims and Priority Tax Claims will be paid in full on the Effective Date. There are no priority non-tax claims in this case.

CGS argues that Section 1129(a)(9) is not met because the occurrence of the Effective Date is illusory. (CGS Objection, at pp. 2-3). In particular, CGS asserts that the lack of a specific deadline for the occurrence of the Effective Date renders it illusory. (*Id.*) However, CGS provides no citations to support its contention that its argument about the allegedly illusory nature of the Effective Date has anything to do with Section 1129(a)(9). Here, the Plan plainly provides for all administrative claims to be paid in full on the Effective Date, and so satisfies

Section 1129(a)(9). If it goes to anything, CGS's "illusory" argument goes to the issue of feasibility, where it also fails as discussed below.

10. **The Plan Has Been Accepted By At Least One Impaired Class in Compliance With Bankruptcy Code Section 1129(a)(10).**

Bankruptcy Code Section 1129(a)(10) requires at least one class of impaired claims to have accepted the plan, determined without including any acceptance of the plan by an insider holding a claim in such class. *See* 11 U.S.C. § 1129(a)(10). Class 1 is impaired under the Plan, and as discussed above, Class 1 accepted the Plan unanimously. Section 1129(a)(10) is thus satisfied.

11. **The Plan is Feasible and in Compliance with Bankruptcy Code Section 1129(a)(11).**

Bankruptcy Code Section 1129(a)(11) requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation is proposed in the plan." 11 U.S.C. § 1129(a)(11). This is sometimes referred to as the "feasibility test," and requires the Court to determine whether the Plan is workable and has a reasonable likelihood of success. *See In re Patrician St. Joseph Partners*, 169 B.R. 669, 674 (Bankr. D. Ariz. 1994).

Here, the Plan is feasible because the Plan contemplates the liquidation of the Debtor's assets without the need for any further financial reorganization. The Plan will not go effective unless and until the Liquidating Trustee can liquidate enough assets to pay allowed administrative claims in full on the Effective Date. As a result, confirmation of the Plan is not likely to be followed by a subsequent need for further reorganization and satisfies the requisites for feasibility under section 1129(a)(11) of the Bankruptcy Code.

The Debtor argues that the Plan is not feasible because the uncertainty regarding the Effective Date prevents Union Bank from establishing the value of the Debtor's assets or its ability to make the payments due on the Effective Date. (Debtor Objection, at p. 4). This should be rejected because the Plan involves no mandatory payments after the Effective Date. If the assets, once resolved through the Estate Enhancement Action, are insufficient to make the

Case: 15-50801    Doc# 228    Filed: 10/26/17    Entered: 10/26/17 13:54:38    Page 25 of 68

Effective Date payments, the Plan will simply not go effective. Furthermore, it is very unlikely that the assets will be insufficient. The Debtor himself ascribes a value of $448,500 to what he admits to be his interest in Coastal. *See*, Dkt. No. 77. The payments to be made on the Effective Date are the payment to CGS of $102,757.50 and any allowed fees of the Debtor's current counsel, which should be confined to any fees for objecting to the Plan. Debtor's current counsel estimated those to be $50,000. With roughly $150,000 in Effective Date payments, even if the estate realizes no benefit from the Estate Enhancement Action, the estate would still have the 24% interest in Coastal claimed by the Debtor, and the value of that interest would have to drop by over $300,000 in order to render the Liquidating Trustee unable to make the Effective Date payments. While the Debtor cites attorney's fees incurred by Coastal as one of the defendants in the Estate Enhancement Action as something that could cause the value of the interest to decrease, there would have to be approximately $1.2 million in fees incurred by Coastal in that action to make the value of the 24% interest drop by $300,000. This is sufficiently unlikely that the Court should not conclude that the Plan is not feasible.

Ultimately, the Debtor's feasibility objection starts from the incorrect premise that the Plan must guarantee success. That is not the law. Feasibility does not, nor can it, require the certainty that a reorganized company will succeed. *See, e.g., United States v. Energy Resources Co.,* 495 U.S. 545, 549 (1990); *In re WCI Cable, Inc.*, 282 B.R. 457, 486 (Bankr. D. Or. 2002) ("Guaranteed success in the stiff winds of commerce without the protection of the Code is not the standard under § 1129(a)(11)."). The feasibility standard merely requires the Court to determine whether a plan is workable and has a reasonable likelihood (*i.e.*, more likely than not) of success. *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986). Here, given the nature of the Plan (a straight liquidation in which there are no required payments after the Effective Date), and the fact that the Debtor's own proposed valuations of his admitted interest in Coastal substantially exceed the required payments on the Effective Date, the Plan is feasible.

12. <u>The Debtor Will Pay on or Before the Effective Date All Fees Payable Under 28 U.S.C. § 1930 in Compliance With Bankruptcy Code Section 1129(a)(12).</u>

Bankruptcy Code Section 1129(a)(12) requires the payment of "[a]ll fees payable under Section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12). The Plan complies with Section 1129(a)(12) by providing that all U.S. Trustee fees payable pursuant to 28 U.S.C. Section 1930(a)(6) shall be paid in full. *See* Section XVI.D of the Plan.

13. <u>Section 1129(a)(13) Regarding Retiree Benefits Does Not Apply.</u>

Bankruptcy Code Section 1129(a)(13) contains some requirements for corporate debtors regarding the payment of retiree benefits on behalf of their employees. This does not apply in his case, where the Debtor is an individual.

14. <u>Section 1129(a)(14) Regarding Domestic Support Obligations Does Not Apply.</u>

Bankruptcy Code Section 1129(a)(14) sets forth certain requirements with respect to the payment of domestic support obligations. The Debtor does not have any domestic support obligations, rendering this section inapplicable.

15. <u>The Plan Complies with Section 1129(a)(15) Regarding Payments to Unsecured Creditors in the Event of an Objection.</u>

Bankruptcy Code Section 1129(a)(15) sets forth certain requirements with respect to the distributions to unsecured claimants in the event that a holder of an allowed unsecured claim objects to the plan in an individual case. *See* 11 U.S.C. § 1129(a)(15). The Plan preserves the estate's rights under this section by transferring said rights to the Liquidating Trust in Section IX.B.1. In any event, the only claimant to have asserted an objection to the Plan is CGS, who will be paid in full on the Effective Date. Section 1129(a)(15) is thus satisfied.

16. <u>The Plan Complies With Bankruptcy Code Section 1129(d) Because The Principal Purpose Of The Plan Is Not To Avoid Taxes Or Applicable Securities Laws.</u>

Bankruptcy Code Section 1129(d) provides:

> Notwithstanding any other provision of this Section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance

of taxes or the avoidance of the application of Section 5 of the
Securities Act of 1933 (15 U.S.C. § 77e).

11 U.S.C. § 1129(d).  Here, the principal purpose of the Plan is not to avoid taxes or the securities laws.

No governmental party in interest has requested the denial of confirmation on any of the foregoing

grounds.  Accordingly, the Plan satisfies Section 1129(d).

## IV.

## CONCLUSION

For the reasons stated above, the Plan meets all of the requirements of Bankruptcy Code

section 1129 and should be confirmed.

//

//

//

Dated:  October 26, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____
*/s/ Michael M. Lauter*
STEVEN B. SACKS
MICHAEL M. LAUTER
ISAIAH Z. WEEDN
Attorneys for MUFG UNION BANK, N.A.

Case: 15-50801   Doc# 228   Filed: 10/26/17   Entered: 10/26/17 13:54:38   Page 28 of
68

SMRH:484144267.3                                    PLAN CONFIRMATION BRIEF

# EXHIBIT A

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   STEVEN B. SACKS, Cal. Bar No. 98875
3  ssacks@sheppardmullin.com
   MICHAEL M. LAUTER, Cal. Bar No. 246048
4  mlauter@sheppardmullin.com
   ISAIAH Z. WEEDN, Cal. Bar No. 229111
5  iweedn@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
6  San Francisco, CA 94111-4109
   Telephone:    415-434-9100
7  Facsimile:    415-434-3947

8  Attorneys for Creditor
   MUFG UNION BANK, N.A.
9

10                 UNITED STATES BANKRUPTCY COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14  In re                          | Case No. 15-50801

15  ROBERT BROWER, SR.,            | Chapter 11

16          Debtor.                | **CREDITOR MUFG UNION BANK, N.A.'S
                                   | SECONDTHIRD AMENDED COMBINED
17                                 | PLAN OF REORGANIZATION AND
                                   | DISCLOSURE STATEMENT DATED
18                                 | AUGUST 17_____, 2017**

19                                 | Plan Confirmation Hearing:

20                                 | Date:    September 28November 2, 2017
                                   | Time:    10:30 a.m.
21                                 | Place:   280 S. First Street
                                   |          San Jose, CA 95113
22                                 |          Courtroom 3020
                                   | Judge:   Hon. Elaine Hammond
23

24

25

26

27

28

SMRH:483816952.2484407725.1                    COMBINED PLAN AND DISCLOSURE STATEMENT

# I.

## INTRODUCTION

This Combined Chapter 11 Plan of Liquidation and Disclosure Statement (the "*Plan*") provides for the reorganization or other disposition of the assets of Robert Brower, Sr. ("*Brower*" or the "*Debtor*"). The next section of the Plan (Part II) contains an executive summary of the Plan's terms.

The Plan is proposed by creditor MUFG Union Bank, N.A. ("*Union Bank*"), the holder of the largest general unsecured claim in the bankruptcy case of the Debtor. The Plan in Part VI describes how each claim will be treated if the Plan is confirmed.

A hearing on confirmation of the Plan will be held on ~~September 28~~November 2, 2017, at 10:30 a.m. as described in the enclosed notice ("*Confirmation Hearing Notice*"). The date the Court enters its order confirming the Plan is referred to as the "*Confirmation Date*." The "Effective Date" of the Plan will be the fifteenth (15th) business day after the Confirmation Date, provided the condition to effectiveness of the Plan set forth in paragraph 3 of Article X of this Plan has been satisfied. To the extent such condition is not then satisfied, the Effective Date shall occur on the day such condition becomes satisfied.

