SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
STEVEN B. SACKS, Cal. Bar No. 98875
ssacks@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:     415-434-9100
Facsimile:     415-434-3947

Attorneys for Creditor
MUFG UNION BANK, N.A.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 15-50801 |
| ROBERT BROWER, SR., | Chapter 11 |
| Debtor. | **CREDITOR MUFG UNION BANK, N.A.'S THIRD AMENDED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT DATED NOVEMBER 2, 2017** |
| | <u>Plan Confirmation Hearing:</u> |
| | Date:     November 2, 2017<br>Time:     10:30 a.m.<br>Place:     280 S. First Street<br>            San Jose, CA 95113<br>            Courtroom 3020<br>Judge:    Hon. Elaine Hammond |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. EXECUTIVE SUMMARY ............................................................................................ 1

III. STRUCTURE OF THE PLAN .................................................................................... 3

IV. BACKGROUND OF THE DEBTOR AND FINANCIAL INFORMATION ................ 4

    A.    Events Leading to the Bankruptcy Filing According to the Debtor .......................... 5

    B.    Assets and Liabilities According to the Debtor ..................................................... 5

V. MAIN EVENTS IN THE BANKRUPTCY CASE ........................................................ 7

    A.    Filing of Petition and Dissolution of Attachment Lien ........................................... 7

    B.    Employment of Debtor's Counsel, Eventual Withdrawal and Proposed Replacement Counsel ............................................................................................. 7

    C.    Sale of Coastal Property .......................................................................................... 8

    D.    Failed Motions to Sell Interest in Coastal .............................................................. 8

    E.    Judgment Obtained on Guaranteed Loan Against Chateau Julien ......................... 8

    F.    Non-Dischargeability Judgment .............................................................................. 9

    G.    Stay Relief Motion to Continue Pre-Petition Litigation Against Brower ............... 9

    H.    Estate Enhancement Action filed by Union Bank .................................................. 9

VI. CLASSIFICATION AND TREATMENT OF CLAIMS ............................................. 10

    A.    Class 1:  General Unsecured Claims ..................................................................... 11

VII. TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS ...................... 13

    A.    Administrative Claims ............................................................................................. 13

    B.    Priority Tax Claims ................................................................................................. 15

VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................................. 15

IX. IMPLEMENTATION OF THE PLAN ....................................................................... 16

    A.    Funding the Plan ...................................................................................................... 16

    B.    Liquidating Trust ..................................................................................................... 17

        1.    Establishment of Liquidating Trust ............................................................. 17

        2.    Liquidating Trustee ...................................................................................... 18

| | | | |
|---|---|---|---|
| | C. | Avoidance Actions and Other Causes of Action | 18 |
| | D. | Objections to Claims | 19 |
| X. | | CONDITIONS TO EFFECTIVENESS OF THE PLAN | 20 |
| XI. | | EFFECT OF CONFIRMATION ORDER; DISCHARGE | 20 |
| | A. | Binding Effect of the Plan. | 20 |
| | B. | Discharge. | 20 |
| | C. | Discharge Injunction. | 21 |
| XII. | | FEASIBILITY OF THE PLAN | 22 |
| XIII. | | ALTERNATIVES TO THE PLAN | 23 |
| | A. | Chapter 7 Conversion | 23 |
| | B. | No Other Plans | 24 |
| XIV. | | VOTING, ACCEPTANCE, AND CONFIRMATION | 24 |
| | A. | In General. | 24 |
| | B. | Voting. | 24 |
| | C. | Confirmation | 25 |
| XV. | | FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | 26 |
| XVI. | | MISCELLANEOUS PROVISIONS | 26 |
| | A. | Retention of Jurisdiction | 26 |
| | B. | Effectuating Documents and Further Transactions | 26 |
| | C. | Preservation of Causes of Action. | 26 |
| | D. | Post-Confirmation United States Trustee Fees. | 26 |
| | E. | Effect of Conversion to Chapter 7 | 27 |
| | F. | Notices. | 27 |
| | G. | Post-Effective Date Notices. | 27 |
| | H. | Plan Controls | 27 |
| | I. | Applicable Law | 28 |
| XVII. | | RECOMMENDATION AND CONCLUSION | 28 |

Case: 15-50801   Doc# 233   Filed: 11/02/17   Entered: 11/02/17 17:15:17   Page 3 of
52
SMRH:484409725.1                                                COMBINED PLAN AND DISCLOSURE STATEMENT

# I.

## INTRODUCTION

This Combined Chapter 11 Plan of Liquidation and Disclosure Statement (the "***Plan***") provides for the reorganization or other disposition of the assets of Robert Brower, Sr. ("***Brower***" or the "***Debtor***"). The next section of the Plan (Part II) contains an executive summary of the Plan's terms.

The Plan is proposed by creditor MUFG Union Bank, N.A. ("***Union Bank***"), the holder of the largest general unsecured claim in the bankruptcy case of the Debtor. The Plan in Part VI describes how each claim will be treated if the Plan is confirmed.

A hearing on confirmation of the Plan will be held on November 2, 2017, at 10:30 a.m. as described in the enclosed notice ("***Confirmation Hearing Notice***"). The date the Court enters its order confirming the Plan is referred to as the "***Confirmation Date***." The "Effective Date" of the Plan will be the fifteenth (15th) business day after the Confirmation Date, provided the condition to effectiveness of the Plan set forth in paragraph 3 of Article X of this Plan has been satisfied. To the extent such condition is not then satisfied, the Effective Date shall occur on the day such condition becomes satisfied.

You may be entitled to vote on the Plan, or to object to confirmation of the Plan. A ballot that can be used to vote on the Plan, along with the Confirmation Hearing Notice, is enclosed in the package containing this Plan. Please refer to the Confirmation Hearing Notice for the deadline to return the ballot and the deadline to file objections.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

# II.

## EXECUTIVE SUMMARY

The Plan is a reorganizing plan that is anticipated to take effect after the resolution of Union Bank's recently filed adversary proceeding in which it seeks to obtain a ruling from the Court as to the extent of the estate's interest in various assets purportedly held in the names of

COMBINED PLAN AND DISCLOSURE STATEMENT

others under Section 541 of the Bankruptcy Code, as well as a ruling avoiding a post-petition merger of one of the Debtor's companies (the "***Estate Enhancement Action***"). Union Bank asserts in the Estate Enhancement Action that the estate's interest in certain assets, including the Debtor's interest in Coastal Cypress Corporation,[1] and his interest in his residence via American Commercial Properties, Inc., are greater than they asserted to be in the Debtor's schedules of assets and liabilities filed in this case. Union Bank also asserts that a recent merger of Coastal Cypress Corporation accomplished in April 2017 was an unauthorized post-petition transfer and should be avoided under Bankruptcy Code section 549. Once the Court rules on the scope of the estate in the Estate Enhancement Action, the Plan envisions that marketing of the Debtor's assets will take place, as supervised by a Liquidating Trustee appointed on the date of confirmation of this Plan. Then, once the Liquidating Trustee has secured a buyer of assets of sufficient value to make all payments necessary for the Plan to pay administrative expenses and become effective, the Effective Date of the Plan will occur, all of the Debtor's assets will be transferred to the Liquidating Trust, the Liquidating Trustee will then be able to close the sale(s) he or she secured prior to the Effective Date, and the Liquidating Trustee will use the proceeds of the sale(s) to pay the allowed administrative expenses necessary for the Plan to become effective. In other words, in order for this Plan to become effective, the Liquidating Trustee will need to collect funds on the Effective Date from the sale of estate assets arranged by the Liquidating Trustee prior to the Effective Date in an amount sufficient to pay all allowed administrative expenses. The Liquidating Trust will be administered by the Liquidating Trustee for the benefit of holders of allowed general unsecured creditors in the case.

As of now, the return to holders of general unsecured claims in the case is unknown, as the extent of the estate's interest in certain assets is unknown. As a result, Union Bank is unable to provide a detailed liquidation analysis comparing a hypothetical chapter 7 liquidation to the recovery to creditors under this Plan at this time. However, Union Bank believes that the Plan is

---

[1] References to Coastal Cypress Corporation in this Plan refer to both the original California corporation of that name and the recently formed Delaware corporation of the same name into which the Debtor merged the California corporation.

superior to conversion to chapter 7 for a number of reasons. First, this Plan goes hand in hand with the Estate Enhancement Action, and the recovery to creditors is largely dependent on the success of the Estate Enhancement Action. In a chapter 7, the chapter 7 trustee would likely succeed to this action and pursue it with her own counsel. However, Union Bank has litigated with the Debtor for several years and in that process has obtained a significant amount of knowledge and discovery on the financial condition of the Debtor and his companies that will be critical in successfully pursuing the Estate Enhancement Action. The combination of the Plan and Union Bank's pursuit of the Estate Enhancement Action presents creditors with the best possibility for a meaningful recovery. Second, the Plan avoids the addition of another layer of administrative expenses to the estate. Third, were the case converted to chapter 7, a new claims bar date would open the door to possible additional claims that could dilute the recovery to creditors.

As such, it is more likely that a higher recovery can be obtained under the Plan than in a hypothetical chapter 7 scenario and, even if it were ultimately in the form of low value recoveries in settlement of claims, such recoveries would be better than (and certainly no worse) than the expected result in a chapter 7.

## III.
## STRUCTURE OF THE PLAN

The Plan provides for the creation of a Liquidating Trust to be administered by a Liquidating Trustee. The Liquidating Trustee under the Liquidating Trust will be tasked with liquidating the Debtor's assets and distributing net proceeds (if any) to the creditors of the Debtor. The effectiveness of the Plan is conditioned upon the Liquidating Trustee finding sufficient assets to at least pay the administrative expenses allowed in this bankruptcy case; one of the conditions precedent in Article X below is that the Liquidating Trustee shall have liquidated or sold sufficient estate assets to permit the Liquidating Trustee to pay all Allowed administrative claims in full.

On and after the Confirmation Date, the Liquidating Trustee will have the power and authority to market the Debtor's assets for sale. On the Effective Date, the Liquidating Trustee will continue to have the power and authority to market the Debtor's assets for sale, and will also have the power to transfer, liquidate, settle, or otherwise dispose of any of the Debtor's assets, and

SMRH:484404725.1                                      COMBINED PLAN AND DISCLOSURE STATEMENT

distribute the net proceeds to the Debtor's creditors. The majority of the assets of the estate are contemplated to be the Debtor's interest in Coastal Cypress Corporation (a company that formerly owned and leased real property in Carmel, CA before selling it in 2015) and the Debtor's interest in American Commercial Properties, Inc. (a company formed by the Debtor that owns the residence in which the Debtor and his wife reside). Collectively these interests are referred to herein as the "*Corporate Interests*." The Liquidating Trustee's power to liquidate all of the estate's assets for the benefit of creditors also includes the power to prosecute the claims held by the estate, including avoidance causes of action under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state or federal statutes and common law, and other claims held by the Debtor's estate (collectively, the "*Causes of Action*").

Any recoveries generated from the sale of the Corporate Interests, the prosecution of the Causes of Action, or from any other source (collectively, the "*Recoveries*") will be used to make distributions to creditors after payment of the fees and costs of the Liquidating Trust, including the fees and costs associated with conducting any sale of the Corporate Interests or in litigating the Causes of Action. Recoveries remaining after the foregoing costs and fees are referred to in the Plan as "*Net Recoveries*." The Net Recoveries will be used to make distributions to the unsecured creditors holding allowed claims, pursuant to or consistent with the Bankruptcy Code. Any distribution made to unsecured creditors from the Net Recoveries is referred to herein as "*Unsecured Creditor Distribution*."

# IV.

## BACKGROUND OF THE DEBTOR AND FINANCIAL INFORMATION

The Debtor is an individual that resides in Carmel, CA. The Debtor is or until recently was the principal of a number of businesses that he started in the Carmel area. These include: (i) Coastal Cypress Corporation ("*Coastal*" or "*Coastal Cypress*"), a company that owned and leased real estate in Carmel, CA until selling that real estate after the bankruptcy filing in April 2015; (ii) Chateau Julien, Inc. ("*Chateau Julien*"), a company that sold and distributed wine under the label "Chateau Julien" as well as other labels; (iii) Great American Wineries, Inc. ("*GAW*"), a company also sold and distributed wine under the same labels as Chateau Julien, Inc., and which

SMRH:484409725.1                                                    COMBINED PLAN AND DISCLOSURE STATEMENT

Union Bank believes to be the legal successor to Chateau Julien, Inc.; and (iv) American Commercial Properties, Inc. ("*ACP*"), a corporation that owns the Debtor's home and leases it to the Debtor.