You may be entitled to vote on the Plan, or to object to confirmation of the Plan. A ballot that can be used to vote on the Plan, along with the Confirmation Hearing Notice, is enclosed in the package containing this Plan. Please refer to the Confirmation Hearing Notice for the deadline to return the ballot and the deadline to file objections.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

## II.

## EXECUTIVE SUMMARY

The Plan is a reorganizing plan that is anticipated to take effect after the resolution of Union Bank's recently filed adversary proceeding in which it seeks to obtain a ruling from the Court as to the extent of the estate's interest in various assets purportedly held in the names of others under

1  Plan to become effective, the Liquidating Trustee will need to collect funds from the sale of estate

2  assets sufficient to pay all allowed Administrative Expenses.  Such a sale would be negotiated by

3  the Liquidating Trustee prior to the Effective Date, and would close on the Effective Date.  On the

4  Effective Date, the closing of such a sale would occur, and all proceeds of such sale over and above

5  allowed Administrative Expenses, and all remaining assets of the Debtor (other than assets claimed

6  as exempt on the Debtor's schedules) will be transferred to a Liquidating Trust.  The Liquidating

7  Trust will be administered by the Liquidating Trustee for the benefit of holders of allowed general

8  unsecured creditors in the case.  The expenses of the Liquidating Trust will be paid from the

9  Recoveries earned from the sale or pursue of the estate assets transferred to it on the Effective

10  Date.

11  **B.     Liquidating Trust**

12       1.     <u>Establishment of Liquidating Trust</u>

13       The establishment and funding of the Liquidating Trust shall occur in two stages.  First, on

14  the Confirmation Date, the Liquidating Trust will be established and the Liquidating Trustee shall

15  be appointed.  The Liquidating Trustee will then have the ability to market the assets of the estate

16  for sale, which sale the Liquidating Trustee will not be able to accomplish until the Effective Date,

17  when the assets of the Debtor's estate are transferred to the Liquidating Trust.  Stage two will

18  occur on the Effective Date, at which time all assets of the Debtor's estate shall be transferred to

19  the Liquidating Trust, including without limitation the following: (a) all tangible and intangible

20  assets of every kind and nature, including Causes of Action, and all proceeds thereof, existing as of

21  the Effective Date and thereafter, (b) all property treated by the Plan, (c) all books and records of

22  the Debtor, ~~including any attorney-client privilege, work product privilege, or other privilege or~~

23  ~~immunity in connection therewith~~; and (d) the right to receive all of the Debtor's "net disposable

24  income" for the five (5) year period following the Effective Date of the Plan, <u>if any,</u> as provided in

25  Section 1129(a)(15) of the Bankruptcy Code (the "***Liquidating Trust Assets***").  Notwithstanding

26  the foregoing, the Liquidating Trust Assets shall not include any assets claimed by the Debtor as

27  exempt, which assets shall be retained by the Debtor.  ~~All of the Debtor's right, title and interest in~~

28  ~~and~~<u>Further, the books and records of the Debtor turned over</u> to the Liquidating ~~Trust Assets shall~~

SMRH:~~483810532.2~~484407725.1        COMBINED PLAN AND DISCLOSURE STATEMENT

1  ~~be automatically vested in the Liquidating Trust on the Effective Date, free and clear of liens,~~

2  ~~claims, encumbrances and other interests.~~ Trustee shall not including any documents protected by

3  the Debtor's attorney-client privilege or work product privilege, but the Debtor and any producing

4  party must produce a detailed privilege log to the Liquidating Trustee describing each document

5  withheld on the basis of privilege.

6  On the Effective Date, an agreement establishing the Liquidating Trust pursuant to this Plan

7  in substantially the form attached hereto as ***Exhibit A*** (the "***Liquidating Trust Agreement***") shall

8  be executed.

9  2.  Liquidating Trustee

10  On the Confirmation Date, Michael G. Kasolas, CPA, shall be appointed as the Liquidating

11  Trustee. Any replacement or successor trustees shall be appointed pursuant to the provisions of the

12  Liquidating Trust Agreement.  Mr. Kasolas has no affiliation with Union Bank.

13  **C.  Avoidance Actions and Other Causes of Action**

14  Notwithstanding any other term or provision of the Plan, the Liquidating Trustee shall have,

15  on and after the Effective Date, sole authority and responsibility for investigating, analyzing,

16  commencing, prosecuting, litigating, compromising, settling, collecting or otherwise administering

17  the Causes of Action.  Any claims arising out of the recovery of an avoidable transfer under

18  chapter 5 of the Bankruptcy Code after the claims bar date in the Bankruptcy Case must be filed on

19  or before thirty (30) calendar days after entry of an order of judgment avoiding the transfer.  For

20  the avoidance of doubt, the Liquidating Trustee will not have authority over such Causes of Action

21  (including the Estate Enhancement Action) on the Confirmation Date, but will only have such

22  authority if and when the Effective Date occurs.

23  Pursuant to section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the

24  Liquidating Trustee may maintain and enforce any claims or rights held by the Debtor, the estate or

25  the Liquidating Trust, and may continue to pursue any pending Causes of Action brought by the

26  Debtor. In accordance with Bankruptcy Code section 1123(b)(3) or any corresponding provision of

27  similar non-bankruptcy law, on and after the Effective Date, (a) the Liquidating Trustee shall have

28  standing and be deemed to be the representative of the Debtor and the estate in the Bankruptcy

SMRH:~~483810852.2~~484407725.1                                    COMBINED PLAN AND DISCLOSURE STATEMENT

Promptly following the filing of a ~~notice by Union Bank that the Effective Date of the Plan has occurred~~certification by the Liquidating Trustee that all distributions to be made from the Liquidating Trust have been completed, or upon the Debtor establishing his right to a hardship discharge under Section 1141(d)(5) of the Bankruptcy Code after notice and hearing, the Court shall grant the Debtor a discharge of any and all debts of the Debtor that arose any time before confirmation of the Plan, other than the following debts (the "*Non-Dischargeable Debts*"): (i) the debts, such as the debt owed to Union Bank on the Debtor's guaranty of the Chateau Julien loan, that were determined by the Court to be non-dischargeable under Bankruptcy Code section 523(a); and (ii) the debt owed by the Debtor to his former counsel, CGS, for fees incurred in the non-dischargeability adversary proceeding.  Subject to such ~~claims determined to be non-dischargeable~~Non-Dischargeable Debts, the discharge shall be effective as to each claim regardless of whether a proof of claim therefor was filed, whether the claim is an Allowed claim, or whether the holder thereof votes to accept this Plan.

Subject to the foregoing, the discharge provided for under this Plan shall have the effects set forth in the Bankruptcy Code including, but not limited to: (a) voiding any judgment obtained against the Debtor on any discharged debt; and; (b) operating as a permanent injunction against the commencement or continuation of any action to collect, recover, or offset either any discharged debt from the Debtor, or the Estate, or any property of the Debtor, or the Estate, except as otherwise permitted by this Plan, the Bankruptcy Code, or order of the Court.

**C.      Discharge Injunction.**

From and after the ~~Effective Date~~date that a discharge is granted pursuant to Section XI.B above, except as otherwise provided for herein or in the Confirmation Order, ~~as long as there is no material default in the Plan and up through entry of the Debtor's discharge,~~ all persons who have held, currently hold or may hold a debt, claim or interest against the Debtor, the Reorganized Debtor, the Estate, or their respective property, including the property transferred pursuant to this Plan are enjoined from taking any of the following actions on account of any such debt or Claim: (a) commencing or continuing in any manner any action or other proceeding against Debtor, the Reorganized Debtor, the Estate, or their respective property; (b) enforcing, attaching, collecting, or

-21-

1  recovering in any manner any judgment, award, decree, or order against the Debtor, the

2  Reorganized Debtor, or the Estate; (c) creating, perfecting, or enforcing any lien or encumbrance

3  against the Debtor, the Reorganized Debtor, the Estate, or their respective property including the

4  property transferred pursuant to this Plan; (d) asserting any setoff, right of subrogation, or

5  recoupment of any kind against any obligation due to the Estate, the Reorganized Debtor, or the

6  Debtor; and (e) commencing or continuing any action, in any manner, in any place that does not

7  comply with or is inconsistent with the provisions of the Plan or the Confirmation order.

8  Notwithstanding the foregoing, nothing in this Section XI.C shall enjoin, prevent, or hinder in any

9  way any post-Effective Date collection efforts by Union Bank, CGS, or other appropriate party

10  with respect to ~~its claim against the Debtor based on the Debtor's guaranty of the Chateau Julien~~

11  ~~loan, which claim has been determined by this Court to be non-dischargeable under Section 523(a)~~

12  ~~of the Bankruptcy Code~~the Non-Dischargeable Debts.

13  ## XII.

14  ## FEASIBILITY OF THE PLAN

15       Successful consummation of the Plan is not certain. Nonetheless, Union Bank believes that

16  the Plan meets the feasibility test of Bankruptcy Code Section 1129(a)(11). The specific

17  contingencies to the success of the Plan include the following:

18       •     The ability of the Liquidating Trustee to sell sufficient Estate assets to pay Allowed

19  administrative expense claims. Based on the prior estimates from the Debtor himself of the interest

20  in Coastal, which Union Bank feels were low and do not include the full amount of his interest in

21  Coastal, Union Bank feels the sale of such interests shall easily provide sufficient funds to pay

22  Allowed administrative expense claims. In particular, even accepting the Debtor's most recent

23  assertion his interest in Coastal is only 24%, and that interest is worth $448,500, that amount

24  significantly exceeds any expected administrative expenses.[6] In addition, the Plan will not go

25

26  [6] This is so because the return on the estate's interest in Coastal would only be $448,500 if the
    Estate Enhancement Action were unsuccessful. In that case, Union Bank would not seek an
27  administrative claim for its fees under Section 503(b) of the Bankruptcy Code, so the only
    administrative claims would be the balance of the allowed fees in Campeau Goodsell's final fee
28  application net of the retainer ($102,757.50), a small US Trustee fee of $1,625, and the fees
    incurred by JLG, if its employment is approved. Union Bank does not believe there is any

that such person receive notice of post-Effective Date matters (the list of such parties is referred to herein as the "***Post-Effective Date List***").  Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Cases will not receive notice of post-Effective Date matters unless such persons file a new request in accordance with this Section.