**A.    Events Leading to the Bankruptcy Filing According to the Debtor**

The Debtor guaranteed a loan made by Union Bank and its predecessors in interest to Chateau Julien in the principal amount of $4,850,000. After the expiration of several extensions granted by Union Bank and its predecessors, the loan matured in November 2013. Despite several demands, neither Chateau Julien nor the Debtor repaid the loan. Union Bank engaged in lengthy workout discussions with Chateau Julien and the Debtor, but no consensual workout agreement was reached. Union Bank then filed an action in Monterey Superior Court in September 2014 seeking to enforce the obligations of Chateau Julien and the Debtor under the loan documents. In January 2015, Union Bank obtained a temporary protective order and then a writ of attachment against the Debtor – the latter being a provisional remedy that provided Union Bank with a lien over the Debtor's assets to secure an eventual judgment on Union Bank's claim against the Debtor based on his guaranty of the Chateau Julien loan.

The Debtor filed this bankruptcy case on March 11, 2015 (the "*Petition Date*") in order to dissolve the attachment lien under a state law provision that states that such liens are automatically dissolved by a bankruptcy filing accomplished within 90 days of the issuance of the temporary protective order. The Debtor also asserts that the filing was motivated in part by ensuring that any income taxes resulting from a liquidation of the Debtor's assets would be paid ahead of the Bank as priority unsecured claims.

**B.    Assets and Liabilities According to the Debtor**

The Debtor's sworn schedules of assets and liabilities in this case reflect very little in the way of assets compared with very significant claims on the liability side. While the Debtor lists no secured claims or priority unsecured claims, he does list roughly $11.2 million in general unsecured claims. That figure was reduced shortly after the Petition Date by the sale of the real property owned by Coastal Cypress, described in greater detail below. The sale of the Coastal Cypress property paid off a secured loan owed by Coastal Cypress to Union Bank, which the

COMBINED PLAN AND DISCLOSURE STATEMENT

Debtor had guaranteed. As reflected in the Debtor's monthly operating reports, the total asserted general unsecured claims pool after the sale of the Coastal Cypress property to approximately $5,409,852. *See, e.g.*, Dkt. No. 162. The unsecured claim held by Union Bank on account of the Debtor's guaranty of the defaulted loan to Chateau Julien represents the large majority of that figure. It is not clear if the figure in the monthly operating reports is based on the scheduled claims, filed claims, or a combination thereof, but the scheduled claim held by Union Bank on account of the Chateau Julien guaranty is $4,850,000 (reflecting the principal only), and Union Bank's filed claim based on the Chateau Julien guaranty is in the asserted amount of $5,091,299.30 as of the date of the bankruptcy filing. *See*, claim #7.

On the asset side, the Debtor asserts that the only asset of any significant value is his alleged 24% interest in Coastal Cypress. The Debtor asserts that he owns no interest in ACP, Chateau Julien, or GAW. Coastal Cypress formerly owned real property in Carmel, CA, but sold it to a third party buyer for $12 million in April 2015. The Debtor's most recent valuation of his asserted 24% interest in Coastal Cypress came in the second of two failed motions to redeem that interest, in which he asserted that the interest was worth $448,500. That motion was filed in December 2015 and later withdrawn. The Debtor has not provided any more updated valuation of the Coastal Cypress interest.

The Debtor claims not to have any other assets of significant value that would be available to creditors. His schedules indicate roughly $153,000 in a 401k that he claims to be exempt. His Schedule B also lists notes payable to him from Chateau Julien ($142,829) and Coastal Cypress ($83,357). The Chateau Julien note appears to be uncollectible, as Chateau Julien has ceased all business operations and, according to Mr. Brower, has no assets of significant value. The Debtor's monthly operating reports reflect that the note owed by Coastal Cypress was paid to the Debtor during the bankruptcy case and used to pay his monthly expenses. *See*, April 2017 MOR, Dkt. No. 162, p. 4, line item 8. The Debtor is not currently employed; his regular income consists of a monthly social security payment of about $2,382. *See*, *id*.

As described in greater detail below, Union Bank believes that the Debtor's assets are greater than he claims them to be, and has filed an adversary proceeding seeking a determination

as to the extent of his assets.  In particular, the adversary proceeding seeks a determination that the Debtor's interest in Coastal is greater than 24% and that his interest in ACP is greater than 0%.

Further, Union Bank recently discovered that Coastal, which at all relevant times was a California corporation, was merged into a Delaware corporation of the same name in April 2017. Union Bank amended its adversary complaint to add a count that seeks to unwind this merger under Section 549 of the Bankruptcy Code.  As of now, Union Bank is not certain of the effect of the merger on Brower's interest in Coastal.

V.

MAIN EVENTS IN THE BANKRUPTCY CASE

**A.      Filing of Petition and Dissolution of Attachment Lien**

The case commenced with the filing of the petition on the March 11, 2015 Petition Date. As mentioned above, the stated purpose of the filing was to dissolve the attachment lien that Union Bank had obtained under state law against the Debtor's property.  This was achieved automatically by the bankruptcy filing, as California Code of Civil Procedure section 493.030(b) terminates an attachment lien if the bankruptcy filing is made within 90 days of the issuance of the temporary protective order.

**B.      Employment of Debtor's Counsel, Eventual Withdrawal and Proposed Replacement Counsel**

Shortly after the case was filed, the Debtor moved the Court for permission to employ Campeau Goodsell Smith, L.C. ("*Campeau Goodsell*") as his counsel in this case.  The application was approved in an order entered March 31, 2015.  *See*, Dkt. No. 24.

On May 18, 2017, Campeau Goodsell filed a motion to withdraw as the Debtor's counsel. The Court granted the motion on June 23, 2017, and Campeau Goodsell was replaced effective June 30, 2017 when a substitution of attorney was filed identifying the Jaurigue Law Group ("*JLG*") as the Debtor's new proposed counsel.  JLG filed an application to be employed as successor counsel to the Debtor on August 14, 2017, which application remains pending.

## C.  Sale of Coastal Property

While not something that occurred within the Bankruptcy Case itself, Coastal Cypress' sale of its Carmel, CA real estate in April 2015 had a significant impact on the estate.  The sale was for a total amount of $12 million, and necessitated the repayment of a separate secured loan owed by Coastal Cypress to Union Bank, which the Debtor had also guaranteed.  As described above in Section IV, this significantly reduced the unsecured claims in the Debtor's case, such that the main unsecured claim surviving is that based on the Debtor's guaranty of the loan by Union Bank to Chateau Julien, which remains unpaid.

## D.  Failed Motions to Sell Interest in Coastal

The Debtor attempted on two occasions to sell his asserted 24% interest in Coastal back to Coastal.  The first attempt was in a motion filed on October 21, 2015, in which he sought to sell his asserted 24% interest for $584,200.  *See*, Dkt. No. 59.  Union Bank opposed the motion because of the lack of any evidence supporting the proposed sale price.  *See*, Dkt. No. 67.  The motion was denied for that reason after a hearing held on November 12, 2015.

The Debtor made a second attempt at selling his asserted 24% interest in Coastal back to Coastal when he filed another sale motion on December 3, 2015.  *See*, Dkt. No. 77.  By this time, the Debtor had dropped the proposed sale price to $448,500, asserting that the reduction was due to operating expenses, even though after the sale of its sole asset, Coastal had no apparent ongoing operations.  After Union Bank requested discovery substantiating the sale price, obtaining some of the requested materials over the objections of various parties connected to the Debtor, and objected to the motion, the Debtor eventually withdrew the motion on August 1, 2016.  *See*, Dkt. No. 133.  The Debtor has not proposed anything further since that time vis a vis the liquidation of his interest in Coastal.

## E.  Judgment Obtained on Guaranteed Loan Against Chateau Julien

While not an action taken in the Bankruptcy Case *per se*, as stated above the largest claim against the estate is Union Bank's claim in excess of $5 million based on the Debtor's guaranty of Union Bank's long defaulted loan to the Debtor's company, Chateau Julien.  The bankruptcy filing stayed the action against the Debtor in Monterey Superior Court based on that guaranty, but

it did not stay the action against Chateau Julien on the same loan. Union Bank's action against Chateau Julien proceeded to trial in May and June of 2016. After the trial, the Monterey Superior Court entered judgment in favor of Union Bank and against Chateau Julien for $5,409,851.57. Of note, the judgment amount was net of a small $3,214.58 credit given for the recoveries obtained by a pre-judgment receiver that was appointed over Chateau Julien's assets.

## F. Non-Dischargeability Judgment

Union Bank filed an adversary proceeding against the Debtor seeking a determination that its claim based on the Debtor's guaranty of the Chateau Julien loan is non-dischargeable under Bankruptcy Code section 523(a), and a determination that the Debtor was not eligible for a discharge at all under Bankruptcy Code section 727(a).

The matter went to trial in the Bankruptcy Court in February 2017. After trial, the Bankruptcy Court entered judgment in favor of Union Bank on its assertion that its claim based on the guaranty of the Chateau Julien loan is non-dischargeable under Section 523(a) of the Bankruptcy Code. The Bankruptcy Court however ruled in favor of the Debtor on Union Bank's assertion that the entire discharge should be denied under Section 727(a). As a result, the Debtor may still be able to get a discharge in this Bankruptcy Case, but the discharge would not apply to Union Bank's guaranty claim of over $5 million, which is by far the largest claim in the case.

## G. Stay Relief Motion to Continue Pre-Petition Litigation Against Brower

On April 28, 2017, Union Bank made a motion seeking relief from the automatic stay to continue its pre-petition guaranty litigation against the Debtor in state court. After a hearing held on May 12, 2017, the Bankruptcy Court granted the motion. This means that Union Bank will be able to seek a money judgment against the Debtor based on his guaranty of the loan to Chateau Julien in state court in Monterey, California.

## H. Estate Enhancement Action filed by Union Bank

On May 11, 2017, Union Bank filed a new adversary proceeding against the Debtor and various third parties seeking a determination that the Debtor's interests in Coastal Cypress and ACP are greater than he asserts them to be (the "***Estate Enhancement Action***"). After filing the complaint, Union Bank discovered that the Debtor recently in April 2017 caused Coastal Cypress

Corporation, a California corporation, to be merged into Coastal Cypress Corporation, a Delaware corporation. Union then amended its complaint in the Estate Enhancement Action to add a count seeking to unwind that merger as an unauthorized post-petition transaction under Bankruptcy Code section 549.

Recently, the various groups of defendants responded to the amended complaint by filing motions to dismiss some or all of the causes of action in the amended complaint on a number of grounds, including judicial estoppel (on the theory that Union Bank's assertions about the estate's interest in Coastal conflict with positions taken in the non-dischargeability action), and statute of limitations (on the theory that certain of the declaratory relief causes of action in the amended complaint are really disguised fraudulent transfer actions).

Union Bank does not believe the motions to dismiss have any merit, and will respond to them by the deadline of August 14, 2017. The motions to dismiss are set to be heard in the Bankruptcy Court on August 28, 2017.

## VI.

## CLASSIFICATION AND TREATMENT OF CLAIMS

The claims against the Debtor are classified below (except for administrative and priority tax claims) for purposes of the Plan.[2]

The listing of the claims in the Plan does not necessarily imply that the claim is an allowed claim. A claim is allowed ("*Allowed*") if: (a) a proof of claim was (i) timely filed, or (ii) deemed filed under Bankruptcy Code Section 1111(a), or (iii) filed late with permission of the Court; and (b) such claim is not disputed, or, if disputed, such clam has been allowed in whole or in part by a final order of the Court, provided that any such claim shall be an allowed claim only to the extent stated in any such order.

The right to object to claims will be vested in the Liquidating Trust upon confirmation of the Plan. As of the date of this Plan, the review and analysis of the validity of the claims have not

---

[2] There are no secured claims or priority unsecured claims either scheduled or filed on the claims register in this Bankruptcy Case. In addition, because the case is an individual case, there is no class of equity interest holders.

SMRH:484407125.1                                                    COMBINED PLAN AND DISCLOSURE STATEMENT

been completed.  Such process will be continued following the confirmation of the Plan.  Once this process is completed, it is anticipated that objections may be filed to certain claims.  All claims (other than Union Bank's claim based on the Debtor's guaranty of the Chateau Julien loan, which will be decided in state court) will be subject to such review and analysis.  Any and all rights of the estate giving rise to an objection to a claim are reserved under the Plan.