**H.     Plan Controls**

To the extent the terms of the Plan are inconsistent with the Liquidating Trust Agreement, the terms of the Plan shall be controlling.

**I.     Applicable Law**

The Plan is to be governed by and construed under the Bankruptcy Code and the laws of the State of California as they may be applicable.

**XVII.**

**RECOMMENDATION AND CONCLUSION**

Union Bank believes that confirmation of the Plan is in the best interests of the estate and its creditors and in particular, believes that recoveries to holders of Allowed claims will be maximized under the circumstances by confirmation of the Plan.  Union Bank urges all creditors entitled to vote on the Plan to vote in favor of the Plan.

Dated:  ~~August 17,~~ _____, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
                    */s/ Michael M. Lauter*
                    STEVEN B. SACKS
                    MICHAEL M. LAUTER
                    ISAIAH Z. WEEDN
            Attorneys for MUFG UNION BANK, N.A.

SMRH:~~483610852.3~~484407725.1   COMBINED PLAN AND DISCLOSURE STATEMENT

# EXHIBIT B

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
STEVEN B. SACKS, Cal. Bar No. 98875
ssacks@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:     415-434-9100
Facsimile:     415-434-3947

Attorneys for Creditor
MUFG UNION BANK, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 15-50801 |
| ROBERT BROWER, SR., | Chapter 11 |
| Debtor. | **CREDITOR MUFG UNION BANK, N.A.'S THIRD AMENDED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT DATED _____ __, 2017** |
| | <u>Plan Confirmation Hearing:</u> |
| | Date:     November 2, 2017<br>Time:     10:30 a.m.<br>Place:     280 S. First Street<br>              San Jose, CA 95113<br>              Courtroom 3020<br>Judge:    Hon. Elaine Hammond |

Case: 15-50801    Doc# 228    Filed: 10/26/17    Entered: 10/26/17 13:54:38    Page 38 of 68

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................. 1

II. EXECUTIVE SUMMARY ..................................................... 1

III. STRUCTURE OF THE PLAN ............................................... 3

IV. BACKGROUND OF THE DEBTOR AND FINANCIAL INFORMATION .......................... 4

    A.     Events Leading to the Bankruptcy Filing According to the Debtor ......................... 5

    B.     Assets and Liabilities According to the Debtor ........................... 5

V. MAIN EVENTS IN THE BANKRUPTCY CASE ................................................ 7

    A.     Filing of Petition and Dissolution of Attachment Lien ............................ 7

    B.     Employment of Debtor's Counsel, Eventual Withdrawal and Proposed Replacement Counsel ........................ 7

    C.     Sale of Coastal Property ......................................... 8

    D.     Failed Motions to Sell Interest in Coastal ............................ 8

    E.     Judgment Obtained on Guaranteed Loan Against Chateau Julien ......................... 8

    F.     Non-Dischargeability Judgment ................................... 9

    G.     Stay Relief Motion to Continue Pre-Petition Litigation Against Brower ................ 9

    H.     Estate Enhancement Action filed by Union Bank ............................ 9

VI. CLASSIFICATION AND TREATMENT OF CLAIMS ................................... 10

    A.     Class 1: General Unsecured Claims .............................. 11

VII. TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS ........................ 13

    A.     Administrative Claims ........................................... 13

    B.     Priority Tax Claims ............................................. 15

VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................. 15

IX. IMPLEMENTATION OF THE PLAN .......................................... 16

    A.     Funding the Plan ............................................... 16

    B.     Liquidating Trust ............................................... 17

        1.     Establishment of Liquidating Trust ........................... 17

        2.     Liquidating Trustee ......................................... 18

i

| | | |
|---|---|---|
| C. | Avoidance Actions and Other Causes of Action | 18 |
| D. | Objections to Claims | 19 |
| X. CONDITIONS TO EFFECTIVENESS OF THE PLAN | | 20 |
| XI. EFFECT OF CONFIRMATION ORDER; DISCHARGE | | 20 |
| A. | Binding Effect of the Plan. | 20 |
| B. | Discharge. | 20 |
| C. | Discharge Injunction. | 21 |
| XII. FEASIBILITY OF THE PLAN | | 22 |
| XIII. ALTERNATIVES TO THE PLAN | | 23 |
| A. | Chapter 7 Conversion | 23 |
| B. | No Other Plans | 24 |
| XIV. VOTING, ACCEPTANCE, AND CONFIRMATION | | 24 |
| A. | In General. | 24 |
| B. | Voting. | 24 |
| C. | Confirmation | 25 |
| XV. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | | 26 |
| XVI. MISCELLANEOUS PROVISIONS | | 26 |
| A. | Retention of Jurisdiction | 26 |
| B. | Effectuating Documents and Further Transactions | 26 |
| C. | Preservation of Causes of Action. | 26 |
| D. | Post-Confirmation United States Trustee Fees. | 26 |
| E. | Effect of Conversion to Chapter 7 | 27 |
| F. | Notices. | 27 |
| G. | Post-Effective Date Notices. | 27 |
| H. | Plan Controls | 27 |
| I. | Applicable Law | 28 |
| XVII. RECOMMENDATION AND CONCLUSION | | 28 |

SMRH:484407725.1

ii

COMBINED PLAN AND DISCLOSURE STATEMENT

# I.

## INTRODUCTION

This Combined Chapter 11 Plan of Liquidation and Disclosure Statement (the "***Plan***") provides for the reorganization or other disposition of the assets of Robert Brower, Sr. ("***Brower***" or the "***Debtor***").  The next section of the Plan (Part II) contains an executive summary of the Plan's terms.

The Plan is proposed by creditor MUFG Union Bank, N.A. ("***Union Bank***"), the holder of the largest general unsecured claim in the bankruptcy case of the Debtor.  The Plan in Part VI describes how each claim will be treated if the Plan is confirmed.

A hearing on confirmation of the Plan will be held on November 2, 2017, at 10:30 a.m. as described in the enclosed notice ("***Confirmation Hearing Notice***").  The date the Court enters its order confirming the Plan is referred to as the "***Confirmation Date***."  The "Effective Date" of the Plan will be the fifteenth (15th) business day after the Confirmation Date, provided the condition to effectiveness of the Plan set forth in paragraph 3 of Article X of this Plan has been satisfied.  To the extent such condition is not then satisfied, the Effective Date shall occur on the day such condition becomes satisfied.

You may be entitled to vote on the Plan, or to object to confirmation of the Plan.  A ballot that can be used to vote on the Plan, along with the Confirmation Hearing Notice, is enclosed in the package containing this Plan.  Please refer to the Confirmation Hearing Notice for the deadline to return the ballot and the deadline to file objections.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here.  You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

# II.

## EXECUTIVE SUMMARY

The Plan is a reorganizing plan that is anticipated to take effect after the resolution of Union Bank's recently filed adversary proceeding in which it seeks to obtain a ruling from the Court as to the extent of the estate's interest in various assets purportedly held in the names of

others under Section 541 of the Bankruptcy Code, as well as a ruling avoiding a post-petition merger of one of the Debtor's companies (the "***Estate Enhancement Action***"). Union Bank asserts in the Estate Enhancement Action that the estate's interest in certain assets, including the Debtor's interest in Coastal Cypress Corporation,[1] and his interest in his residence via American Commercial Properties, Inc., are greater than they asserted to be in the Debtor's schedules of assets and liabilities filed in this case. Union Bank also asserts that a recent merger of Coastal Cypress Corporation accomplished in April 2017 was an unauthorized post-petition transfer and should be avoided under Bankruptcy Code section 549. Once the Court rules on the scope of the estate in the Estate Enhancement Action, the Plan envisions that marketing of the Debtor's assets will take place, as supervised by a Liquidating Trustee appointed on the date of confirmation of this Plan. Then, once the Liquidating Trustee has secured a buyer of assets of sufficient value to make all payments necessary for the Plan to pay administrative expenses and become effective, the Effective Date of the Plan will occur, all of the Debtor's assets will be transferred to the Liquidating Trust, the Liquidating Trustee will then be able to close the sale(s) he or she secured prior to the Effective Date, and the Liquidating Trustee will use the proceeds of the sale(s) to pay the allowed administrative expenses necessary for the Plan to become effective. In other words, in order for this Plan to become effective, the Liquidating Trustee will need to collect funds on the Effective Date from the sale of estate assets arranged by the Liquidating Trustee prior to the Effective Date in an amount sufficient to pay all allowed administrative expenses. The Liquidating Trust will be administered by the Liquidating Trustee for the benefit of holders of allowed general unsecured creditors in the case.

As of now, the return to holders of general unsecured claims in the case is unknown, as the extent of the estate's interest in certain assets is unknown. As a result, Union Bank is unable to provide a detailed liquidation analysis comparing a hypothetical chapter 7 liquidation to the recovery to creditors under this Plan at this time. However, Union Bank believes that the Plan is

---

[1] References to Coastal Cypress Corporation in this Plan refer to both the original California corporation of that name and the recently formed Delaware corporation of the same name into which the Debtor merged the California corporation.