The following is a summary of each class under this Plan and whether such class is entitled to vote on the Plan:

| Class | Description | Entitled to Vote? |
|---|---|---|
| 1 | General Unsecured Creditors | Yes |

**A.      Class 1:  General Unsecured Claims**

1.      <u>Classification</u>:  This class consists of holders of unsecured claims as follows:

(a)      <u>Presumed Allowed Claims</u>:  The holders of the following unsecured claims have filed proofs of claim in the Bankruptcy Case and, therefore, are presumed valid (subject to review, analysis and any right to object thereto by the Liquidating Trustee):

| Creditor | Amount of Proof of Claim | Proof of Claim # |
|---|---|---|
| MUFG Union Bank, N.A. | $5,092,299.30 | 7 |
| Wells Fargo Bank, N.A. | $93,566.65 | 5 |
| Bobby Brower | $25,000.00 | Schedule F |
| American Express Bank, FSB | $17,334.86 | 6 |
| First National Bank of Omaha | $11,079.30 | 3 |
| First National Bank of Omaha | $5,611.53 | 9 |
| First National Bank of Omaha | $5,318.08 | 2 |
| American Express Centurion Bank | $1,344.57 | 8 |
| First National Bank of Omaha | $245.71 | 4 |
| *TOTAL* | $5,251,800.00 | |

b)   Disallowed Claims:  Holders of the following unsecured claims were scheduled on the Debtor's schedules as either disputed, contingent or unliquidated claims but have not filed proofs of claim in the Bankruptcy Case and the deadline to file claims has passed. Therefore, these claims are not Allowed and the holders of such claims will not receive any distribution (except if and to the extent such claims become Allowed).

| Creditor | Scheduled Amount | Scheduled as Disputed, Contingent, or Unliquidated |
|---|---|---|
| Blackcard | $5,212.00 | Yes |
| Chase Card Services | $33,192.00 | Yes |
| Chase Card Services – Marriott | $3,185.00 | Yes |
| Chase Chateau Julien, Inc. | $85,452.00 | Yes |
| Union Bank – First Bankcard | $5,417.00 | Yes |
| *TOTAL* | *$132,458.00* | |

2.   Treatment:  To the extent Allowed Class 1 claims have not already been paid, released or otherwise satisfied prior to the Effective Date, and except to the extent the holder of an Allowed Class 1 claim agrees to a different treatment, on the Effective Date, each such holder of an Allowed unsecured claim in Class 1 shall receive a pro rata share of any and all Unsecured Creditor Distributions until all holders of Allowed unsecured claims in Class 1 are paid in full plus interest paid at the time of making the final Unsecured Creditor Distribution to the extent excess funds then remain available after payment of all fees and expenses of the Liquidating Trust and Allowed claims (which interest shall be calculated based on the amount of the Allowed unsecured claim at the non-default rate provided in the applicable contract or, if there is no contract, at the federal judgment rate, accrued up to and including the date of such final distribution) (such excess funds are referred to herein as "*Excess Funds*").

3.   Impairment:  Class 1 is impaired and is entitled to vote under the Plan.

SMRH:484407125.1                                                    COMBINED PLAN AND DISCLOSURE STATEMENT

# VII.

## TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS

Claims entitled to administrative priority under Bankruptcy Code Sections 507(a)(2), 507(a)(3), and 507(a)(8) are not classified.

## A. Administrative Claims

"*Administrative Claim*" consist of the claims of any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the estate incurred on or after the Petition Date and through and including the Confirmation Date, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise, including compensation of the Debtor's bankruptcy counsel.

Union Bank is aware of the following Administrative Claims, which consist of current estimated amounts as of July 31, 2017:

| Claimant | Estimated Amount |
|---|---|
| Campeau Goodsell Smith, L.C. (Debtor's Former Counsel) | $102,757.50[3] |
| Jaurigue Law Group (Debtor's Proposed Replacement Counsel) | $50,000.00[4] |
| Union Bank (expected application under Section 503(b)) | Unknown[5] |

---

[3] The Court approved compensation to Campeau Goodsell on a final basis in the amount of $127,757.50 in its order on Campeau Goodsell's final fee application. The balance reflected here is the amount of allowed compensation net of the $25,000 retainer that Campeau Goodsell states to have applied to the compensation approved on an interim basis after Campeau Goodsell's first interim fee application.

[4] JLG's application to be employed has just been filed, and therefore has yet to be approved. The estimates herein are provided by JLG, and are based on the assumption that the application will be approved. Union Bank does not by providing estimates endorse the application by JLG, and reserves the right to object to JLG's employment or to any future fee application on any basis.

[5] Union Bank reserves the right to seek an administrative claim for fees expended in the Estate Enhancement Action and on the Plan if the two efforts are successful. Union Bank does not

| Claimant | Estimated Amount |
|---|---|
| United States Trustee | $1,625.00 |
| TOTAL: | $154,382.50 |

Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such claim, each holder of an Allowed Administrative Claim shall be paid in full on the Effective Date.

There shall be two Administrative Claim bar dates in this case. First, any request for allowance of an Administrative Claim incurred on or prior to the Confirmation Date shall be filed no later than sixty (60) days after the Confirmation Date (the "***First Administrative Claim Bar Date***"), with the exception that the First Administrative Claim Bar Date shall not apply to any application by the Bank for payment of its fees and expenses incurred in this Bankruptcy Case and/or the Estate Enhancement Action under a theory that the Bank provided a substantial contribution to the Debtor's estate under Section 503(b)(3) and/or (b)(4). Without limiting the foregoing, the First Administrative Claim Bar Date shall apply to all professional fees and expenses incurred by Court-approved professionals retained by the Debtor. Failure to timely file a request for payment of an Administrative Claim that was incurred on or prior to the Confirmation Date on or prior to the First Administrative Claim Bar Date shall result in the holder of such claim being forever barred from asserting such claim or receiving any payment on account of such claim.

Second, any request for allowance of an Administrative Claim incurred during the period beginning on the day after the Confirmation Date and ending on the Effective Date shall be filed on or before the sixtieth (60th) day after the Effective Date (the "***Second Administrative Claim***

currently have an estimate of its fees on these matters as the Estate Enhancement Action is in a very early stage.

Case: 15-50801    Doc# 233    Filed: 11/02/17    Entered: 11/02/17 17:15:17    Page 17 of
52
SMRH:484407125.1    COMBINED PLAN AND DISCLOSURE STATEMENT

**Bar Date**"),  or the holder of such claim shall be forever barred from asserting such claim or receiving any payment on account of such claim.

**B.      Priority Tax Claims**

There are no known priority tax claims against the Debtor, as the Internal Revenue Service has amended its claim to be $0.00.

To the extent that the holders of Allowed priority tax claim have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a holder of an Allowed priority tax claim agrees to a different treatment, the holder of such Allowed priority tax claim shall receive on the later of the Effective Date or the date such priority tax claim becomes an Allowed claim, or as soon thereafter as is reasonably practicable, in full and final satisfaction, settlement and release and in exchange for such claim, an amount in cash equal to the unpaid amount of such Allowed priority tax claim, which may be paid through deferred cash payments of a value, as of the Effective Date, equal to the Allowed amount of such claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored general unsecured claim provided for by the Plan.  For the avoidance of doubt, claims asserted by taxing authorities for income tax against the Debtor arising from the liquidation of estate assets by the Liquidating Trustee will be treated as either administrative claims under Section VII.A or priority tax claims under Section VII.B and will be paid in full by the Liquidating Trustee, to the extent they are Allowed.

## VIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The following contracts and leases are listed on Schedule G of the Debtor's Schedules:

| Counterparty | Contract/Lease |
|---|---|
| American Commercial Properties | Lease of residential real property (Debtor's residence) |

Subject to the effect that the Estate Enhancement Action may have on the lease with ACP, to the extent any such contract or lease is an executory contract or unexpired lease, such contract or lease shall be deemed rejected under the Plan.

Any claims arising out of such rejection must be filed with the Bankruptcy Court by no later than thirty (30) calendar days after the Effective Date. If no Proof of Claim is filed within such time period, it shall be conclusively presumed that no such claim exists and will be forever barred from receiving a distribution from any distribution from the Debtor, its estate or the Liquidating Trust.

Allowed claims arising from rejection of executory contracts or unexpired leases shall be treated as Class 1 claims (general unsecured claims). It is unknown to what extent the amounts of claims arising from such rejection are factored in the Class 1 claims that have been filed in the case. To the extent such amounts are not already factored in the filed Class 1 claims, additional claims can be expected to be filed for such amounts.

The Bank notes that there is only one item listed on the Debtor's Schedule G in this case, which is the alleged lease of the Debtor's residence from ACP, a company he formed to own the residence. To the extent such lease is valid, the effect of this Plan would be to reject it. The Bank asserts that the rejection damages resulting from such rejection would be $0.

## IX.

## IMPLEMENTATION OF THE PLAN

### A.    Funding the Plan

The Plan is a reorganizing plan and shall be initially funded through the sale by the Liquidating Trustee of the Debtor's assets in a sufficient amount to pay all allowed Administrative Expenses, which sale shall occur on the Effective Date of the Plan. In other words, in order for this Plan to become effective, the Liquidating Trustee will need to collect funds from the sale of estate assets sufficient to pay all allowed Administrative Expenses. Such a sale would be negotiated by the Liquidating Trustee prior to the Effective Date, and would close on the Effective Date. On the Effective Date, the closing of such sale would occur, and all proceeds of such sale over and above allowed Administrative Expenses, and all remaining assets of the Debtor (other

than assets claimed as exempt on the Debtor's schedules) will be transferred to a Liquidating Trust. The Liquidating Trust will be administered by the Liquidating Trustee for the benefit of holders of allowed general unsecured creditors in the case. The expenses of the Liquidating Trust will be paid from the Recoveries earned from the sale or pursue of the estate assets transferred to it on the Effective Date.

**B.    Liquidating Trust**

       1.    Establishment of Liquidating Trust

The establishment and funding of the Liquidating Trust shall occur in two stages. First, on the Confirmation Date, the Liquidating Trust will be established and the Liquidating Trustee shall be appointed. The Liquidating Trustee will then have the ability to market the assets of the estate for sale, which sale the Liquidating Trustee will not be able to accomplish until the Effective Date, when the assets of the Debtor's estate are transferred to the Liquidating Trust. Stage two will occur on the Effective Date, at which time all assets of the Debtor's estate shall be transferred to the Liquidating Trust, including without limitation the following: (a) all tangible and intangible assets of every kind and nature, including Causes of Action, and all proceeds thereof, existing as of the Effective Date and thereafter, (b) all property treated by the Plan, (c) all books and records of the Debtor; and (d) the right to receive all of the Debtor's "net disposable income" for the five (5) year period following the Effective Date of the Plan, if any, as provided in Section 1129(a)(15) of the Bankruptcy Code (the "***Liquidating Trust Assets***"). Notwithstanding the foregoing, the Liquidating Trust Assets shall not include any assets claimed by the Debtor as exempt, which assets shall be retained by the Debtor. Further, the books and records of the Debtor turned over to the Liquidating Trustee shall not including any documents protected by the Debtor's attorney-client privilege or work product privilege, but the Debtor and any producing party must produce a detailed privilege log to the Liquidating Trustee describing each document withheld on the basis of privilege.

On the Effective Date, an agreement establishing the Liquidating Trust pursuant to this Plan in substantially the form attached hereto as ***Exhibit A*** (the "***Liquidating Trust Agreement***") shall be executed.

2.    Liquidating Trustee

On the Confirmation Date, Michael G. Kasolas, CPA, shall be appointed as the Liquidating Trustee. Any replacement or successor trustees shall be appointed pursuant to the provisions of the Liquidating Trust Agreement.  Mr. Kasolas has no affiliation with Union Bank.

**C.    Avoidance Actions and Other Causes of Action**

Notwithstanding any other term or provision of the Plan, the Liquidating Trustee shall have, on and after the Effective Date, sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, settling, collecting or otherwise administering the Causes of Action.  Any claims arising out of the recovery of an avoidable transfer under chapter 5 of the Bankruptcy Code after the claims bar date in the Bankruptcy Case must be filed on or before thirty (30) calendar days after entry of an order of judgment avoiding the transfer. For the avoidance of doubt, the Liquidating Trustee will not have authority over such Causes of Action (including the Estate Enhancement Action) on the Confirmation Date, but will only have such authority if and when the Effective Date occurs.

Pursuant to section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Liquidating Trustee may maintain and enforce any claims or rights held by the Debtor, the estate or the Liquidating Trust, and may continue to pursue any pending Causes of Action brought by the Debtor. In accordance with Bankruptcy Code section 1123(b)(3) or any corresponding provision of similar non-bankruptcy law, on and after the Effective Date, (a) the Liquidating Trustee shall have standing and be deemed to be the representative of the Debtor and the estate in the Bankruptcy Case and any adversary proceeding in the Bankruptcy Case, under the Plan, and in any judicial proceeding or appeal as to which the Debtor is a party, and (b) the Liquidating Trustee shall retain all Causes of Action of the Debtor and the estate, including, without limitation, avoidance actions, objections to claim, and prosecution of the Causes of Action.  The Liquidating Trustee may sue on, settle, or compromise (or decline to do any of the foregoing) any and all Causes of Action.

The investigation into all of the Causes of Action has not been completed.  Accordingly, any and all Causes of Action that may exist against any person or entity may be pursued by the

Liquidating Trustee, regardless of whether, or the manner in which, such Causes of Action are identified in the Plan. The failure to identify a Cause of Action in the Plan shall not constitute a waiver or release of any such Cause of Action. The Liquidating Trustee shall have the sole discretion to determine whether and to what extent to investigate of any Transfer and/or assert any Cause of Action.