SMRH:484407725.1

COMBINED PLAN AND DISCLOSURE STATEMENT

superior to conversion to chapter 7 for a number of reasons. First, this Plan goes hand in hand with the Estate Enhancement Action, and the recovery to creditors is largely dependent on the success of the Estate Enhancement Action. In a chapter 7, the chapter 7 trustee would likely succeed to this action and pursue it with her own counsel. However, Union Bank has litigated with the Debtor for several years and in that process has obtained a significant amount of knowledge and discovery on the financial condition of the Debtor and his companies that will be critical in successfully pursuing the Estate Enhancement Action. The combination of the Plan and Union Bank's pursuit of the Estate Enhancement Action presents creditors with the best possibility for a meaningful recovery. Second, the Plan avoids the addition of another layer of administrative expenses to the estate. Third, were the case converted to chapter 7, a new claims bar date would open the door to possible additional claims that could dilute the recovery to creditors.

As such, it is more likely that a higher recovery can be obtained under the Plan than in a hypothetical chapter 7 scenario and, even if it were ultimately in the form of low value recoveries in settlement of claims, such recoveries would be better than (and certainly no worse) than the expected result in a chapter 7.

## III.

## STRUCTURE OF THE PLAN

The Plan provides for the creation of a Liquidating Trust to be administered by a Liquidating Trustee. The Liquidating Trustee under the Liquidating Trust will be tasked with liquidating the Debtor's assets and distributing net proceeds (if any) to the creditors of the Debtor. The effectiveness of the Plan is conditioned upon the Liquidating Trustee finding sufficient assets to at least pay the administrative expenses allowed in this bankruptcy case; one of the conditions precedent in Article X below is that the Liquidating Trustee shall have liquidated or sold sufficient estate assets to permit the Liquidating Trustee to pay all Allowed administrative claims in full.

On and after the Confirmation Date, the Liquidating Trustee will have the power and authority to market the Debtor's assets for sale. On the Effective Date, the Liquidating Trustee will continue to have the power and authority to market the Debtor's assets for sale, and will also have the power to transfer, liquidate, settle, or otherwise dispose of any of the Debtor's assets, and

SMRH:484407725.1
COMBINED PLAN AND DISCLOSURE STATEMENT

distribute the net proceeds to the Debtor's creditors. The majority of the assets of the estate are contemplated to be the Debtor's interest in Coastal Cypress Corporation (a company that formerly owned and leased real property in Carmel, CA before selling it in 2015) and the Debtor's interest in American Commercial Properties, Inc. (a company formed by the Debtor that owns the residence in which the Debtor and his wife reside). Collectively these interests are referred to herein as the "*Corporate Interests*." The Liquidating Trustee's power to liquidate all of the estate's assets for the benefit of creditors also includes the power to prosecute the claims held by the estate, including avoidance causes of action under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state or federal statutes and common law, and other claims held by the Debtor's estate (collectively, the "*Causes of Action*").

Any recoveries generated from the sale of the Corporate Interests, the prosecution of the Causes of Action, or from any other source (collectively, the "*Recoveries*") will be used to make distributions to creditors after payment of the fees and costs of the Liquidating Trust, including the fees and costs associated with conducting any sale of the Corporate Interests or in litigating the Causes of Action. Recoveries remaining after the foregoing costs and fees are referred to in the Plan as "*Net Recoveries*." The Net Recoveries will be used to make distributions to the unsecured creditors holding allowed claims, pursuant to or consistent with the Bankruptcy Code. Any distribution made to unsecured creditors from the Net Recoveries is referred to herein as "*Unsecured Creditor Distribution*."

## IV.

## BACKGROUND OF THE DEBTOR AND FINANCIAL INFORMATION

The Debtor is an individual that resides in Carmel, CA. The Debtor is or until recently was the principal of a number of businesses that he started in the Carmel area. These include: (i) Coastal Cypress Corporation ("*Coastal*" or "*Coastal Cypress*"), a company that owned and leased real estate in Carmel, CA until selling that real estate after the bankruptcy filing in April 2015; (ii) Chateau Julien, Inc. ("*Chateau Julien*"), a company that sold and distributed wine under the label "Chateau Julien" as well as other labels; (iii) Great American Wineries, Inc. ("*GAW*"), a company also sold and distributed wine under the same labels as Chateau Julien, Inc., and which

SMRH:484407725.1

COMBINED PLAN AND DISCLOSURE STATEMENT

1  Union Bank believes to be the legal successor to Chateau Julien, Inc.; and (iv) American

2  Commercial Properties, Inc. ("*ACP*"), a corporation that owns the Debtor's home and leases it to

3  the Debtor.

4  **A.      Events Leading to the Bankruptcy Filing According to the Debtor**

5         The Debtor guaranteed a loan made by Union Bank and its predecessors in interest to

6  Chateau Julien in the principal amount of $4,850,000.  After the expiration of several extensions

7  granted by Union Bank and its predecessors, the loan matured in November 2013.  Despite several

8  demands, neither Chateau Julien or the Debtor repaid the loan.  Union Bank engaged in lengthy

9  workout discussions with Chateau Julien and the Debtor, but no consensual workout agreement

10  was reached.  Union Bank then filed an action in Monterey Superior Court in September 2014

11  seeking to enforce the obligations of Chateau Julien and the Debtor under the loan documents.  In

12  January 2015, Union Bank obtained a temporary protective order and then a writ of attachment

13  against the Debtor – the latter being a provisional remedy that provided Union Bank with a lien

14  over the Debtor's assets to secure an eventual judgment on Union Bank's claim against the Debtor

15  based on his guaranty of the Chateau Julien loan.

16         The Debtor filed this bankruptcy case on March 11, 2015 (the "***Petition Date***") in order to

17  dissolve the attachment lien under a state law provision that states that such liens are automatically

18  dissolved by a bankruptcy filing accomplished within 90 days of the issuance of the temporary

19  protective order.  The Debtor also asserts that the filing was motivated in part by ensuring that any

20  income taxes resulting from a liquidation of the Debtor's assets would be paid ahead of the Bank

21  as priority unsecured claims.

22  **B.      Assets and Liabilities According to the Debtor**

23         The Debtor's sworn schedules of assets and liabilities in this case reflect very little in the

24  way of assets compared with very significant claims on the liability side.  While the Debtor lists

25  no secured claims or priority unsecured claims, he does list roughly $11.2 million in general

26  unsecured claims.  That figure was reduced shortly after the Petition Date by the sale of the real

27  property owned by Coastal Cypress, described in greater detail below.  The sale of the Coastal

28  Cypress property paid off a secured loan owed by Coastal Cypress to Union Bank, which the

5

Case: 15-50801    Doc# 228    Filed: 10/26/17    Entered: 10/26/17 13:54:38    Page 45 of
68

SMRH:484407725.1                                                      COMBINED PLAN AND DISCLOSURE STATEMENT

Debtor had guaranteed. As reflected in the Debtor's monthly operating reports, the total asserted general unsecured claims pool after the sale of the Coastal Cypress property to approximately $5,409,852. *See*, *e.g.*, Dkt. No. 162. The unsecured claim held by Union Bank on account of the Debtor's guaranty of the defaulted loan to Chateau Julien represents the large majority of that figure. It is not clear if the figure in the monthly operating reports is based on the scheduled claims, filed claims, or a combination thereof, but the scheduled claim held by Union Bank on account of the Chateau Julien guaranty is $4,850,000 (reflecting the principal only), and Union Bank's filed claim based on the Chateau Julien guaranty is in the asserted amount of $5,091,299.30 as of the date of the bankruptcy filing. *See*, claim #7.

On the asset side, the Debtor asserts that the only asset of any significant value is his alleged 24% interest in Coastal Cypress. The Debtor asserts that he owns no interest in ACP, Chateau Julien, or GAW. Coastal Cypress formerly owned real property in Carmel, CA, but sold it to a third party buyer for $12 million in April 2015. The Debtor's most recent valuation of his asserted 24% interest in Coastal Cypress came in the second of two failed motions to redeem that interest, in which he asserted that the interest was worth $448,500. That motion was filed in December 2015 and later withdrawn. The Debtor has not provided any more updated valuation of the Coastal Cypress interest.

The Debtor claims not to have any other assets of significant value that would be available to creditors. His schedules indicate roughly $153,000 in a 401k that he claims to be exempt. His Schedule B also lists notes payable to him from Chateau Julien ($142,829) and Coastal Cypress ($83,357). The Chateau Julien note appears to be uncollectible, as Chateau Julien has ceased all business operations and, according to Mr. Brower, has no assets of significant value. The Debtor's monthly operating reports reflect that the note owed by Coastal Cypress was paid to the Debtor during the bankruptcy case and used to pay his monthly expenses. *See*, April 2017 MOR, Dkt. No. 162, p. 4, line item 8. The Debtor is not currently employed; his regular income consists of a monthly social security payment of about $2,382. *See*, *id*.

As described in greater detail below, Union Bank believes that the Debtor's assets are greater than he claims them to be, and has filed an adversary proceeding seeking a determination

SMRH:484407725.1

6

COMBINED PLAN AND DISCLOSURE STATEMENT

as to the extent of his assets.  In particular, the adversary proceeding seeks a determination that the Debtor's interest in Coastal is greater than 24% and that his interest in ACP is greater than 0%.

Further, Union Bank recently discovered that Coastal, which at all relevant times was a California corporation, was merged into a Delaware corporation of the same name in April 2017.  Union Bank amended its adversary complaint to add a count that seeks to unwind this merger under Section 549 of the Bankruptcy Code.  As of now, Union Bank is not certain of the effect of the merger on Brower's interest in Coastal.

**V.**

**MAIN EVENTS IN THE BANKRUPTCY CASE**

**A.       Filing of Petition and Dissolution of Attachment Lien**

The case commenced with the filing of the petition on the March 11, 2015 Petition Date.  As mentioned above, the stated purpose of the filing was to dissolve the attachment lien that Union Bank had obtained under state law against the Debtor's property.  This was achieved automatically by the bankruptcy filing, as California Code of Civil Procedure section 493.030(b) terminates an attachment lien if the bankruptcy filing is made within 90 days of the issuance of the temporary protective order.