Any and all Causes of Action shall survive entry of the Confirmation Order for the benefit of the Debtor's estate and, on and after the Effective Date, for the benefit of the Liquidating Trust and its beneficiaries.

The Causes of Action of which the Bank is currently aware are those set forth in the Estate Enhancement Action, though under this Plan, that Action may be resolved prior to the Effective Date. In addition, the Bank believes that GAW is the alter ego of and legal successor to Chateau Julien, and intends to assert in state court on its own behalf that GAW is liable to it for the debts of Chateau Julien. The Bank lists the claims against GAW here out of an abundance of caution; the Bank does not believe that the Debtor or his bankruptcy estate has claims against GAW such that the Liquidating Trustee would succeed to them.

**D.      Objections to Claims**

On and after the Effective Date, the Liquidating Trustee may file objections to claims at any time, with such objections to proceed pursuant to the applicable local bankruptcy rules. No distribution shall be made under the Plan with respect to all or any portion of a disputed claim until that claim becomes an Allowed claim by agreement of the parties to any claim dispute or by final order of the Bankruptcy Court.

From and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to claims, including without limitation, any objections to claims filed by the Debtor prior to the Effective Date. The Liquidating Trustee expressly reserves the right to resolve any disputed claim outside the Bankruptcy Court under applicable governing law.

# X.

## CONDITIONS TO EFFECTIVENESS OF THE PLAN

The following are conditions precedent to the Effective Date of the Plan:

    (a)    The Bankruptcy Court shall have entered the Confirmation Order;

    (b)    No stay of the Confirmation Order shall then be effective at the time the other conditions set forth in this section are satisfied or waived;

    (c)    All documents, instruments and agreements provided for under or necessary to implement the Plan, including the Liquidating Trust Agreement, shall have been executed and delivered.; and

    (d)    The Liquidating Trustee shall have obtained, through the sale or liquidation of estate assets, sufficient funds to pay all Allowed administrative claims in this Case in full.

The foregoing conditions may be waived, in whole or in part, by Union Bank in writing at any time without notice, or by an order of the Bankruptcy Court.

# XI.

## EFFECT OF CONFIRMATION ORDER; DISCHARGE

As of the Effective Date, the effect of the Confirmation Order shall be as follows:

**A.**    **Binding Effect of the Plan.**

The provisions of the confirmed Plan shall bind the Debtor, the post-Effective Date Debtor (the "***Reorganized Debtor***"), the Estate, any entity acquiring property under or otherwise accepting the benefits of the Plan, every creditor, whether or not such entity has filed a proof of claim in the Bankruptcy Case, whether or not the claim of such entity is impaired under the Plan, and whether or not such creditor or entity has accepted or rejected the Plan.

**B.**    **Discharge.**

Promptly following the filing of a certification by the Liquidating Trustee that all distributions to be made from the Liquidating Trust have been completed, or upon the Debtor establishing his right to a hardship discharge under Section 1141(d)(5) of the Bankruptcy Code after notice and hearing, the Court shall grant the Debtor a discharge of any and all debts of the Debtor that arose any time before confirmation of the Plan, other than the following debts (the "***Non-Dischargeable Debts***"): (i) the debts, such as the debt owed to Union Bank on the Debtor's guaranty of the Chateau Julien loan, that were determined by the Court to be non-dischargeable

under Bankruptcy Code section 523(a); and (ii) the debt owed by the Debtor to his former counsel, CGS, for fees incurred in the non-dischargeability adversary proceeding. Subject to such Non-Dischargeable Debts, the discharge shall be effective as to each claim regardless of whether a proof of claim therefor was filed, whether the claim is an Allowed claim, or whether the holder thereof votes to accept this Plan.

Subject to the foregoing, the discharge provided for under this Plan shall have the effects set forth in the Bankruptcy Code including, but not limited to: (a) voiding any judgment obtained against the Debtor on any discharged debt; and; (b) operating as a permanent injunction against the commencement or continuation of any action to collect, recover, or offset either any discharged debt from the Debtor, or the Estate, or any property of the Debtor, or the Estate, except as otherwise permitted by this Plan, the Bankruptcy Code, or order of the Court.

**C.      Discharge Injunction.**

From and after the date that a discharge is granted pursuant to Section XI.B above, except as otherwise provided for herein or in the Confirmation Order, all persons who have held, currently hold or may hold a debt, claim or interest against the Debtor, the Reorganized Debtor, the Estate, or their respective property, including the property transferred pursuant to this Plan are enjoined from taking any of the following actions on account of any such debt or Claim: (a) commencing or continuing in any manner any action or other proceeding against Debtor, the Reorganized Debtor, the Estate, or their respective property; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, or the Estate; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, the Reorganized Debtor, the Estate, or their respective property including the property transferred pursuant to this Plan; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Estate, the Reorganized Debtor, or the Debtor; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, nothing in this Section XI.C shall enjoin, prevent, or hinder in any

SMRH:484407425.1                                                           COMBINED PLAN AND DISCLOSURE STATEMENT

way any post-Effective Date collection efforts by Union Bank, CGS, or other appropriate party with respect to the Non-Dischargeable Debts.

## XII.

## FEASIBILITY OF THE PLAN

Successful consummation of the Plan is not certain. Nonetheless, Union Bank believes that the Plan meets the feasibility test of Bankruptcy Code Section 1129(a)(11). The specific contingencies to the success of the Plan include the following:

• The ability of the Liquidating Trustee to sell sufficient Estate assets to pay Allowed administrative expense claims. Based on the prior estimates from the Debtor himself of the interest in Coastal, which Union Bank feels were low and do not include the full amount of his interest in Coastal, Union Bank feels the sale of such interests shall easily provide sufficient funds to pay Allowed administrative expense claims. In particular, even accepting the Debtor's most recent assertion his interest in Coastal is only 24%, and that interest is worth $448,500, that amount significantly exceeds any expected administrative expenses.[6] In addition, the Plan will not go effective in the absence of sale that produces sufficient proceeds to pay Allowed administrative expense claims, so the sequencing of events in the Plan removes any post-Effective Date uncertainty.

• A meaningful recovery to creditors in the case is dependent upon Union Bank obtaining some success in the Estate Enhancement Action. This would be true no matter what avenue the case took – dismissal, conversion to chapter 7, appointment of a chapter 11 trustee, or confirmation of a plan. Union Bank feels that permitting Union Bank to pursue the action before the Effective Date maximizes the chances that the Estate Enhancement Action will be vigorously

---

[6] This is so because the return on the estate's interest in Coastal would only be $448,500 if the Estate Enhancement Action were unsuccessful. In that case, Union Bank would not seek an administrative claim for its fees under Section 503(b) of the Bankruptcy Code, so the only administrative claims would be the balance of the allowed fees in Campeau Goodsell's final fee application net of the retainer ($102,757.50), a small US Trustee fee of $1,625, and the fees incurred by JLG, if its employment is approved. Union Bank does not believe there is any reasonable scenario in which these administrative expenses would exceed or even approach $448,500.

SMRH:484407125.1                                                      COMBINED PLAN AND DISCLOSURE STATEMENT

1  pursued, and puts the up front expense of pursuing such an action on Union Bank.  (If successful,

2  Union Bank reserves the right to seek a substantial contribution claim for its expenses associated

3  with the Estate Enhancement Action.)

**XIII.**

**ALTERNATIVES TO THE PLAN**

**A.     Chapter 7 Conversion**

7           In a chapter 7 liquidation proceeding, the Debtor's interest in any assets of the Estate,

8  including litigation rights, would vest in a chapter 7 trustee, who would succeed to all Estate

9  causes of action, and attempt to administer the assets and distribute any proceeds remaining to the

10  other creditors of the estate under the priorities established by Bankruptcy Code Section 507.

11           Union Bank believes that the Plan is more beneficial to creditors and other parties in

12  interest than chapter 7 for two reasons.

13           First, the Plan goes hand-in-hand with the Estate Enhancement Action, which is being

14  brought simultaneously by Union Bank.  If the case were converted to chapter 7, a chapter 7

15  trustee would be appointed and may succeed Union Bank as plaintiff in the Estate Enhancement

16  Action.  All of the fees incurred by the chapter 7 trustee and its counsel in that action would then

17  become administrative expenses of the estate.  While Union Bank might seek its fees in that action

18  as a substantial contribution if the action is successful, it would likely not be able to do so if it was

19  not successful.  Thus, the risk on the expense side of the Estate Enhancement Action is borne by

20  Union Bank if the Plan is pursued, and is borne by the entire Estate if the case is converted to

21  chapter 7.  In addition, Union Bank has been in litigation with the Debtor for nearly three years

22  and has in that obtained a significant amount of knowledge and discovery about the Debtor and

23  the financial affairs of the Debtor and his companies that would be critical in pursuing the Estate

24  Enhancement Action.  A new counsel hired by a chapter 7 trustee would not have any of this

25  knowledge and thus would not be in as good a position to pursue the Estate Enhancement Action.

26           Second, even apart from the Estate Enhancement Action, a chapter 7 would add another

27  layer of administrative expense to the Estate.  If a chapter 7 trustee is appointed, she will be

28  entitled to a statutory commission on the funds distributed to creditors.  A chapter 7 trustee is also

SMRH:484407125.1                                    COMBINED PLAN AND DISCLOSURE STATEMENT

1 very likely in this case to hire another set of attorneys and perhaps also an accountant who would
2 be compensated on an hourly basis from the assets of the Estate.

3      Third, conversion to chapter 7 would open up a new claims bar date and so may water
4 down the existing creditors with a series of new claims.

5 **B.**     **No Other Plans**

6      The exclusive period in which only the Debtor could file a plan passed in July 2015. After
7 that, any party in interest has had the ability to file a plan. Only Union Bank, however, has
8 actually filed a Plan in this case.

9 **XIV.**

10 **VOTING, ACCEPTANCE, AND CONFIRMATION**

11 **A.**     **In General.**

12      The Hon. Elaine Hammond, Judge, United States Bankruptcy Court, has set a date for the
13 hearing on the Confirmation of the Plan. The hearing is to held at the United States Bankruptcy
14 Court, 280 South First Street, Courtroom 3020, San Jose, CA 95113. The Plan can be
15 implemented only if accepted by the requisite percentage of creditors and confirmed by the
16 Bankruptcy Judge. Creditors entitled to vote should vote on the Plan by filling out and mailing the
17 accompanying ballot to counsel. There is no assurance that, if accepted, the Plan will be confirmed
18 by the Bankruptcy Judge.

19 **B.**     **Voting.**

20      Only impaired classes under the Plan will be entitled to vote on the Plan. The definition of
21 an "impaired" class of Creditors is set forth in Section 1124 of the Bankruptcy Code. Class 1 is
22 impaired by the Plan and entitled to vote. No other Classes are impaired under the Plan, and there
23 are in fact no other Classes created under the Plan. Pursuant to Section 1126(f) of the Bankruptcy
24 Code, a class that is not impaired under the Plan, and each holder of a Claim of such class, are
25 conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to
26 such class from the holders of Claims of such class is not required. The Bankruptcy Code defines
27 "acceptance" of a plan by a class of Creditors as acceptance by the holders of two-thirds (2/3) in
28

SMRH:484407425.1        COMBINED PLAN AND DISCLOSURE STATEMENT

dollar amount and more than one-half (½) in number of the claims of that class which actually cast ballots for acceptance or rejection of the Plan.

In addition to the requirement that a creditor be in an "impaired class", in order for a creditor's vote to be counted, either for or against the Plan, the creditor must have either (1) filed a proof of claim on or before the "Claims Bar Date", which was previously set by the Court at July 14, 2015, or (2) have been listed by the Debtor in the Schedule of Liabilities as having a claim which was non-contingent and undisputed.

**IF YOU HAVE ALREADY FILED A CLAIM YOU NEED NOT REFILE FOR THE PURPOSE OF VOTING ON THE PLAN**.

If a creditor wishes to vote for or against the Plan, the creditor should complete an acceptance or rejection of the Plan on the form ballot enclosed herewith which must be returned pursuant to the instructions set forth thereon.

**C.  Confirmation**

If no impaired creditor classes accept the Plan, it cannot be confirmed. If at least one impaired class of creditors accepts the Plan, the Court will hold a Confirmation Hearing. At the Confirmation hearing, the Bankruptcy Judge has the duty to determine whether the Plan meets the requirements of Section 1129 of the Bankruptcy Code. The principal requirements of Section 1129 include the following: (1) that the proponents of the Plan have complied with the applicable provisions of the Bankruptcy Code on all matters connected with the case; (2) that the Plan has been proposed in good faith, and not by any means forbidden by law; (3) that the requisite amount of creditors have accepted the Plan or that the creditors are receiving an amount not less than they would receive if liquidation under chapter 7 took place; (4) that at least one class of Creditors has accepted the Plan; and (5) that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization of the debtor; and (6) that the Debtor and the Plan in all other respects comply with applicable law. Only if such determinations are made will the Judge confirm the Plan.