**B.       Employment of Debtor's Counsel, Eventual Withdrawal and Proposed Replacement Counsel**

Shortly after the case was filed, the Debtor moved the Court for permission to employ Campeau Goodsell Smith, L.C. ("*Campeau Goodsell*") as his counsel in this case.  The application was approved in an order entered March 31, 2015.  *See*, Dkt. No. 24.

On May 18, 2017, Campeau Goodsell filed a motion to withdraw as the Debtor's counsel.  The Court granted the motion on June 23, 2017, and Campeau Goodsell was replaced effective June 30, 2017 when a substitution of attorney was filed identifying the Jaurigue Law Group ("*JLG*") as the Debtor's new proposed counsel.  JLG filed an application to be employed as successor counsel to the Debtor on August 14, 2017, which application remains pending.

SMRH:484407725.1

-7-

COMBINED PLAN AND DISCLOSURE STATEMENT

**C.     Sale of Coastal Property**

While not something that occurred within the Bankruptcy Case itself, Coastal Cypress' sale of its Carmel, CA real estate in April 2015 had a significant impact on the estate.  The sale was for a total amount of $12 million, and necessitated the repayment of a separate secured loan owed by Coastal Cypress to Union Bank, which the Debtor had also guaranteed.  As described above in Section IV, this significantly reduced the unsecured claims in the Debtor's case, such that the main unsecured claim surviving is that based on the Debtor's guaranty of the loan by Union Bank to Chateau Julien, which remains unpaid.

**D.     Failed Motions to Sell Interest in Coastal**

The Debtor attempted on two occasions to sell his asserted 24% interest in Coastal back to Coastal.  The first attempt was in a motion filed on October 21, 2015, in which he sought to sell his asserted 24% interest for $584,200.  *See*, Dkt. No. 59.  Union Bank opposed the motion because of the lack of any evidence supporting the proposed sale price.  *See*, Dkt. No. 67.  The motion was denied for that reason after a hearing held on November 12, 2015.

The Debtor made a second attempt at selling his asserted 24% interest in Coastal back to Coastal when he filed another sale motion on December 3, 2015.  *See*, Dkt. No. 77.  By this time, the Debtor had dropped the proposed sale price to $448,500, asserting that the reduction was due to operating expenses, even though after the sale of its sole asset, Coastal had no apparent ongoing operations.  After Union Bank requested discovery substantiating the sale price, obtaining some of the requested materials over the objections of various parties connected to the Debtor, and objected to the motion, the Debtor eventually withdrew the motion on August 1, 2016.  *See*, Dkt. No. 133.  The Debtor has not proposed anything further since that time vis a vis the liquidation of his interest in Coastal.

**E.     Judgment Obtained on Guaranteed Loan Against Chateau Julien**

While not an action taken in the Bankruptcy Case *per se*, as stated above the largest claim against the estate is Union Bank's claim in excess of $5 million based on the Debtor's guaranty of Union Bank's long defaulted loan to the Debtor's company, Chateau Julien.  The bankruptcy filing stayed the action against the Debtor in Monterey Superior Court based on that guaranty, but

SMRH:484407725.1

COMBINED PLAN AND DISCLOSURE STATEMENT

1    it did not stay the action against Chateau Julien on the same loan.  Union Bank's action against

2    Chateau Julien proceeded to trial in May and June of 2016.  After the trial, the Monterey Superior

3    Court entered judgment in favor of Union Bank and against Chateau Julien for $5,409,851.57.  Of

4    note, the judgment amount was net of a small $3,214.58 credit given for the recoveries obtained

5    by a pre-judgment receiver that was appointed over Chateau Julien's assets.

6    **F.      Non-Dischargeability Judgment**

7           Union Bank filed an adversary proceeding against the Debtor seeking a determination that

8    its claim based on the Debtor's guaranty of the Chateau Julien loan is non-dischargeable under

9    Bankruptcy Code section 523(a), and a determination that the Debtor was not eligible for a

10   discharge at all under Bankruptcy Code section 727(a).

11          The matter went to trial in the Bankruptcy Court in February 2017.  After trial, the

12   Bankruptcy Court entered judgment in favor of Union Bank on its assertion that its claim based on

13   the guaranty of the Chateau Julien loan is non-dischargeable under Section 523(a) of the

14   Bankruptcy Code.  The Bankruptcy Court however ruled in favor of the Debtor on Union Bank's

15   assertion that the entire discharge should be denied under Section 727(a).  As a result, the Debtor

16   may still be able to get a discharge in this Bankruptcy Case, but the discharge would not apply to

17   Union Bank's guaranty claim of over $5 million, which is by far the largest claim in the case.

18   **G.      Stay Relief Motion to Continue Pre-Petition Litigation Against Brower**

19          On April 28, 2017, Union Bank made a motion seeking relief from the automatic stay to

20   continue its pre-petition guaranty litigation against the Debtor in state court.  After a hearing held

21   on May 12, 2017, the Bankruptcy Court granted the motion.  This means that Union Bank will be

22   able to seek a money judgment against the Debtor based on his guaranty of the loan to Chateau

23   Julien in state court in Monterey, California.

24   **H.      Estate Enhancement Action filed by Union Bank**

25          On May 11, 2017, Union Bank filed a new adversary proceeding against the Debtor and

26   various third parties seeking a determination that the Debtor's interests in Coastal Cypress and

27   ACP are greater than he asserts them to be (the "***Estate Enhancement Action***").  After filing the

28   complaint, Union Bank discovered that the Debtor recently in April 2017 caused Coastal Cypress

SMRH:484407725.1                                              COMBINED PLAN AND DISCLOSURE STATEMENT

Corporation, a California corporation, to be merged into Coastal Cypress Corporation, a Delaware corporation. Union then amended its complaint in the Estate Enhancement Action to add a count seeking to unwind that merger as an unauthorized post-petition transaction under Bankruptcy Code section 549.

Recently, the various groups of defendants responded to the amended complaint by filing motions to dismiss some or all of the causes of action in the amended complaint on a number of grounds, including judicial estoppel (on the theory that Union Bank's assertions about the estate's interest in Coastal conflict with positions taken in the non-dischargeability action), and statute of limitations (on the theory that certain of the declaratory relief causes of action in the amended complaint are really disguised fraudulent transfer actions).

Union Bank does not believe the motions to dismiss have any merit, and will respond to them by the deadline of August 14, 2017. The motions to dismiss are set to be heard in the Bankruptcy Court on August 28, 2017.

## VI.

## CLASSIFICATION AND TREATMENT OF CLAIMS

The claims against the Debtor are classified below (except for administrative and priority tax claims) for purposes of the Plan.[2]

The listing of the claims in the Plan does not necessarily imply that the claim is an allowed claim. A claim is allowed ("*Allowed*") if: (a) a proof of claim was (i) timely filed, or (ii) deemed filed under Bankruptcy Code Section 1111(a), or (iii) filed late with permission of the Court; and (b) such claim is not disputed, or, if disputed, such clam has been allowed in whole or in part by a final order of the Court, provided that any such claim shall be an allowed claim only to the extent stated in any such order.

The right to object to claims will be vested in the Liquidating Trust upon confirmation of the Plan. As of the date of this Plan, the review and analysis of the validity of the claims have not

---

[2] There are no secured claims or priority unsecured claims either scheduled or filed on the claims register in this Bankruptcy Case. In addition, because the case is an individual case, there is no class of equity interest holders.

SMRH:484407725.1                                                    COMBINED PLAN AND DISCLOSURE STATEMENT

been completed. Such process will be continued following the confirmation of the Plan. Once this process is completed, it is anticipated that objections may be filed to certain claims. All claims (other than Union Bank's claim based on the Debtor's guaranty of the Chateau Julien loan, which will be decided in state court) will be subject to such review and analysis. Any and all rights of the estate giving rise to an objection to a claim are reserved under the Plan.

The following is a summary of each class under this Plan and whether such class is entitled to vote on the Plan:

| Class | Description | Entitled to Vote? |
|-------|-------------|-------------------|
| 1 | General Unsecured Creditors | Yes |

## A. Class 1: General Unsecured Claims

1. <u>Classification</u>: This class consists of holders of unsecured claims as follows:

(a) <u>Presumed Allowed Claims</u>: The holders of the following unsecured claims have filed proofs of claim in the Bankruptcy Case and, therefore, are presumed valid (subject to review, analysis and any right to object thereto by the Liquidating Trustee):

| Creditor | Amount of Proof of Claim | Proof of Claim # |
|----------|--------------------------|------------------|
| MUFG Union Bank, N.A. | $5,092,299.30 | 7 |
| Wells Fargo Bank, N.A. | $93,566.65 | 5 |
| Bobby Brower | $25,000.00 | Schedule F |
| American Express Bank, FSB | $17,334.86 | 6 |
| First National Bank of Omaha | $11,079.30 | 3 |
| First National Bank of Omaha | $5,611.53 | 9 |
| First National Bank of Omaha | $5,318.08 | 2 |
| American Express Centurion Bank | $1,344.57 | 8 |
| First National Bank of Omaha | $245.71 | 4 |
| *TOTAL* | $5,251,800.00 | |

b)    <u>Disallowed Claims</u>:  Holders of the following unsecured claims were scheduled on the Debtor's schedules as either disputed, contingent or unliquidated claims but have not filed proofs of claim in the Bankruptcy Case and the deadline to file claims has passed. Therefore, these claims are not Allowed and the holders of such claims will not receive any distribution (except if and to the extent such claims become Allowed).

| Creditor | Scheduled Amount | Scheduled as Disputed, Contingent, or Unliquidated |
|---|---|---|
| Blackcard | $5,212.00 | Yes |
| Chase Card Services | $33,192.00 | Yes |
| Chase Card Services – Marriott | $3,185.00 | Yes |
| Chase Chateau Julien, Inc. | $85,452.00 | Yes |
| Union Bank – First Bankcard | $5,417.00 | Yes |
| *TOTAL* | *$132,458.00* | |

2.    <u>Treatment</u>:  To the extent Allowed Class 1 claims have not already been paid, released or otherwise satisfied prior to the Effective Date, and except to the extent the holder of an Allowed Class 1 claim agrees to a different treatment, on the Effective Date, each such holder of an Allowed unsecured claim in Class 1 shall receive a pro rata share of any and all Unsecured Creditor Distributions until all holders of Allowed unsecured claims in Class 1 are paid in full plus interest paid at the time of making the final Unsecured Creditor Distribution to the extent excess funds then remain available after payment of all fees and expenses of the Liquidating Trust and Allowed claims (which interest shall be calculated based on the amount of the Allowed unsecured claim at the non-default rate provided in the applicable contract or, if there is no contract, at the federal judgment rate, accrued up to and including the date of such final distribution) (such excess funds are referred to herein as "***Excess Funds***").