If there are impaired creditor classes which have rejected the Plan, the Bankruptcy Judge may order Confirmation over its rejection, but only if the Judge first determines that the rights of

SMRH:484407125.1                                              COMBINED PLAN AND DISCLOSURE STATEMENT

non-consenting classes of creditors are protected under Bankruptcy Code Section 1129(b) and other applicable law. Union Bank reserves the right to seek confirmation of this Plan under Bankruptcy Code Section 1129(b).

## XV.

### FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Each Creditor should consult its own tax advisors concerning any income tax consequences of its respective treatment under the Plan.

## XVI.

### MISCELLANEOUS PROVISIONS

**A.      Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case subsequent to the Confirmation Date to the fullest extent permitted by law.

**B.      Effectuating Documents and Further Transactions**

Upon entry of the Confirmation Order, the Liquidating Trustee and the Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**C.      Preservation of Causes of Action.**

For avoidance of any doubt, any and all claims and other Causes of Action accruing to the Debtor or the estate shall be preserved and retained by the Liquidating Trust and the Liquidating Trustee, who shall have the exclusive right and standing to enforce any such Causes of Action.

**D.      Post-Confirmation United States Trustee Fees.**

All outstanding fees payable pursuant to section 1930, Title 28, United States Code, shall be paid by the Debtor on or before the Effective Date.  The Liquidating Trustee shall be responsible for quarterly fees due to the United States Trustee after the Effective Date and through and until the date of entry of either an order dismissing the case or a final decree.  So long as the Debtor and Liquidating Trustee, as applicable, are required to make these payments, the Debtor

SMRH:484407425.1                                    COMBINED PLAN AND DISCLOSURE STATEMENT

and the Liquidating Trustee, as applicable, shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

**E.      Effect of Conversion to Chapter 7.**

If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate.

**F.      Notices.**

Except as otherwise provided in the Plan, any notice or other communication required or permitted under the Plan will be in writing and deemed to have been validly served, given, delivered, and received upon the earlier of: (a) the first business day after transmission by facsimile or hand delivery or deposit with an overnight express service or overnight mail delivery service or by electronic means with consent of the recipient; or (b) the third calendar day after deposited in the United States mail, with proper first class postage prepaid. Contact information relevant to providing notice to the Liquidating Trustee will be disclosed in the Liquidating Trust Agreement.

**G.      Post-Effective Date Notices.**

Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Liquidating Trustee, and those persons who file with the Bankruptcy Court and serve upon the Liquidating Trustee a request, which includes the person's name, contact individual, address, telephone number and facsimile number, that such person receive notice of post-Effective Date matters (the list of such parties is referred to herein as the "*Post-Effective Date List*"). Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Cases will not receive notice of post-Effective Date matters unless such persons file a new request in accordance with this Section.

**H.      Plan Controls**

To the extent the terms of the Plan are inconsistent with the Liquidating Trust Agreement, the terms of the Plan shall be controlling.

SMRH:484407425.1

COMBINED PLAN AND DISCLOSURE STATEMENT

1 **I.**      **Applicable Law**

2      The Plan is to be governed by and construed under the Bankruptcy Code and the laws of

3 the State of California as they may be applicable.

4 **XVII.**

5 **RECOMMENDATION AND CONCLUSION**

6      Union Bank believes that confirmation of the Plan is in the best interests of the estate and

7 its creditors and in particular, believes that recoveries to holders of Allowed claims will be

8 maximized under the circumstances by confirmation of the Plan. Union Bank urges all creditors

9 entitled to vote on the Plan to vote in favor of the Plan.

10 Dated: November 2, 2017

11              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12

13          By            */s/ Michael M. Lauter*

14                      STEVEN B. SACKS
                      MICHAEL M. LAUTER

15                       ISAIAH Z. WEEDN
            Attorneys for MUFG UNION BANK, N.A.

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:484407125.1                            COMBINED PLAN AND DISCLOSURE STATEMENT

# EXHIBIT A

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "*Agreement*"), dated as of November __, 2017, is by and among MUFG Union Bank, N.A. ("*Union Bank*"), in its capacity as plan proponent, and Michael G. Kasolas, solely in his capacity as the Liquidating Trustee (the "*Liquidating Trustee*").

Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to them in the Plan (defined below).

### W I T N E S S E T H

A.     WHEREAS, on March 11, 2015, Robert Brower, Sr. ("*Debtor*") commenced a bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California San Jose Division (the "*Bankruptcy Court*") commencing Bankruptcy Case No. 15-50801 (the "*Bankruptcy Case*").

B.     WHEREAS, on November 2, 2017, Union Bank filed its Third Amended Combined Plan of Liquidation and Disclosure Statement Dated November 2, 2017 (as amended, modified, and supplemented to date, the "*Plan*") for the orderly liquidation of the Estate's assets for the benefit of the Estate's creditors, and for the reorganization of the Debtor.

C.     WHEREAS, by order dated November __, 2017, the Bankruptcy Court confirmed the Plan (the "*Confirmation Order*").

D.     WHEREAS, under the Plan, the assets of the Debtor's estate (the "*Estate*") are to be transferred to a liquidating trust (the "*Liquidating Trust*") for the benefit of the unsecured creditors as provided in the Plan.

E.     WHEREAS, pursuant to the Plan, the Liquidating Trust is intended to be treated as a grantor trust for federal income tax purposes within the meaning of Sections 671-677 of the Internal Revenue Code (as amended from time to time, the "*IRC*").

F.     WHEREAS, the Liquidating Trustee has agreed to serve as such upon the terms and subject to the conditions set forth in this Agreement to administer the Liquidating Trust for the benefit of the Beneficiaries, and to provide administrative services relating to the implementation of the Plan.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, and the Liquidating Trustee hereby agrees as follows:

### DECLARATION OF TRUST

Pursuant to the terms of the Plan and the Confirmation Order, all right, title and interest of the Debtor in and to the Liquidating Trust Assets shall be absolutely assigned to the Liquidating Trust, and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Liquidating Trust and its successors in trust and its successors and assigns forever;

SMRH:482961277.4

Case: 15-50801     Doc# 233     Filed: 11/02/17     Entered: 11/02/17 17:15:17     Page 33 of
52

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth herein and for the benefit of the Beneficiaries, as and to the extent provided in the Plan, and for the performance of and compliance with the terms hereof and of the Plan;

PROVIDED, HOWEVER, that upon termination of the Liquidating Trust, this Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Liquidating Trust Assets are to be held and applied by the Liquidating Trustee upon the further covenants and terms and subject to the conditions herein set forth.

# ARTICLE 1

## ESTABLISHMENT OF THE LIQUIDATING TRUST

1.1     Name of Trust.  The trust created by this Agreement shall be known as the "***Robert Brower, Sr. Liquidating Trust***" or herein, and as referred to in the Plan, as the "***Liquidating Trust***."

1.2     Establishment of Liquidating Trust.  Pursuant to the Plan, the Liquidating Trust is hereby established on behalf of, and for the sole benefit of, the holders, from time to time, of Allowed Class 1 general unsecured claims as and to the extent provided in the Plan (such holders collectively, the "***Beneficiaries***") and, on the terms and subject to the conditions set forth herein and in the Plan provided, however, that the Liquidating Trust is obligated under the Plan to address the claims of holders of Allowed Administrative Claims, and Allowed priority tax Claims to the extent set forth in the Plan.  The parties to this Agreement and the Beneficiaries intend for the Liquidating Trust to be treated as a grantor trust under IRC Section 671.  The Liquidating Trust is structured to comply with the requirements of Rev. Proc. 94-45, 1994-2 C.B. 684, and this Agreement shall be construed to comply with such requirements.

1.3     Purpose of the Liquidating Trust.  The Liquidating Trust shall be established for the purpose of receiving the Liquidating Trust Assets on the Effective Date, and, as appropriate, administering, investigating, holding, prosecuting, settling, selling, disposing, and liquidating the same and distributing cash to Beneficiaries, in accordance with the Plan and pursuant to Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth herein or in the Plan and the Confirmation Order.  As set forth in the Plan, the Liquidating Trust shall be established, and the Liquidating Trustee appointed, on the Confirmation Date.  The Liquidating Trustee shall then market assets of the Debtor for sale until the Liquidating Trustee secures an agreement to purchase or otherwise dispose of estate assets in an amount sufficient to yield proceeds that would pay all Allowed Administrative Expenses in full on the Effective Date.  Then, on the Effective Date, the transfer of the Liquidating Trust Assets to the Liquidating Trust would occur as described in the following section, the sale or other disposition arranged by the Liquidating Trustee would occur, and the Liquidating Trustee would use the proceeds of such sale to pay Allowed Administrative Expenses.

SMRH:482961277.4

1.4    Transfer of Trust Assets.  As of the Effective Date of the Plan, and in accordance with the Confirmation Order, the Estate hereby transfers, assigns, and delivers to the Liquidating Trust, any and all of its right, title, and interest in all Liquidating Trust Assets.  The Liquidating Trustee agrees to accept and hold the Liquidating Trust Assets in trust for the benefit of the Beneficiaries, subject to the terms of this Agreement and the Plan, and to liquidate and distribute such Liquidating Trust Assets to the Beneficiaries as agreed upon in the Plan.  As of the Effective Date, the Debtor shall not have any interest in or with respect to the Liquidating Trust Assets.

1.5    Title to Liquidating Trust Assets.

(a)    Upon the Effective Date and the full execution of the Agreement, all of the Liquidating Trust Assets shall be transferred, assigned and delivered to the Liquidating Trust for the benefit of the Beneficiaries, as provided for in this Agreement and the Plan.  In this regard, the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtor's estate to the Beneficiaries, and then by such Beneficiaries to the Liquidating Trust in exchange for their beneficial interests therein in accordance with the Plan.  Upon the transfer of the Liquidating Trust Assets, the Liquidating Trustee shall succeed to all of the Estate's right, title and interest in such assets, and the Estate shall have no further interest in or with respect to the Liquidating Trust Assets or this Liquidating Trust.  Each of the Liquidating Trust and the Liquidating Trustee shall be considered for all purposes in respect of the disposition of the Liquidating Trust Assets as separate and distinct from, and independent of, the Debtor and the Estate.

(b)    The Liquidating Trust shall be treated as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d).  For all federal and state income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall be treated as a transfer to the Beneficiaries of the Liquidating Trust for all purposes of the IRC (e.g., sections 61(a)(12), 483, 1001, 1012 and 1274) followed by a deemed transfer by such Beneficiaries to the Liquidating Trust.  The Liquidating Trust shall be considered a "grantor" trust, and the Beneficiaries shall be treated as the grantors and deemed owners of the Liquidating Trust.  To the extent valuation of the Liquidating Trust Assets to the Liquidating Trust is required under applicable law, the Liquidating Trustee shall value the transferred property and notify in writing the Beneficiaries of such valuations.  The assets transferred to the Liquidating Trust shall be valued consistently by the Liquidating Trustee and the Beneficiaries, and these valuations will be used for all federal income tax purposes.

1.6    Administration of the Liquidating Trust and Appointment of the Liquidating Trustee.  The Liquidating Trust shall be administered by the Liquidating Trustee in accordance with the provisions of this Agreement and the Plan.

1.7    Funding of the Liquidating Trust.

(a)    On the Effective Date, as provided herein and under the Plan, the Liquidating Trust shall automatically be vested with all of the Estate's right, title, and interest in the Liquidating Trust Assets, free and clear of liens, claims, encumbrances and other interests.

(b)    The cash distributions to be made pursuant to the Plan and the funding of the applicable reserves will be derived from (i) cash held by the Estate as of the Effective Date, and (ii)

any cash to be received by the Liquidating Trust from the further liquidating of assets and the prosecution and enforcement of Causes of Action, and other funds available after the Effective Date.

(c)     The Liquidating Trustee shall not be obligated to physically segregate and maintain separate accounts for reserves or for funding distributions. Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidating Trustee to determine the amount of cash available, reserves and amounts to be paid to parties in interest.

(d)     The Liquidating Trustee may from time to time utilize Liquidating Trust Assets reduced to cash in amounts and at times that the Liquidating Trustee, in its discretion, deems necessary or appropriate to fund any and all costs and expenses that the Liquidating Trustee and the Liquidating Trust incur subsequent to the Effective Date in accordance with this Agreement and the Plan.