3.    <u>Impairment</u>:  Class 1 is impaired and is entitled to vote under the Plan.

12

# VII.

## TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS

Claims entitled to administrative priority under Bankruptcy Code Sections 507(a)(2), 507(a)(3), and 507(a)(8) are not classified.

## A. Administrative Claims

"*Administrative Claim*" consist of the claims of any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the estate incurred on or after the Petition Date and through and including the Confirmation Date, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise, including compensation of the Debtor's bankruptcy counsel.

Union Bank is aware of the following Administrative Claims, which consist of current estimated amounts as of July 31, 2017:

| Claimant | Estimated Amount |
|---|---|
| Campeau Goodsell Smith, L.C. (Debtor's Former Counsel) | $102,757.50[3] |
| Jaurigue Law Group (Debtor's Proposed Replacement Counsel) | $50,000.00[4] |
| Union Bank (expected application under Section 503(b)) | Unknown[5] |

---

[3] The Court approved compensation to Campeau Goodsell on a final basis in the amount of $127,757.50 in its order on Campeau Goodsell's final fee application. The balance reflected here is the amount of allowed compensation net of the $25,000 retainer that Campeau Goodsell states to have applied to the compensation approved on an interim basis after Campeau Goodsell's first interim fee application.

[4] JLG's application to be employed has just been filed, and therefore has yet to be approved. The estimates herein are provided by JLG, and are based on the assumption that the application will be approved. Union Bank does not by providing estimates endorse the application by JLG, and reserves the right to object to JLG's employment or to any future fee application on any basis.

[5] Union Bank reserves the right to seek an administrative claim for fees expended in the Estate Enhancement Action and on the Plan if the two efforts are successful. Union Bank does not

SMRH:484407725.1 COMBINED PLAN AND DISCLOSURE STATEMENT

| Claimant | Estimated Amount |
|----------|------------------|
| United States Trustee | $1,625.00 |
| TOTAL: | $154,382.50 |

Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such claim, each holder of an Allowed Administrative Claim shall be paid in full on the Effective Date.

There shall be two Administrative Claim bar dates in this case. First, any request for allowance of an Administrative Claim incurred on or prior to the Confirmation Date shall be filed no later than sixty (60) days after the Confirmation Date (the "***First Administrative Claim Bar Date***"), with the exception that the First Administrative Claim Bar Date shall not apply to any application by the Bank for payment of its fees and expenses incurred in this Bankruptcy Case and/or the Estate Enhancement Action under a theory that the Bank provided a substantial contribution to the Debtor's estate under Section 503(b)(3) and/or (b)(4). Without limiting the foregoing, the First Administrative Claim Bar Date shall apply to all professional fees and expenses incurred by Court-approved professionals retained by the Debtor. Failure to timely file a request for payment of an Administrative Claim that was incurred on or prior to the Confirmation Date on or prior to the First Administrative Claim Bar Date shall result in the holder of such claim being forever barred from asserting such claim or receiving any payment on account of such claim.

Second, any request for allowance of an Administrative Claim incurred during the period beginning on the day after the Confirmation Date and ending on the Effective Date shall be filed on or before the sixtieth (60th) day after the Effective Date (the "***Second Administrative Claim***

---

currently have an estimate of its fees on these matters as the Estate Enhancement Action is in a very early stage.

SMRH:484407725.1

COMBINED PLAN AND DISCLOSURE STATEMENT

*Bar Date*"),  or the holder of such claim shall be forever barred from asserting such claim or receiving any payment on account of such claim.

**B.    Priority Tax Claims**

There are no known priority tax claims against the Debtor, as the Internal Revenue Service has amended its claim to be $0.00.

To the extent that the holders of Allowed priority tax claim have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a holder of an Allowed priority tax claim agrees to a different treatment, the holder of such Allowed priority tax claim shall receive on the later of the Effective Date or the date such priority tax claim becomes an Allowed claim, or as soon thereafter as is reasonably practicable, in full and final satisfaction, settlement and release and in exchange for such claim, an amount in cash equal to the unpaid amount of such Allowed priority tax claim, which may be paid through deferred cash payments of a value, as of the Effective Date, equal to the Allowed amount of such claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored general unsecured claim provided for by the Plan.  For the avoidance of doubt, claims asserted by taxing authorities for income tax against the Debtor arising from the liquidation of estate assets by the Liquidating Trustee will be treated as either administrative claims under Section VII.A or priority tax claims under Section VII.B and will be paid in full by the Liquidating Trustee, to the extent they are Allowed.

**VIII.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The following contracts and leases are listed on Schedule G of the Debtor's Schedules:

| Counterparty | Contract/Lease |
|---|---|
| American Commercial Properties | Lease of residential real property (Debtor's residence) |

SMRH:484407725.1

COMBINED PLAN AND DISCLOSURE STATEMENT

Subject to the effect that the Estate Enhancement Action may have on the lease with ACP, to the extent any such contract or lease is an executory contract or unexpired lease, such contract or lease shall be deemed rejected under the Plan.

Any claims arising out of such rejection must be filed with the Bankruptcy Court by no later than thirty (30) calendar days after the Effective Date. If no Proof of Claim is filed within such time period, it shall be conclusively presumed that no such claim exists and will be forever barred from receiving a distribution from any distribution from the Debtor, its estate or the Liquidating Trust.

Allowed claims arising from rejection of executory contracts or unexpired leases shall be treated as Class 1 claims (general unsecured claims). It is unknown to what extent the amounts of claims arising from such rejection are factored in the Class 1 claims that have been filed in the case. To the extent such amounts are not already factored in the filed Class 1 claims, additional claims can be expected to be filed for such amounts.

The Bank notes that there is only one item listed on the Debtor's Schedule G in this case, which is the alleged lease of the Debtor's residence from ACP, a company he formed to own the residence. To the extent such lease is valid, the effect of this Plan would be to reject it. The Bank asserts that the rejection damages resulting from such rejection would be $0.

## IX.

## IMPLEMENTATION OF THE PLAN

### A. Funding the Plan

The Plan is a reorganizing plan and shall be initially funded through the sale by the Liquidating Trustee of the Debtor's assets in a sufficient amount to pay all allowed Administrative Expenses, which sale shall occur on the Effective Date of the Plan. In other words, in order for this Plan to become effective, the Liquidating Trustee will need to collect funds from the sale of estate assets sufficient to pay all allowed Administrative Expenses. Such a sale would be negotiated by the Liquidating Trustee prior to the Effective Date, and would close on the Effective Date. On the Effective Date, the closing of such a sale would occur, and all proceeds of such sale over and above allowed Administrative Expenses, and all remaining assets of the Debtor (other

than assets claimed as exempt on the Debtor's schedules) will be transferred to a Liquidating Trust. The Liquidating Trust will be administered by the Liquidating Trustee for the benefit of holders of allowed general unsecured creditors in the case. The expenses of the Liquidating Trust will be paid from the Recoveries earned from the sale or pursue of the estate assets transferred to it on the Effective Date.

**B.      Liquidating Trust**

        1.      Establishment of Liquidating Trust

The establishment and funding of the Liquidating Trust shall occur in two stages. First, on the Confirmation Date, the Liquidating Trust will be established and the Liquidating Trustee shall be appointed. The Liquidating Trustee will then have the ability to market the assets of the estate for sale, which sale the Liquidating Trustee will not be able to accomplish until the Effective Date, when the assets of the Debtor's estate are transferred to the Liquidating Trust. Stage two will occur on the Effective Date, at which time all assets of the Debtor's estate shall be transferred to the Liquidating Trust, including without limitation the following: (a) all tangible and intangible assets of every kind and nature, including Causes of Action, and all proceeds thereof, existing as of the Effective Date and thereafter, (b) all property treated by the Plan, (c) all books and records of the Debtor; and (d) the right to receive all of the Debtor's "net disposable income" for the five (5) year period following the Effective Date of the Plan, if any, as provided in Section 1129(a)(15) of the Bankruptcy Code (the "***Liquidating Trust Assets***"). Notwithstanding the foregoing, the Liquidating Trust Assets shall not include any assets claimed by the Debtor as exempt, which assets shall be retained by the Debtor. Further, the books and records of the Debtor turned over to the Liquidating Trustee shall not including any documents protected by the Debtor's attorney-client privilege or work product privilege, but the Debtor and any producing party must produce a detailed privilege log to the Liquidating Trustee describing each document withheld on the basis of privilege.

On the Effective Date, an agreement establishing the Liquidating Trust pursuant to this Plan in substantially the form attached hereto as **_Exhibit A_** (the "***Liquidating Trust Agreement***") shall be executed.