(e)     The Liquidating Trustee shall reserve the cash necessary to administer the Plan and wind up the Debtor's affairs, including but not limited to, funds for the payment of Administrative Claims, the costs of holding and liquidating Estate property, objecting to claims, making the distributions required by the Plan, prosecuting Causes of Action in accordance with the Plan, paying taxes, filing tax returns, paying fees of professionals retained by the Liquidating Trustee, providing for the purchase of insurance in the Liquidating Trustee's discretion, and/or other forms of indemnification for the Liquidating Trustee, and other necessary and usual business expenses.

1.8     Creation of Reserves.  On and following the Effective Date, the Liquidating Trustee shall have the power to establish and maintain appropriate reserves to the extent of cash available and as the Liquidating Trustee reasonably deems necessary to administer the Liquidating Trust and to satisfy disputed claims in the event that a disputed claim becomes an Allowed claim.

1.9     Causes of Action.  All Claims, rights, defenses, offsets, recoupments, causes of action, actions in equity or otherwise, whether arising under the Bankruptcy Code or federal, state or common law, which constitute property of the Estate within the meaning of section 541 of the Bankruptcy Code (including, without limitation, the Causes of Action), as well as all claims, rights, defenses, offsets, recoupments and causes of action arising under chapter 5 of the Bankruptcy Code with respect to the Debtor or the Estate, are part of the assets transferred and assigned to the Liquidating Trust as of the Effective Date in accordance with section 1123(b) of the Bankruptcy Code. Prosecution and settlement of such claims, rights, defenses, and causes of action shall be the responsibility of the Liquidating Trustee, and the Liquidating Trustee shall pursue those claims, rights, defenses and causes of action, as appropriate, in accordance with the Plan and the Liquidating Trustee's judgment of what is in the best interests, and for the benefit of, the Beneficiaries of the Liquidating Trust. The Liquidating Trustee shall have the sole discretion to determine whether and to what extent to investigate of any Transfer and/or assert any Cause of Action.

SMRH:482961277.4
Liquidating Trust Agreement
for the Robert Brower, Sr. Liquidating Trust

Case: 15-50801     Doc# 233     Filed: 11/02/17     Entered: 11/02/17 17:15:17     Page 36 of 52

## ARTICLE 2

## LIQUIDATING TRUST INTERESTS

2.1    Identification of holders of Liquidating Trust Interests.  The names of the record holders of beneficial interests in the Liquidating Trust ("***Liquidating Trust Interests***"), and the amount of Liquidating Trust Interests held by such record holders, shall be recorded and set forth in a register maintained by the Liquidating Trustee (or its designee) expressly for such purpose. The Liquidating Trustee hereby establishes the Confirmation Date as the record date for purposes of establishing the official registry of holders of the Liquidating Trust Interests.  The distribution of Liquidating Trust Interests to the Beneficiaries shall be accomplished as set forth in the Plan and in this Agreement.  No certificates, securities or receipts or documentation in any other form or manner whatsoever evidencing the Liquidating Trust Interests will be issued to any record or beneficial holder of such interests.

2.2    Transferability of Liquidating Trust Interests.    The Beneficiaries shall have beneficial interest in the Liquidating Trust assets as provided in the Plan.  Any Beneficiary's Liquidating Trust Interest shall be transferable, subject, as applicable, to Bankruptcy Rule 3001(e) and any other provision of law, but shall not be binding on the Liquidating Trustee unless and until the transfer has been accepted by the Liquidating Trustee.  The Liquidating Trustee shall be entitled to recognize and deal for all purposes only with those holders of Liquidating Trust Interests identified on the claims register and the schedules of assets and liabilities of the Debtor.

2.3    Interests Beneficial Only.  The ownership of a beneficial interest hereunder shall not entitle any Beneficiary to any title in or to the Liquidating Trust assets as such (which title shall be vested in the Liquidating Trustee) or to any right to call for a partition or division of the Liquidating Trust assets or to require an accounting.

## ARTICLE 3

## THE LIQUIDATING TRUSTEE

3.1    Appointment of Liquidating Trustee.  The Liquidating Trustee shall be Michael G. Kasolas, CPA.  The Liquidating Trustee is willing and hereby accepts the appointment to serve as Liquidating Trustee pursuant to this Agreement and the Plan.  Mr. Kasolas' experience is set forth in detail in the attached curriculum vitae.  Mr. Kasolas' hourly rate is $450 per hour, with his staff billing at $85 per hour.

3.2    Compensation and Expenses of the Liquidating Trustee.

(a)    As compensation for services in the administration of this Liquidating Trust, the Liquidating Trustee shall be entitled to compensation at standard hourly billing rates for both the Liquidating Trustee and the Liquidating Trustee's staff (set forth above), provided however, that in no event will the Liquidating Trustee's fees exceed the following caps:

(i)    20% of the first $100,000 distributed by the Liquidating Trustee; and

(ii)    10% of distributions made by the Liquidating Trustee over $100,000.

SMRH:482961277.4

(b)     In addition, the Liquidating Trustee shall be indemnified by and receive reimbursement from the Liquidating Trust Assets in accordance with Section 3.9 of this Agreement.

(c)     The Liquidating Trustee is hereby authorized to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Liquidating Trustee and its agents, representatives, employees or independent contractors under the Plan and this Agreement.

(d)     For clarity, the compensation, expense reimbursement and indemnity obligations provided for in this Section 3.2 shall be limited to the Liquidating Trust Assets and no recovery on account thereof shall be available against the Beneficiaries.

3.3     Powers.  The Liquidating Trustee's powers are exercisable solely in a fiduciary capacity for all holders of Liquidating Trust Interests and consistent with, and in furtherance of, the purposes of this Liquidating Trust.   Unless otherwise specified herein, the approval of the Liquidating Trustee shall constitute the act of the Liquidating Trust.   Subject to the terms and conditions of this Agreement, the Liquidating Trustee may delegate responsibility for discrete duties, issues or decisions to such other persons in its sole discretion.

3.4     Power and Authority of Liquidating Trustee.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee shall administer the Liquidating Trust, and the Liquidating Trust Assets, and make distributions from the proceeds of the Liquidating Trust in accordance with the Plan and this Agreement. In addition, the Liquidating Trustee shall have the authority to take all actions necessary and appropriate to wind down the affairs of the Debtor consistent with the Plan and any applicable non-bankruptcy law. Without limitation, to the extent applicable, the Liquidating Trustee shall file final federal, state, foreign and local tax returns for the Debtor.   Subject to the terms of this Agreement and the Plan, the Liquidating Trustee shall be authorized, empowered and directed to take all actions necessary or desirable to comply with the Plan and fulfill the duties and obligations arising thereunder including, without limitation, to:

(a)     Object to the allowance of claims;

(b)     Open, maintain and administer bank accounts;

(c)     Engage employees and professional persons as necessary or desirable to assist in carrying out the provisions of and purposes underlying the Plan and this Agreement;

(d)     Incur and pay reasonable fees, costs, and expenses in connection with administering the Liquidating Trust and implementing the terms of the Plan and this Agreement, including the reasonable fees, costs and expenses of retained professionals, in accordance with the provisions of the Plan and this Agreement;

(e)     Expend the Liquidating Trust Assets as necessary to maintain the value of the assets of the Liquidating Trust during liquidation;

SMRH:482961277.4

(f)     Investigate, analyze, commence, prosecute, litigate, compromise and otherwise administer the Causes of Action, and take all other necessary and appropriate steps to collect, recover, settle, liquidate or otherwise reduce the Liquidating Trust Assets to cash;

(g)     Approve compromises of the Causes of Action and all claims, and execute all necessary and appropriate documents to effectuate such settlements;

(h)     Administer, sell, liquidate, or otherwise dispose of the Liquidating Trust Assets in accordance with the terms of the Plan and this Agreement;

(i)     Represent the Liquidating Trust before the Bankruptcy Court and other courts of competent jurisdiction, if necessary, with respect to matters regarding the administration of the Liquidating Trust;

(j)     Comply with any applicable orders of the Bankruptcy Court and any other court of competent jurisdiction, and all applicable laws and regulations, concerning the matters set forth herein;

(k)     Hold legal title to any and all rights of the Debtor, the Estate and the Beneficiaries under this Agreement in or arising from the Liquidating Trust Assets;

(l)     In reliance upon the Schedules and the claims register maintained in the Bankruptcy Case, maintain on the Liquidating Trustee's books and records a register evidencing the beneficial interest held by each Beneficiary as provided by Article 2 of this Agreement;

(m)     Make all distributions to the holders of Allowed claims provided for, or contemplated by, the Plan;

(n)     Establish and maintain any applicable reserves;

(o)     Make all tax withholdings, file tax information returns, make tax elections by and on behalf of the Liquidating Trust and file tax returns for the Liquidating Trust as a grantor trust in accordance with 26 C.F.R. § 1.671-4(a);

(p)     Pay any taxes imposed on the Liquidating Trust;

(q)     As soon as reasonably practicable after the Effective Date, make a good faith valuation of the Liquidating Trust Assets which shall be made available from time to time, to the extent relevant, and used consistently by all parties for all income tax purposes;

(r)     Carry insurance coverage if the Liquidating Trustee deems such insurance necessary and appropriate in his sole and absolute discretion;

(s)     Exercise such other powers as may be vested in the Liquidating Trustee pursuant to the Plan, this Agreement, the Confirmation Order, or other final orders of the Bankruptcy Court;

SMRH:482961277.4

Liquidating Trust Agreement
for the Robert Brower, Sr. Liquidating Trust
Case: 15-50801   Doc# 233   Filed: 11/02/17   Entered: 11/02/17 17:15:17   Page 39 of 52

(t)     Execute any documents, instruments, contracts or agreements necessary or desirable to carry out the powers and duties of the Liquidating Trustee; and

(u)     Stand in the shoes of the Debtor, the debtor in possession, and the Estate for all purposes consistent with the Plan and this Agreement.

3.5     <u>Limitations on the Liquidating Trust and on the Liquidating Trustee's Authority</u>.

(a)     Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not be authorized to engage in any trade or business, except to the extent reasonably necessary for the orderly administration of the Liquidating Trust's assets and distributions to holders of Liquidating Trust Interests.  Notwithstanding any other authority granted in <u>Sections 3.3</u> and <u>3.4</u> herein, the Liquidating Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) or inconsistent with the requirements set forth in Rev. Proc. 94-45.

(b)     The Liquidating Trust shall not hold 50% or more of the stock (in either voting power or value) of any entity that is treated as a corporation for federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in an entity that is treated as a partnership for federal income tax purposes, unless such stock, membership interest, or partnership interest consists of the Liquidating Trust Assets, was obtained pursuant to rights under the Liquidating Trust Assets or was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the Liquidating Trust Assets.

(c)     The Liquidating Trust shall not receive from the Debtor or the Estate any listed stocks or securities or other readily marketable assets.

(d)     The Liquidating Trust shall not receive or retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the Liquidating Trust Assets during liquidating.

(e)     The Liquidating Trustee may (but shall not be required to, except as otherwise provided in the Plan) obtain an order of the Bankruptcy Court concerning any matter involving any sale, settlement, or other disposition of an asset or litigation of the Liquidating Trust, or any release, modification or waiver of existing rights as to an asset or litigation of the Liquidating Trust.

3.6     <u>Books and Records</u>.  The Liquidating Trustee shall maintain books and records relating to the Liquidating Trust Assets and income of the Liquidating Trust, if any, and the payment of expenses of, and liabilities of Claims against or assumed by, the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained in accordance with such accounting principles as may be applicable to an entity such as the Liquidating Trust so as to facilitate compliance with the tax reporting requirements of the Liquidating Trust.  Except as otherwise may be expressly provided in this Agreement, nothing in this Agreement requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the

SMRH:482961277.4
Liquidating Trust Agreement
for the Robert Brower, Sr. Liquidating Trust

Case: 15-50801     Doc# 233     Filed: 11/02/17     Entered: 11/02/17 17:15:17     Page 40 of
52

administration of the Liquidating Trust, or as a condition for managing any payment or distribution of funds to the holders of Liquidating Trust Interests.

3.7    Distributions.

(a)    Distributions. As soon as reasonable and practicable after the Effective Date, the Liquidating Trustee shall make distributions to holders of Allowed claims in accordance with this Agreement and pursuant to the terms of the Plan.  The Liquidating Trustee shall make distributions at least annually; provided, however, that the Liquidating Trustee may retain such amounts reasonably necessary to maintain the value of the Liquidating Trust Assets or meet claims and contingent liabilities including to fund any required reserves; and provided, further, however, that the Liquidating Trustee shall not be obligated to make a distribution if it is reasonably expected that the cost of such distribution would exceed the amount of cash on hand.  The Liquidating Trustee shall make continuing efforts to administer the Liquidating Trust Assets, make timely distributions, and shall not unduly prolong the duration of the Liquidating Trust.