### 2.   Liquidating Trustee

On the Confirmation Date, Michael G. Kasolas, CPA, shall be appointed as the Liquidating Trustee. Any replacement or successor trustees shall be appointed pursuant to the provisions of the Liquidating Trust Agreement.  Mr. Kasolas has no affiliation with Union Bank.

## C.   Avoidance Actions and Other Causes of Action

Notwithstanding any other term or provision of the Plan, the Liquidating Trustee shall have, on and after the Effective Date, sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, settling, collecting or otherwise administering the Causes of Action.  Any claims arising out of the recovery of an avoidable transfer under chapter 5 of the Bankruptcy Code after the claims bar date in the Bankruptcy Case must be filed on or before thirty (30) calendar days after entry of an order of judgment avoiding the transfer. For the avoidance of doubt, the Liquidating Trustee will not have authority over such Causes of Action (including the Estate Enhancement Action) on the Confirmation Date, but will only have such authority if and when the Effective Date occurs.

Pursuant to section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Liquidating Trustee may maintain and enforce any claims or rights held by the Debtor, the estate or the Liquidating Trust, and may continue to pursue any pending Causes of Action brought by the Debtor. In accordance with Bankruptcy Code section 1123(b)(3) or any corresponding provision of similar non-bankruptcy law, on and after the Effective Date, (a) the Liquidating Trustee shall have standing and be deemed to be the representative of the Debtor and the estate in the Bankruptcy Case and any adversary proceeding in the Bankruptcy Case, under the Plan, and in any judicial proceeding or appeal as to which the Debtor is a party, and (b) the Liquidating Trustee shall retain all Causes of Action of the Debtor and the estate, including, without limitation, avoidance actions, objections to claim, and prosecution of the Causes of Action.  The Liquidating Trustee may sue on, settle, or compromise (or decline to do any of the foregoing) any and all Causes of Action.

The investigation into all of the Causes of Action has not been completed.  Accordingly, any and all Causes of Action that may exist against any person or entity may be pursued by the

Case: 15-50801   Doc# 228   Filed: 10/26/17   Entered: 10/26/17 13:54:38   Page 58 of 68

SMRH:484407725.1                                                 COMBINED PLAN AND DISCLOSURE STATEMENT

1  Liquidating Trustee, regardless of whether, or the manner in which, such Causes of Action are
2  identified in the Plan.  The failure to identify a Cause of Action in the Plan shall not constitute a
3  waiver or release of any such Cause of Action.  The Liquidating Trustee shall have the sole
4  discretion to determine whether and to what extent to investigate of any Transfer and/or assert any
5  Cause of Action.

6  Any and all Causes of Action shall survive entry of the Confirmation Order for the benefit
7  of the Debtor's estate and, on and after the Effective Date, for the benefit of the Liquidating Trust
8  and its beneficiaries.

9  The Causes of Action of which the Bank is currently aware are those set forth in the Estate
10  Enhancement Action, though under this Plan, that Action may be resolved prior to the Effective
11  Date.  In addition, the Bank believes that GAW is the alter ego of and legal successor to Chateau
12  Julien, and intends to assert in state court on its own behalf that GAW is liable to it for the debts of
13  Chateau Julien. The Bank lists the claims against GAW here out of an abundance of caution; the
14  Bank does not believe that the Debtor or his bankruptcy estate has claims against GAW such that
15  the Liquidating Trustee would succeed to them.

16  **D.  Objections to Claims**

17  On and after the Effective Date, the Liquidating Trustee may file objections to claims at
18  any time, with such objections to proceed pursuant to the applicable local bankruptcy rules.  No
19  distribution shall be made under the Plan with respect to all or any portion of a disputed claim
20  until that claim becomes an Allowed claim by agreement of the parties to any claim dispute or by
21  final order of the Bankruptcy Court.

22  From and after the Effective Date, the Liquidating Trustee shall have the exclusive
23  authority to file, settle, compromise, withdraw, or litigate to judgment any objections to claims,
24  including without limitation, any objections to claims filed by the Debtor prior to the Effective
25  Date.  The Liquidating Trustee expressly reserves the right to resolve any disputed claim outside
26  the Bankruptcy Court under applicable governing law.

27

28

# X.

## CONDITIONS TO EFFECTIVENESS OF THE PLAN

The following are conditions precedent to the Effective Date of the Plan:

    (a)    The Bankruptcy Court shall have entered the Confirmation Order;

    (b)    No stay of the Confirmation Order shall then be effective at the time the other conditions set forth in this section are satisfied or waived;

    (c)    All documents, instruments and agreements provided for under or necessary to implement the Plan, including the Liquidating Trust Agreement, shall have been executed and delivered.; and

    (d)    The Liquidating Trustee shall have obtained, through the sale or liquidation of estate assets, sufficient funds to pay all Allowed administrative claims in this Case in full.

The foregoing conditions may be waived, in whole or in part, by Union Bank in writing at any time without notice, or by an order of the Bankruptcy Court.

# XI.

## EFFECT OF CONFIRMATION ORDER; DISCHARGE

As of the Effective Date, the effect of the Confirmation Order shall be as follows:

**A.    Binding Effect of the Plan.**

The provisions of the confirmed Plan shall bind the Debtor, the post-Effective Date Debtor (the "***Reorganized Debtor***"), the Estate, any entity acquiring property under or otherwise accepting the benefits of the Plan, every creditor, whether or not such entity has filed a proof of claim in the Bankruptcy Case, whether or not the claim of such entity is impaired under the Plan, and whether or not such creditor or entity has accepted or rejected the Plan.

**B.    Discharge.**

Promptly following the filing of a certification by the Liquidating Trustee that all distributions to be made from the Liquidating Trust have been completed, or upon the Debtor establishing his right to a hardship discharge under Section 1141(d)(5) of the Bankruptcy Code after notice and hearing, the Court shall grant the Debtor a discharge of any and all debts of the Debtor that arose any time before confirmation of the Plan, other than the following debts (the "***Non-Dischargeable Debts***"): (i) the debts, such as the debt owed to Union Bank on the Debtor's guaranty of the Chateau Julien loan, that were determined by the Court to be non-dischargeable

under Bankruptcy Code section 523(a); and (ii) the debt owed by the Debtor to his former counsel, CGS, for fees incurred in the non-dischargeability adversary proceeding. Subject to such Non-Dischargeable Debts, the discharge shall be effective as to each claim regardless of whether a proof of claim therefor was filed, whether the claim is an Allowed claim, or whether the holder thereof votes to accept this Plan.

Subject to the foregoing, the discharge provided for under this Plan shall have the effects set forth in the Bankruptcy Code including, but not limited to: (a) voiding any judgment obtained against the Debtor on any discharged debt; and; (b) operating as a permanent injunction against the commencement or continuation of any action to collect, recover, or offset either any discharged debt from the Debtor, or the Estate, or any property of the Debtor, or the Estate, except as otherwise permitted by this Plan, the Bankruptcy Code, or order of the Court.

**C.     Discharge Injunction.**

From and after the date that a discharge is granted pursuant to Section XI.B above, except as otherwise provided for herein or in the Confirmation Order, all persons who have held, currently hold or may hold a debt, claim or interest against the Debtor, the Reorganized Debtor, the Estate, or their respective property, including the property transferred pursuant to this Plan are enjoined from taking any of the following actions on account of any such debt or Claim: (a) commencing or continuing in any manner any action or other proceeding against Debtor, the Reorganized Debtor, the Estate, or their respective property; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, or the Estate; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, the Reorganized Debtor, the Estate, or their respective property including the property transferred pursuant to this Plan; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Estate, the Reorganized Debtor, or the Debtor; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, nothing in this Section XI.C shall enjoin, prevent, or hinder in any

Case: 15-50801    Doc# 228    Filed: 10/26/17    Entered: 10/26/17 13:54:38    Page 61 of 68

way any post-Effective Date collection efforts by Union Bank, CGS, or other appropriate party with respect to the Non-Dischargeable Debts.

## XII.

## FEASIBILITY OF THE PLAN

Successful consummation of the Plan is not certain. Nonetheless, Union Bank believes that the Plan meets the feasibility test of Bankruptcy Code Section 1129(a)(11). The specific contingencies to the success of the Plan include the following:

• The ability of the Liquidating Trustee to sell sufficient Estate assets to pay Allowed administrative expense claims. Based on the prior estimates from the Debtor himself of the interest in Coastal, which Union Bank feels were low and do not include the full amount of his interest in Coastal, Union Bank feels the sale of such interests shall easily provide sufficient funds to pay Allowed administrative expense claims. In particular, even accepting the Debtor's most recent assertion his interest in Coastal is only 24%, and that interest is worth $448,500, that amount significantly exceeds any expected administrative expenses.[6] In addition, the Plan will not go effective in the absence of sale that produces sufficient proceeds to pay Allowed administrative expense claims, so the sequencing of events in the Plan removes any post-Effective Date uncertainty.

• A meaningful recovery to creditors in the case is dependent upon Union Bank obtaining some success in the Estate Enhancement Action. This would be true no matter what avenue the case took – dismissal, conversion to chapter 7, appointment of a chapter 11 trustee, or confirmation of a plan. Union Bank feels that permitting Union Bank to pursue the action before the Effective Date maximizes the chances that the Estate Enhancement Action will be vigorously

---

[6] This is so because the return on the estate's interest in Coastal would only be $448,500 if the Estate Enhancement Action were unsuccessful. In that case, Union Bank would not seek an administrative claim for its fees under Section 503(b) of the Bankruptcy Code, so the only administrative claims would be the balance of the allowed fees in Campeau Goodsell's final fee application net of the retainer ($102,757.50), a small US Trustee fee of $1,625, and the fees incurred by JLG, if its employment is approved. Union Bank does not believe there is any reasonable scenario in which these administrative expenses would exceed or even approach $448,500.