Following the payment of the Allowed Administrative Claims as set forth in Plan, distributions shall be made in the following order:

First, to the holders of Allowed priority tax claims, if any;

Second, to the accrued fees and costs of administering the Liquidating Trust made in a *pro rata* distribution, which fees and costs include the fees and costs of the Liquidating Trust as set forth in Sections 3.2, 3.11 and 3.12; and

Third, to fund the Unsecured Creditor Distributions to the unsecured creditors holding Allowed claims; and

Fourth, to the extent Excess Funds remain after payment of all Allowed claims as set forth in the Plan, to the Debtor.

(b)    Pro Rata Share of Distributions to Beneficiaries.  Each Beneficiary shall receive its pro rata share of any and all Unsecured Creditor Distributions in accordance with the Plan, except that the Liquidating Trustee may withhold from amounts distributable to any Beneficiary, any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

(c)    Unclaimed Distributions.  Any distributions of cash under the Liquidating Trust to holders of Liquidating Trust Interests that are unclaimed or undeliverable for a period of ninety (90) calendar days after the relevant distribution date, including any distribution by check that remains uncashed for ninety (90) calendar days after its issuance, shall constitute an unclaimed distribution. Any such uncashed check shall be void, and the holder shall no longer be entitled to that distribution or any later distributions.  All right, title and interest in and to unclaimed distributions shall immediately vest in the Liquidating Trust, and such property shall be retained by the Liquidating Trust for distribution pursuant to the terms of the Plan and this Agreement, subject, however, to the Liquidating Trustee's discretion to distribute such unclaimed distributions to holders entitled thereto if such holders are subsequently located.

SMRH:482961277.4
Case: 15-50801    Doc# 233    Filed: 11/02/17    Entered: 11/02/17 17:15:17    Page 41 of 52

(d) <u>Disputed Claims</u>. No distribution shall be made with respect to all or any portion of a disputed claim until that claim becomes an Allowed claim by agreement of the parties to any claim dispute or by final order of the Bankruptcy Court. After the Allowed claim is established by agreement or final order, the Liquidating Trustee shall pay to the holder of such Allowed claim in the manner and amount provided in the Plan, including any catch-up on prior distributions. Pending resolution, the holder of a disputed claim will not receive interest on its claim.

(e) <u>Identity of Holder</u>. If any dispute arises as to the identity of a holder of a Liquidating Trust Interest who is to receive any distribution, the Liquidating Trustee may, in lieu of making such distribution to such Holder, make such distribution into a segregated fund until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

(f) <u>Withholding</u>. Any foreign, federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from any distributions hereunder. All distributions pursuant the Plan and this Agreement shall be net of the actual and reasonable costs of making such distributions and of any allocable fees or other charges relating thereto. All such amounts withheld, and paid to the appropriate taxing authority, shall be treated as amounts distributed to Beneficiaries for all purposes of this Agreement.

3.8 <u>Compliance with Laws</u>. Any and all distributions, and proceeds of borrowings, if any, shall be in compliance with applicable laws. The rights of the Beneficiaries under this Agreement are not, and are not intended to be, securities subject to any federal, state or local securities law.

3.9 <u>Liability of Liquidating Trustee; Indemnification</u>. The Liquidating Trustee and his agents shall not be liable for actions taken or omitted in his or their capacity as, or on behalf of, the Liquidating Trustee, and shall be defended, held harmless or indemnified to the full extent under existing applicable law as determined by the Court, provided that no such indemnification shall apply to any breach of fiduciary duty. Subject to the foregoing, each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of his or their actions or inactions in his or their capacity as, or on behalf of, the Liquidating Trust to the full extent allowed under existing applicable law as determined by the Court. Any indemnification claim under this section shall be satisfied from the Liquidating Trust Assets and any insurance coverages procured by the Liquidating Trustee on behalf of the Liquidating Trust. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of his retained professionals. No implied covenants or obligations shall be read into this Agreement or the Plan against the Liquidating Trustee.

3.10 <u>Investment and Safekeeping of Trust Assets</u>. All cash held by the Liquidating Trustee shall be invested as deemed appropriate by the Liquidating Trustee, and need not be invested in accordance with section 345 of the Bankruptcy Code, provided however that the right and power of the Liquidating Trustee to invest Liquidating Trust Assets, the proceeds thereof, and any income earned by the Liquidating Trust, subject to the terms of <u>Section 3.5</u> hereof, shall be limited to the right and power that a liquidating trust, within the meaning of Treasury Regulations Section 301.7701-4(d), is permitted to hold, pursuant to the Treasury Regulations, Rev. Proc. 94-

SMRH:482961277.4

Liquidating Trust Agreement
for the Robert Brower, Sr. Liquidating Trust

45, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. For the avoidance of doubt, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, is limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investment, such as Treasury bills.

3.11    Expense Reimbursement and Compensation.   The costs and expenses of the Liquidating Trust, including the fees and expenses (including, without limitation, reasonable out-of-pocket expenses) and any loss, liability, expense or damage that the Liquidating Trustee or any successor Liquidating Trustee may sustain in good faith and without willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts in the exercise and performance of any of the powers and duties of the Liquidating Trustee under this Agreement, any taxes imposed on or incurred by the Liquidating Trust or the Liquidating Trust Assets, the fees and expenses of any professionals retained by the Liquidating Trustee under this Agreement and the Plan and the compensation to be paid to the Liquidating Trustee, shall be paid out of the Liquidating Trust Assets. Fees and expenses incurred from and after the Effective Date of the Plan in connection with the investigation, prosecution, compromise, settlement, liquidating, distribution or other disposition of the Liquidating Trust Assets shall, without limitation, be considered costs and expenses of the Liquidating Trust. Allowed Administrative Claims of the Bankruptcy Case which are not paid by the Estate prior to the Effective Date shall be considered costs and expenses of the Liquidating Trust and shall be paid from funds transferred to the Liquidating Trust upon the Effective Date. The Liquidating Trustee shall be entitled to receive compensation as described in Section 3.2 of this Agreement. Liquidating Trustee's retained professionals shall be entitled to receive reasonable compensation consistent with the terms of the Plan. No other trustee, except any successor Liquidating Trustee, shall be entitled to receive compensation (other than reasonable out-of-pocket expenses that may be reimbursed in accordance with this Section 3.11) for services as trustee, paid out of the Liquidating Trust.

3.12    Retention and Payment of Professionals.   The Liquidating Trustee shall be authorized to retain litigation counsel of its choosing in the prosecution of the Causes of Action with compensation on terms agreed to by and between the Liquidating Trustee and such counsel. To the extent the Liquidating Trustee desires to retain any further professionals other than such litigation counsel, the Liquidating Trustee may retain such other professionals subject to the approval of the Bankruptcy Court.

In order for any professional retained by the Liquidating Trustee to receive compensation, such professional shall file with Bankruptcy Court a notice listing the amounts of fees and expenses sought and the period covered (the "***Fee Notice***") and serve the Fee Notice on the Office of the United States Trustee, Union Bank, and the other parties on the Post-Effective Date List. If there is no objection to the requested fees and expenses within ten (10) calendar days of the Fee Notice, the requested amount shall be paid in full when funds are available. If any party objects to any portion of the fees or expenses submitted by any such professional, the objecting party shall prepare a written objection specifying the reason the objection is made and the amount to which the objection relates, and serve such written objection on the subject professional, the Liquidating Trustee and its counsel so that it is received within ten (10) calendar days of the service of the Fee Notice. The Liquidating Trustee shall pay the undisputed portion of such fees and

SMRH:482961277.4

Case: 15-50801    Doc# 233    Filed: 11/02/17    Entered: 11/02/17 17:15:17    Page 43 of
52

expenses from available funds and shall reserve the amount of the disputed fees and expenses pending resolution of said objection by (i) agreement between the party requesting such fees and expenses and the objecting party, or (ii) resolution of the disputed amount by the Bankruptcy Court. Professionals retained by the Liquidating Trustee shall not otherwise be required to file formal applications for Court approval of post-confirmation fees and expenses.

3.13    No Bond.  The Liquidating Trustee may serve without bond.

3.14    Confidentiality.  The Liquidating Trustee shall, during the period that he serves in such capacity under this Agreement and following either the termination of this Agreement or the Liquidating Trustee's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relates or of which he has become aware in his capacity as Liquidating Trustee.

# ARTICLE 4

# SUCCESSOR LIQUIDATING TRUSTEE

4.1    Removal of Liquidating Trustee.  Any person serving as Liquidating Trustee may be removed and replaced by an order of the Bankruptcy Court on a showing of good cause.  The removal shall become effective on the date specified in the order.

4.2    Resignation of Liquidating Trustee.  The Liquidating Trustee may resign by giving not less than thirty (30) calendar days' prior written notice to Union Bank and any other parties on the Post-Effective Date List, provided that no such resignation shall be effective until the expiration of the thirty (30) calendar day notice period of the resignation.  If a successor Liquidating Trustee is not appointed or does not accept his or her appointment within thirty (30) calendar days following delivery of a notice of resignation of the Liquidating Trustee, any party in interest may petition the Bankruptcy Court or any court of competent jurisdiction for the appointment of a successor Liquidating Trustee.

4.3    Appointment of Successor Liquidating Trustee upon Removal, Resignation, Death or Incapacity.  If the Liquidating Trustee is removed pursuant to Section 4.1 hereof, resigns pursuant to Section 4.2 hereof or otherwise is incapable of serving as Liquidating Trustee, a successor Liquidating Trustee shall be appointed by Union Bank.  No successor Liquidating Trustee shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.  Any successor Liquidating Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Liquidating Trustee hereunder, and any statement or representation made as to the assets comprising the Liquidating Trust Assets or as to any other fact bearing upon the prior administration of the Liquidating Trust, so long as it has a good faith basis to do so.

4.4    Acceptance of Appointment by Successor Liquidating Trustee.  Every successor Liquidating Trustee shall execute, acknowledge and file with the Bankruptcy Court or other court of competent jurisdiction an instrument in writing accepting such appointment hereunder, and thereupon such successor Liquidating Trustee, without any further act, shall become fully vested

SMRH:482961277.4

Liquidating Trust Agreement
for the Robert Brower, Sr. Liquidating Trust

Case: 15-50801    Doc# 233    Filed: 11/02/17    Entered: 11/02/17 17:15:17    Page 44 of 52

with all of the rights, powers, duties and obligations of his or her predecessor with like effect as if originally named herein; provided, however, that a removed, incapacitated, or resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee under the Liquidating Trust all the rights, powers, duties and obligations of the Liquidating Trustee.

## ARTICLE 5

[Reserved]

## ARTICLE 6

## REPORTS TO HOLDERS OF LIQUIDATING TRUST INTERESTS

6.1    <u>Securities Laws</u>.    Under section 1145 of the Bankruptcy Code, the issuance of Liquidating Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933 and applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file periodic reports with the Securities and Exchange Commission.

## ARTICLE 7

## TERMINATION OF LIQUIDATING TRUST

7.1    <u>Termination of Liquidating Trust</u>.  The Liquidating Trustee shall be discharged of its duties, and the Liquidating Trust shall be dissolved and terminated on the date on which both if (a) the Bankruptcy Court has entered a final order closing the Bankruptcy Case pursuant to section 350 of the Bankruptcy Code and (b) the Liquidating Trustee has administered all of the Liquidating Trust Assets and performed all other duties required by the Plan and this Agreement.

7.2    <u>Initial Term</u>. If, after five (5) years from the Effective Date of the Plan, the dissolution and termination of the Liquidating Trust has not occurred pursuant to <u>Section 7.1</u>, and the Liquidating Trustee determines that the facts and circumstances necessitate an extension of the duration of the Liquidating Trust in order to effectuate its purpose, the Liquidating Trust may be extended for a finite term.  The Liquidating Trustee may, upon the expiration of the extended term, seek additional extensions of six (6) months each if warranted by the facts and circumstances.  Any extension of the duration of the Liquidating Trust, as provided for herein, shall be subject to consent of Union Bank or the approval by the Bankruptcy Court or other court of competent jurisdiction.

7.3    <u>Limitation on Duration</u>.  The Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust and shall endeavor in good faith to resolve, settle or otherwise

SMRH:482961277.4

Case: 15-50801    Doc# 233    Filed: 11/02/17    Entered: 11/02/17 17:15:17    Page 45 of
52

dispose of the Liquidating Trust Assets and to effect the distribution of the Liquidating Trust Assets to the holders of Liquidating Trust Interests in accordance with the terms hereof and terminate the Liquidating Trust as soon as reasonably practicable. Prior to and upon dissolution and termination of the Liquidating Trust, the Liquidating Trust Assets shall be distributed to the holders of Liquidating Trust Interests.