SMRH:484407725.1
COMBINED PLAN AND DISCLOSURE STATEMENT

1  pursued, and puts the up front expense of pursuing such an action on Union Bank. (If successful,
2  Union Bank reserves the right to seek a substantial contribution claim for its expenses associated
3  with the Estate Enhancement Action.)

**XIII.**

**ALTERNATIVES TO THE PLAN**

6  **A.      Chapter 7 Conversion**

7           In a chapter 7 liquidation proceeding, the Debtor's interest in any assets of the Estate,
8  including litigation rights, would vest in a chapter 7 trustee, who would succeed to all Estate
9  causes of action, and attempt to administer the assets and distribute any proceeds remaining to the
10 other creditors of the estate under the priorities established by Bankruptcy Code Section 507.

11          Union Bank believes that the Plan is more beneficial to creditors and other parties in
12 interest than chapter 7 for two reasons.

13          First, the Plan goes hand-in-hand with the Estate Enhancement Action, which is being
14 brought simultaneously by Union Bank. If the case were converted to chapter 7, a chapter 7
15 trustee would be appointed and may succeed Union Bank as plaintiff in the Estate Enhancement
16 Action. All of the fees incurred by the chapter 7 trustee and its counsel in that action would then
17 become administrative expenses of the estate. While Union Bank might seek its fees in that action
18 as a substantial contribution if the action is successful, it would likely not be able to do so if it was
19 not successful. Thus, the risk on the expense side of the Estate Enhancement Action is borne by
20 Union Bank if the Plan is pursued, and is borne by the entire Estate if the case is converted to
21 chapter 7. In addition, Union Bank has been in litigation with the Debtor for nearly three years
22 and has in that obtained a significant amount of knowledge and discovery about the Debtor and
23 the financial affairs of the Debtor and his companies that would be critical in pursuing the Estate
24 Enhancement Action. A new counsel hired by a chapter 7 trustee would not have any of this
25 knowledge and thus would not be in as good a position to pursue the Estate Enhancement Action.

26          Second, even apart from the Estate Enhancement Action, a chapter 7 would add another
27 layer of administrative expense to the Estate. If a chapter 7 trustee is appointed, she will be
28 entitled to a statutory commission on the funds distributed to creditors. A chapter 7 trustee is also

Case: 15-50801    Doc# 228    Filed: 10/26/17    Entered: 10/26/17 13:54:38    Page 63 of
68
SMRH:484407725.1                                    COMBINED PLAN AND DISCLOSURE STATEMENT

very likely in this case to hire another set of attorneys and perhaps also an accountant who would be compensated on an hourly basis from the assets of the Estate.

Third, conversion to chapter 7 would open up a new claims bar date and so may water down the existing creditors with a series of new claims.

**B.     No Other Plans**

The exclusive period in which only the Debtor could file a plan passed in July 2015.  After that, any party in interest has had the ability to file a plan.  Only Union Bank, however, has actually filed a Plan in this case.

**XIV.**

**VOTING, ACCEPTANCE, AND CONFIRMATION**

**A.     In General.**

The Hon. Elaine Hammond, Judge, United States Bankruptcy Court, has set a date for the hearing on the Confirmation of the Plan. The hearing is to held at the United States Bankruptcy Court, 280 South First Street, Courtroom 3020, San Jose, CA 95113.  The Plan can be implemented only if accepted by the requisite percentage of creditors and confirmed by the Bankruptcy Judge. Creditors entitled to vote should vote on the Plan by filling out and mailing the accompanying ballot to counsel. There is no assurance that, if accepted, the Plan will be confirmed by the Bankruptcy Judge.

**B.     Voting.**

Only impaired classes under the Plan will be entitled to vote on the Plan. The definition of an "impaired" class of Creditors is set forth in Section 1124 of the Bankruptcy Code.  Class 1 is impaired by the Plan and entitled to vote. No other Classes are impaired under the Plan, and there are in fact no other Classes created under the Plan.  Pursuant to Section 1126(f) of the Bankruptcy Code, a class that is not impaired under the Plan, and each holder of a Claim of such class, are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such class from the holders of Claims of such class is not required. The Bankruptcy Code defines "acceptance" of a plan by a class of Creditors as acceptance by the holders of two-thirds (2/3) in

SMRH:484407725.1                                                                    COMBINED PLAN AND DISCLOSURE STATEMENT

1  dollar amount and more than one-half (½) in number of the claims of that class which actually cast

2  ballots for acceptance or rejection of the Plan.

3       In addition to the requirement that a creditor be in an "impaired class", in order for a

4  creditor's vote to be counted, either for or against the Plan, the creditor must have either (1) filed a

5  proof of claim on or before the "Claims Bar Date", which was previously set by the Court at

6  July 14, 2015, or (2) have been listed by the Debtor in the Schedule of Liabilities as having a

7  claim which was non-contingent and undisputed.

8  **IF YOU HAVE ALREADY FILED A CLAIM YOU NEED NOT REFILE FOR THE PURPOSE OF VOTING ON THE PLAN**.

9

10       If a creditor wishes to vote for or against the Plan, the creditor should complete an

  acceptance or rejection of the Plan on the form ballot enclosed herewith which must be returned

11  pursuant to the instructions set forth thereon.

12  **C.**     **Confirmation**

13       If no impaired creditor classes accept the Plan, it cannot be confirmed. If at least one

14  impaired class of creditors accepts the Plan, the Court will hold a Confirmation Hearing. At the

15  Confirmation hearing, the Bankruptcy Judge has the duty to determine whether the Plan meets the

16  requirements of Section 1129 of the Bankruptcy Code. The principal requirements of Section 1129

17  include the following: (1) that the proponents of the Plan have complied with the applicable

18  provisions of the Bankruptcy Code on all matters connected with the case; (2) that the Plan has

19  been proposed in good faith, and not by any means forbidden by law; (3) that the requisite amount

20  of creditors have accepted the Plan or that the creditors are receiving an amount not less than they

21  would receive if liquidation under chapter 7 took place; (4) that at least one class of Creditors has

22  accepted the Plan; and (5) that confirmation of the Plan is not likely to be followed by liquidation,

23  or the need for further financial reorganization of the debtor; and (6) that the Debtor and the Plan

24  in all other respects comply with applicable law. Only if such determinations are made will the

25  Judge confirm the Plan.

26       If there are impaired creditor classes which have rejected the Plan, the Bankruptcy Judge

27  may order Confirmation over its rejection, but only if the Judge first determines that the rights of

28

Case: 15-50801   Doc# 228   Filed: 10/26/17   Entered: 10/26/17 13:54:38   Page 65 of 68

non-consenting classes of creditors are protected under Bankruptcy Code Section 1129(b) and other applicable law. Union Bank reserves the right to seek confirmation of this Plan under Bankruptcy Code Section 1129(b).

## XV.

## FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Each Creditor should consult its own tax advisors concerning any income tax consequences of its respective treatment under the Plan.

## XVI.

## MISCELLANEOUS PROVISIONS

**A.      Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case subsequent to the Confirmation Date to the fullest extent permitted by law.

**B.      Effectuating Documents and Further Transactions**

Upon entry of the Confirmation Order, the Liquidating Trustee and the Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**C.      Preservation of Causes of Action.**

For avoidance of any doubt, any and all claims and other Causes of Action accruing to the Debtor or the estate shall be preserved and retained by the Liquidating Trust and the Liquidating Trustee, who shall have the exclusive right and standing to enforce any such Causes of Action.

**D.      Post-Confirmation United States Trustee Fees.**

All outstanding fees payable pursuant to section 1930, Title 28, United States Code, shall be paid by the Debtor on or before the Effective Date.  The Liquidating Trustee shall be responsible for quarterly fees due to the United States Trustee after the Effective Date and through and until the date of entry of either an order dismissing the case or a final decree.  So long as the Debtor and Liquidating Trustee, as applicable, are required to make these payments, the Debtor

Case: 15-50801    Doc# 228    Filed: 10/26/17    Entered: 10/26/17 13:54:38    Page 66 of 68

and the Liquidating Trustee, as applicable, shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

**E.      Effect of Conversion to Chapter 7.**

If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate.

**F.      Notices.**

Except as otherwise provided in the Plan, any notice or other communication required or permitted under the Plan will be in writing and deemed to have been validly served, given, delivered, and received upon the earlier of:  (a) the first business day after transmission by facsimile or hand delivery or deposit with an overnight express service or overnight mail delivery service or by electronic means with consent of the recipient; or (b) the third calendar day after deposited in the United States mail, with proper first class postage prepaid.  Contact information relevant to providing notice to the Liquidating Trustee will be disclosed in the Liquidating Trust Agreement.

**G.      Post-Effective Date Notices.**

Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Liquidating Trustee, and those persons who file with the Bankruptcy Court and serve upon the Liquidating Trustee a request, which includes the person's name, contact individual, address, telephone number and facsimile number, that such person receive notice of post-Effective Date matters (the list of such parties is referred to herein as the "*Post-Effective Date List*").  Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Cases will not receive notice of post-Effective Date matters unless such persons file a new request in accordance with this Section.

**H.      Plan Controls**

To the extent the terms of the Plan are inconsistent with the Liquidating Trust Agreement, the terms of the Plan shall be controlling.

SMRH:484407725.1

# I. Applicable Law

The Plan is to be governed by and construed under the Bankruptcy Code and the laws of the State of California as they may be applicable.

## XVII.

## RECOMMENDATION AND CONCLUSION

Union Bank believes that confirmation of the Plan is in the best interests of the estate and its creditors and in particular, believes that recoveries to holders of Allowed claims will be maximized under the circumstances by confirmation of the Plan. Union Bank urges all creditors entitled to vote on the Plan to vote in favor of the Plan.

Dated: _____ __, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
/s/ Michael M. Lauter
STEVEN B. SACKS
MICHAEL M. LAUTER
ISAIAH Z. WEEDN
Attorneys for MUFG UNION BANK, N.A.

COMBINED PLAN AND DISCLOSURE STATEMENT