# ARTICLE 8

## AMENDMENT AND WAIVER

8.1     <u>Amendment and Waiver</u>.  Any substantive provision of this Agreement may be amended or waived by the Liquidating Trustee with the approval of (i) the Bankruptcy Court or (ii) Union Bank, provided that with respect to this clause (ii), such modification or waiver is effective following ten (10) days after the date of filing such amendment or waiver with the Bankruptcy Court without an objection thereto having been filed by any interested party during such ten (10) day period.  Technical amendments to this Agreement may be made, as necessary to clarify this Agreement or enable the Liquidating Trustee to effectuate the terms of this Agreement, by the Liquidating Trustee, upon prior written notice sent to Union Bank or filed with the Bankruptcy Court.  Notwithstanding this <u>Section 8.1</u>, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust to liquidate in a reasonable and orderly manner the Liquidating Trust Assets in accordance with Treasury Regulations Section 301.7701-4(d) and the Plan.

# ARTICLE 9

## MISCELLANEOUS PROVISIONS

9.1     <u>Intention of Parties to Establish Liquidating Trust</u>.  This Agreement is intended to create a liquidating trust that shall be treated as a grantor trust with respect to the interests held by the Beneficiaries for federal and state income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust, and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended to comply with such federal and/or state income tax laws, which amendments may be made to apply retroactively.

9.2     <u>Preservation of Privilege and Defenses</u>.  In connection with the assets, rights, Claims, and Causes of Action that constitute the Liquidating Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) relating to the same shall vest exclusively in the Liquidating Trustee and its representatives, and the Liquidating Trustee is authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

9.3     [Reserved]

9.4     <u>Laws as to Construction</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to rules governing the conflict of laws.

SMRH:482961277.4
Liquidating Trust Agreement
for the Robert Brower, Sr. Liquidating Trust

Case: 15-50801     Doc# 233     Filed: 11/02/17     Entered: 11/02/17 17:15:17     Page 46 of 52

9.5    Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction to implement and enforce the terms and provisions of this Agreement.

9.6    Severability.  If any provision of this Agreement or the application thereof to any person or entity or circumstance shall be finally determined by the Bankruptcy Court or other court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or entities or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

9.7    Notices.  Any notice or other communication hereunder or pursuant to the Plan shall be in writing  and shall be deemed to have been sufficiently given, for all purposes if addressed as follows (provided, however, that only one notice or other communication hereunder need be sent to holders sharing the same address):

　　　　If to the holders of Liquidating Trust Interests, to:

　　　　The names and respective addresses set forth on the register or records maintained by the Liquidating Trustee.

　　　　If to the Liquidating Trustee or the Liquidating Trust, to:

　　　　Robert Brower, Sr. Liquidating Trust
　　　　c/o Michael G. Kasolas, CPA
　　　　P.O. Box 26650
　　　　San Francisco, CA 94126
　　　　Phone: (415) 504-1926
　　　　Email: trustee@kasolas.net

　　　　If to Union Bank, to:

　　　　MUFG Union Bank, N.A.
　　　　c/o Sheppard Mullin Richter & Hampton LLP
　　　　Attn : Steven Sacks, Esq. and Michael Lauter, Esq.
　　　　Four Embarcadero Center, 17th Floor
　　　　San Francisco, CA 94131
　　　　Phone : (415) 434-9100
　　　　Fax : (415) 434-3947
　　　　Email : ssacks@sheppardmullin.com; mlauter@sheppardmullin.com

9.8    Savings Clause.  If any clause or provision of this Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court or other court of competent jurisdiction, such invalidity or unenforceability shall not affect any other clause or provision hereof, but this Agreement shall be construed, insofar as reasonable to effectuate the purpose hereof, as if such invalid or unenforceable provision had never been contained herein.

9.9     Successors.  This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

9.10     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

9.11     Waiver.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

9.12     Entire Agreement.  This Agreement, the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations with respect to the subject matter hereof except as set forth herein or therein.  This Agreement together with the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to such subject matter.  Except as otherwise authorized by the Bankruptcy Court or specifically provided in this Agreement or in the Plan, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person or Entity other than the parties hereto, and the Beneficiaries any rights or remedies under or by reason of this Agreement.

9.13     Relationship to the Plan.  The principal purpose of this Agreement is to aid in the implementation of the Plan, and therefore the Plan and the Confirmation Order are hereby incorporated into this Agreement.  To that end, the Liquidating Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Agreement. If any provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control. The Plan and Confirmation Order are each hereby incorporated into this Agreement and made part hereof by this reference.

9.14     Effective Date.  This Agreement shall become effective as of the Effective Date of the Plan.

*[Signatures on following page]*

SMRH:482961277.4

Case: 15-50801    Doc# 233    Filed: 11/02/17    Entered: 11/02/17 17:15:17    Page 48 of
52

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers, all as of the Effective Date.

LIQUIDATING TRUSTEE

By: _____
    Michael G. Kasolas, CPA
    Liquidating Trustee

MUFG UNION BANK, N.A.

By: _____
    Mark Menda
    Director/Real Estate Special Assets Department

# Michael G. Kasolas, CPA
## UNITED STATES BANKRUPTCY TRUSTEE

P.O. BOX 26650
SAN FRANCISCO, CALIFORNIA 94126

TELEPHONE (415) 504-1926
E-MAIL trustee@kasolas.net

## *Curriculum Vitae*
### *August 2017*

### PROFESSIONAL EXPERIENCE:

#### November 1993-Present
**Michael Kasolas & Company,** *Trustee, Real Estate, Probate & Estate, Tax and Restructuring Services. Chapter 7 & 11 Bankruptcy Trustee & Examiner; Plan Administrator and Liquidating Trustee; State Court Receiver, Partition Referee, and Referee; California Probate Referee; Interim CEO; Successor and Special Trustee for private family trusts, San Francisco, California, (Sole proprietorship prior to March 2009).*

##### March 2009-Present
**United States Bankruptcy Trustee,** *Chapter 7 Panel Trustee for the Northern District of California, Oakland Division (and formerly for the Eastern District of California, Sacramento Division). Chapter 11 Trustee, Examiner, Plan Administrator and Liquidating Trustee for the Northern & Eastern Districts of California.*

##### September 1998-Present
**California Probate Referee, Appointed by the Controller of the State of California,** *Probate Referee, Superior Court of California, County of San Francisco.*

##### June 2002-Present
**Court Appointed Receiver, Partition Referee, & Referee,** *Superior Court of California, City & County of San Francisco, Alameda County, and Contra Costa County. Receiver, Referee for partition of real property, and Referee for civil litigation and probate matters; San Francisco Superior Court Judge A. James Robertson, Judge Paul Alvarado, Judge Patrick J. Mahoney, Judge Ellen Chaitin, Judge Ernest Goldsmith, Judge Ronald Quidachay, Judge Charles Crompton, Judge John K. Stewart, Judge Stephen Murphy; Alameda County Superior Court Judge Gail Brewster Bercola, Judge Julia Spain; and Contra Costa County Superior Court Judge Barbara Zuniga.*

##### November 2005-Present
**Stevensen, Neal & Kasolas Realtors and Community Trust Mortgage,** *Real estate brokerage and mortgage lending services. Branch office owner and Associate Broker, San Francisco and San Mateo Counties, California. Appointed or designated as Realtor for partition of real property, receiverships and probate estates by San Francisco Superior Court Judge Patrick J. Mahoney, Judge Ellen Chaitin, Judge Ronald Quidachay, Judge John K. Stewart, Judge Stephen Murphy and Commissioner Sue Kaplan, San Mateo County Superior Court Judge Rosemary Pfeiffer and Contra Costa County Superior Court Judge Barbara Zuniga.*

#### March 2002 to December 2004
**Chief Operating Officer and Chief Financial Officer, BrightTeam Software, LLC,** *software manufacturer of data access and collaboration applications for corporate enterprises, San Francisco and Los Gatos, California. Corporate Treasurer, member of board of directors and senior management team.*

#### February 2000-January 2002
**Vice President Operations and Treasurer, Namezero.com, Inc.,** *provider of complete internet domain name solutions, Los Gatos and Palo Alto, California. Member of senior management team.*

# Michael G. Kasolas, CPA
## UNITED STATES BANKRUPTCY TRUSTEE

### *Curriculum Vitae*
*August 2017*
*(Continued)*

<u>June 1996-March 2000</u>
**Senior Manager, Tax and Legal Consulting Services, PricewaterhouseCoopers, LLP**, *International Accounting and Consulting Firm, San Francisco, California. Member of the Western Region Financial Services Industry Practice.*

<u>April 1995-May 1996</u>
**Chief Financial Officer, America's Funding Source, Inc.** *(also known as LoanCity.com), mortgage bank, Los Gatos, California. Corporate Treasurer and Secretary, and member of senior management team.*

<u>November 1994-March 1995</u>
**Chief Financial Officer, Finet Holdings Corporation**, *mortgage brokerage company, Walnut Creek, California. Corporate officer and member of senior management team. NasdaqSC trading symbol, FNCM.*

<u>November 1993-November 1994</u>
**Business Assurance Manager, Coopers & Lybrand, LLP**, *International Accounting and Consulting Firm, San Francisco and San Jose, California. Member of the San Francisco / Western Region Banking Team and member of Coopers and Lybrand's National Mortgage Banking Group.*

<u>October 1984-October 1993</u>
**Senior Manager, Abbott, Stringham & Lynch, CPA's**, *Campbell, California. Hired by the firm as staff accountant and through promotions attained the level of Senior Manager.*

### EDUCATION:

- *San Jose State University, BS Business Administration-Accounting, 1984*
- *San Jose State University, Minor, Cybernetic Systems, 1984*
  *(Computer programming, systems, and logical thought processes)*
- *Hayward State University, Mortgage Banking Certificate Program, 1995*
- *Golden Gate University, Masters in Taxation program, selected courses 1996*

### PROFESSIONAL LICENSES AND MEMBERSHIPS:

- *Certified Public Accountant, California, License #62159, Issued 1992*
- *Broker, California Department of Real Estate, License #00813036, Issued 1985*
- *American Institute of Certified Public Accountants, Member #015-47-675, 1992 to Present*
- *California Society of Certified Public Accountants, Member #125892, 1992 to Present*
- *California Probate Referees Association, September 1998 to Present*
- *The Bar Association of San Francisco, January 2005 to Present*
- *The National Association of Bankruptcy Trustees, August 2010 to Present*
- *Bay Area Chapter of the California Receivers Forum, January 2012 to Present*
- *Bay Area Bankruptcy Forum: January 2013 to Present, Board of Directors, November 2014 to Present, Past Treasurer, November 2015 to November 2016, Secretary, September 2016 to Present.*
- *Mortgage Bankers Association of America, 1993-2000*

### PUBLICATIONS:

- *California Probate Referee Association, Chairperson and member of the Revision Committee for the 2013, 2014, 2015 & 2017 editions of The Probate Referee Guide.*

# Michael G. Kasolas, CPA
UNITED STATES BANKRUPTCY TRUSTEE

***Curriculum Vitae***
*August 2017*
*(Continued)*

**COMMUNITY ACTIVITIES:**

- *San Francisco Municipal Transportation Agency Director and Vice Chairman, City and County of San Francisco, August 2002 to March 2007, appointed by the Honorable Willie L. Brown, Mayor.*
- *San Francisco Municipal Railway Trust Fund, Trustee, City & County of San Francisco & TWU Local 250-A, January 2003 to March 2007.*
- *San Francisco Municipal Railway Improvement Fund, Trustee, City & County of San Francisco & TWU Local 250-A, January 2003 to March 2007.*
- *California Probate Referees Association, Board of Directors, 2001 to 2003.*
- *Metropolis of San Francisco, Council Member, Greek Orthodox Archdiocese of America, 1999 to 2003 and 2005 to 2008.*
- *St. Francis Wood Homes Association of San Francisco.*
  - *President and Chairperson of the Board of Directors, 2002 and 2003.*
  - *Vice President and member of the Board of Directors, 2000 and 2001.*
  - *Chairperson, Streets and Traffic Committee, 1999 to 2001.*
- *San Francisco Department of Parking and Traffic Commissioner, City and County of San Francisco, March 27, 2002 through June 30, 2002, appointed by the Honorable Willie L. Brown, Mayor.*
- *San Francisco District 7 Advisory Council Member and a Member of the Transportation and Parking Committee, 2001 to 2007.*
- *Pedestrian Safety and Street Resurfacing Working Group Member, City and County of San Francisco, Supervisorial District 7 representative. 2001 to 2002.*
- *Traffic Calming Community Working Group Member, City and County of San Francisco, San Francisco County Transportation Authority and Department of Parking and Traffic, 1999.*
- *Santa Clara County Commissioner for the Silicon Valley Private Industry Council / Federal Job Training Partnership Act and Vice-Chairman of the Finance Committee. 1993 to 1996, selected by the Honorable Ron Diridon, Sr., Supervisor and appointed by the Santa Clara County Board of Supervisors.*
- *Parking Advisory Commissioner, City of San Jose, 1992 to 1994, appointed by the Honorable Susan Hammer, Mayor.*
- *Campbell Golf Club Treasurer, 1992 to 1994.*