David W. Balch (SBN 226519)
Stephan A. Barber (SBN 70070)
JRG ATTORNEYS AT LAW
318 Cayuga Street
Salinas, CA  93901
steve@jrgattorneys.com
Telephone:	(831) 754-2444
Facsimile:	(831) 269-7089

Attorneys for Debtor/Defendants,
ROBERT S. BROWER, SR.; COASTAL CYPRESS CORORATION; WILFRED "BUTCH" LINDLEY; PATRICIA BROWER; PATRICIA BROWER TRUST

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ROBERT BROWER, SR.,<br><br>        Debtor. | Case No.:  15-50801 MEH<br><br>Chapter 11 |
| MUFG UNION BANK, N.A.,<br><br>        Plaintiff,<br>v.<br><br>ROBERT BROWER, SR., an individual, PATRICIA BROWER, an individual, COASTAL CYPRESS CORPORATION, a California corporation, COASTAL CYPRESS CORPORATION, a Delaware corporation, AMERICAN COMMERCIAL PROPERTIES, INC., a Nevada corporation, ANTHONY NOBLES, an individual, WILFRED "BUTCH" LINDLEY, an individual, RICHARD BABCOCK, an individual, PATRICIA BROWER TRUST, and DOES 1-50,<br><br>        Defendants. | Adv. Proc. No. 17-05044-MEH<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>Date:     September 2, 2020<br>Time:    9:00 a.m.<br>Court:   Hon. M. Elaine Hammond<br>           Video Hearing |

## I. FACTUAL AND PROCEDURAL BACKGROUND CONCERNING COASTAL

As determined in the previous adversary proceeding, Robert Brower Sr. ("Debtor") and his spouse, Patricia Brower, established a wine estate in Monterey County, California in 1982. The assets and operations of their business venture were split between multiple privately-held corporations with Coastal owning the most valuable asset: the real property on which the wine estate was situated.

Coastal sold that property (along with certain personal property and equipment) for $12 million on April 17, 2015, little more than a month after Debtor filed for bankruptcy. Plaintiff, MUFG Union Bank, N.A. (the "Bank"), seeks an order from this court determining that Coastal was one-hundred percent owned by Debtor at the time of the sale. Debtor and the other defendants contend otherwise.

On November 20, 2019, this Court issued a Memorandum Decision on Motion for Summary Judgment on the Bank's motion (hereafter the "MSJ Ruling"). Per the MSJ Ruling, fifty-seven percent of Coastal Cypress Corporation's ("Coastal") stock is owned by the Debtor's bankruptcy estate. Debtor contends that Coastal stock is held as follows: (1) Debtor (as his sole and separate property) – 230,000 shares (approximately 24%); (2) Patricia Brower's Trust (via transfer from Mrs. Brower) – 125,000 shares (approximately 13%); (3) Wilfred "Butch" Lindley - 335,000 shares (approximately 37%); (4) Dr. Anthony Nobles – 200,000 shares (approximately 21%); and (5) Richard Babcock – 50,000 shares (approximately 5%).

The MSJ Ruling voided the transfers of shares purportedly belonging to Messrs. Lindley and Babcock for lack of consideration. (P's Exh. 1, 5:4-22 and 7:9-27). Likewise, 150,000 of Dr. Nobles' shares were deemed void for lack of consideration. (*id.* at 5-6:23-12.). The MSJ Ruling then leaves three, discrete factual issues for trial:

1. Whether defendant Dr. Anthony Nobles paid $50,000 and Coastal received $50,000 in exchange for 50,000 shares of Coastal stock purportedly issued to Dr. Nobles.

2. Whether defendant Patricia Brower paid and Coastal received $125,000 in exchange for 125,000 shares of Coastal stock.

3. To the extent Mrs. Brower paid and Coastal received $125,000 in exchange for

125,000 shares of Coastal stock, whether the $125,000 paid by Mrs. Brower is traceable to her sole and separate property.

As further detailed below, the evidence will show that: (1) Dr. Nobles paid $200,000 for shares in Coastal, and at least $50,000 of that sum was deposited into a Coastal account; (2) Patricia Brower paid, with her separate property, $125,000 for her shares in Coastal; and (3) Mrs. Brower's payment for the Coastal shares was funded with separate property.

## II. DR. NOBLE TRANSFERRED $250,000 FOR HIS SHARES IN COASTAL AND COASTAL RECEIVED THE MONEY.

The undisputed evidence establishes that Dr. Noble wired $250,000 to an account he believed belonged to Coastal. (P's Exh. 1, 5-6:23-12.). The MSJ Ruling held that because $200,000 of that money was never deposited into a Coastal account, Coastal did not receive any consideration for the shares it issued to Dr. Noble, which resulted in the lion share of Dr. Noble's shares being voided. (P's Exh. 1, 55-6:23-12.). The only remaining factual issues relate to determining what effect the $50,000 deposit into a Coastal account has on Dr. Noble's claim over said shares and whether tracing is necessary to determine the source of the funds. The evidence will demonstrate that Dr. Noble wired $250,000 to a bank account belonging to the Browers, of which at least $50,000 was later deposited into a Coastal bank account. Dr. Noble's testimony will establish that it was his understanding that all of his funds were deposited with Coastal. Debtor will testify that he wrote a check from his account to Coastal as consideration for the shares that Dr. Noble (the remaining balance was loaned to one of the other entities that was involved with the wine estate in the name of Coastal). This evidence will establish that Dr. Noble's paid valid consideration for at least one fourth of the shares he received.

## III. PATRICIA BROWER PAID $125,000 FOR HER SHARES IN COASTAL WITH HER SEPARATE PROPERTY

"Bankruptcy courts are required to look to state law in this case, California law to determine whether property is community property and therefor included in the bankruptcy estate." *In re Brace*, 908 F. 3d 531, 536 (9th Cir. 2018). "Except as otherwise provide by statute, all real and personal property, wherever it is located, acquired by a married person during

3

Case: 15-50801    Doc# 265    Filed: 08/14/20    Entered: 08/14/20 17:16:15    Page 3 of 17
DEFENDANTS' TRIAL BRIEF

the marriage while the person is domiciled in California is community property." Cal. Fam. Code § 760. "Under California law, there is a general presumption that, absent a statute to the contrary, all property acquired during marriage is community property," *In re Brace, 908* F. 3d at 537.

"Property that a spouse acquired during the marriage is community property unless it is: (1) traceable to a separate property source; (2) acquired by gift or bequest' or (3) earned or accumulated while the spouse are living separate and apart, " *In Re Marriage of Valli,* (2014) 58 Cal. 4th 1396,1400 (internal citations omitted). "A spouse's claim that property acquired during marriage is separate property must be proven by a preponderance of the evidence. "*Id,;* and see *In re Brance, 908* F. 3rd at 537.

Coastal was incorporated in 1982, approximately two years after Debtor and Mrs. Brower married. Mrs. Brower's 125,000 Coastal shares are presumed to be her and Debtor's community property unless the funds used to pay for same are traceable to her separate property. *In Re Marriage of Valli, 58* Cal. 4th at 1400.

Bank contends that Mrs. Brower did not pay for her shares, and that if she did, she did not do so with separate property, such that her shares are community property of Mr. and Mrs. Brower (the "Browers"). The Browers will testify that Mrs. Brower had $515,000 of separate property at the time that the two executed their prenuptial agreement, which is notated on the prenupital agreement of the Browers. Robert Brower will further testify that Mrs. Brower, using separate property identified in the prenuptial agreement, purchased her shares in Coastal for $125,000. The testimony of the Browers is sufficient to establish the source of the funds; particularly if there is no evidence to the contrary. The evidence will establish that Mrs. Brower paid for her Coastal shares, and did so with her separate property.

### IV. <u>CONCLUSION</u>

Based on the foregoing evidence, the court should enter a judgment after trial as follows:

1. Establishing that Dr. Noble owns at least one-quarter of the shares he believed he purchased when he wired $250,000 in exchange for same;

2. Establishing that Mrs. Brower paid $125,000 for her Coastal shares; and

3. Establishing that Mrs. Brower's shares were purchased with separate property.

Judgement on these terms coupled with the MSJ Ruling and the Court's order thereon will render Debtor's Bankruptcy Estate only partial owner of Coastal's shares and the rightful recipient of only some of the net proceeds from the $12 million sale of Coastal's wine estate property.

Dated: August 14, 2020                  **JRG ATTORNEYS AT LAW**

By: _____
Stephan A. Barber
Associated Counsel for Defendants

# EXHIBIT 101

AGREEMENT

Between

ROBERT S. BROWER

and

████████ICIA ANN HENDRICKSON

Dated: June 11, 1980.

THIS AGREEMENT, executed in duplicate this 11th day of JUNE, 1980, between ROBERT S. BROWER, of 8 Hampshire Drive, Mendham, New Jersey, AND PATRICIA ANN HENDRICKSON, residing at 8 Hampshire Drive, Mendham, New Jersey;

W I T N E S S E T H:

WHEREAS, Robert S. Brower is a divorced man, aged 30, with two minor children by a previous marriage, and Patricia Ann Hendrickson is a single woman, aged 24; and

WHEREAS, the said parties have represented to each other that they are free to marry and therefore contemplate marriage to each other, such marriage to be solemnized in the near future; and

WHEREAS, Robert S. Brower presently has property and investments in an amount in excess of $1,000,000.; and

WHEREAS, Patricia Ann Hendrickson presently has property and investments in an amount in excess of $15,000.; and

WHEREAS, each party enters into this Agreement with full knowledge of the extent and approximate present value of all of the property and estate of the other and of

all the rights and privileges in and to such property and estate which would be conferred by law upon each in the property and estate of the other by virtue of the consummation of the proposed marriage if this Agreement were not entered into; and

WHEREAS, each party has had the benefit of independent legal advice prior to the execution of this Agreement, has been fully advised as to his or her rights hereunder and in the absence of such an agreement, and with full knowledge of such rights, each is fully satisfied to enter into this Agreement so that the forthcoming marriage, whether or not consummated, should not impair his or her relationship to the other, nor his relationship to his children and his financial responsibilities to them; and

WHEREAS, the parties desire to fix, limit and determine by this Agreement the interest, rights and claims that will accrue to each of them in the property and estate of the other by reason of their marriage to each other, whether or not consummated, and to accept the provisions of this Agreement in lieu and in full discharge, settlement and satisfaction of any and all interest, rights and claims that otherwise each might or could have, under the law, in and to the property and estate of the other, both before and after the other's death.

- 2 -

NOW, THEREFORE, in consideration of the foregoing and intending to be legally bound hereby, the parties agree as follows:

1. Each party hereby acknowledges that he and she has had the opportunity to ascertain, has been informed by a full and frank disclosure of the other of, and is fully acquainted with and aware of, all the income, property, net worth and financial circumstances of the other, that each has ascertained and weighed all the facts, conditions and circumstances likely to influence his or her judgment in all matters embodied herein; and that each has given due consideration to all such matters and questions and clearly understands and consents to all the provisions hereof and has had the benefit of the advice of counsel of his and her own choice and is willing to accept the provisions of this Agreement in lieu of all other rights.

2. Each party shall during his or her lifetime keep and retain sole ownership, enjoyment, control and power of disposal of all property of every kind and nature whatsoever now owned or hereafter acquired by such party and all increments thereto, free and clear of any interest, rights or claims of the other (including rights under community property laws). Each party irrevocably authorizes the other

- 3 -

to act as his or her attorney-in-fact, to join in the making, execution, acknowledgment and delivery of any deed, conveyance, transfer or assignment of any property of such other party so that thereby the joinder, if necessary, may be made freely and without restraint. Each party shall, upon the request of the other, execute, acknowledge and deliver to the other any and all instruments necessary or appropriate to carry into effect the purpose and intent of this Agreement.

3. Each party does hereby waive, relinquish and release any and all right, claim or demand of every kind, nature and description he or she might otherwise acquire or have at any time hereafter in any property whatsoever or against the estate of the other by reason of the marriage to each other (including rights under community property laws) or as surviving spouse, whether by way of intestacy, dower or curtesy, or rights in the nature of intestacy, dower or curtesy, or any other right of the surviving spouse to share in the estate of the other or to receive any allowance or exemption from the estate of such other, or any right to elect to take against the will of such other, or the right to act as administrator or as administratrix of the estate of such other.

- 4 -

4. None of the foregoing is intended to limit or relieve the legal obligation of Robert S. Brower to support Patricia Ann Hendrickson as his wife in a reasonable manner and to the extent of her necessities for so long as they continue to be lawfully married to each other; provided, however, the legal obligation to support the said wife shall not be extended or applied so as to permit or require the payment of any alimony or payments in the nature of alimony or to give said wife any rights, interest or claim to any of his property.

5. In the event of an annulment, a separation, legal or by mutual agreement, or a pending or final divorce between the parties hereto, or in the event that the parties hereto have lived apart for a period in excess of ninety (90) continuous days and one of the parties has no intention of returning, each agrees that there shall be no property settlement or division of property between them, but each shall keep and retain sole ownership, enjoyment, control and power of disposal of all property of every kind and nature whatsoever now owned or hereafter acquired by such party and all increments thereto free and clear of any interest, rights or claims of the other (including rights under community property laws). Upon the happening of any

- 5 -

of the events mentioned in the immediately preceding sentence, each irrevocably waives any right, interest, claim or demand for any property settlement (including rights under community property laws), and each shall retain the sole ownership, enjoyment, control and power of disposal of all property of any kind or nature whatsoever now owned or hereafter acquired and all increments thereto as if such parties had never been married.

6. This Agreement shall be effective in all respects whether or not the contemplated marriage between the parties hereto shall take place.

7. This Agreement contains the entire understanding of the parties. There are no representations, warranties, promises, covenants or undertakings, oral or otherwise, other than those expressly set forth herein.

8. This Agreement shall inure to the benefit of and shall be binding upon the heirs, executors and administrators of the parties.

9. The invalidity or unenforceability of any provision, term or condition of this Agreement shall not affect the validity or enforceability of all the other provisions, terms and conditions of this Agreement.

10. This Agreement is made in New Jersey and

Case: 15-50801 Doc# 265 Filed: 08/14/20 Entered: 08/14/20 17:16:15 Page 13 of 17

shall be construed and given effect in accordance with the laws and decisions of New Jersey.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

Signed, Sealed and
Delivered in the
Presence of:

_____ (L.S.)
ROBERT S. BROWER
Dated: June 12, 1980

_Cynthia K Burke_
As to Robert S. Brower

_____ (L.S.)
PATRICIA ANN HENDRICKSON
Dated: June 11, 1980

_John C. Howell_
As to Patricia Ann Hendrickson

- 7 -

STATE OF NEW JERSEY )
: SS.:
COUNTY OF MORRIS )

   BE IT REMEMBERED, that on this 12th day of June, 1980, before me, the subscriber, an Attorney at Law of the State of New Jersey, personally appeared ROBERT S. BROWER, who, I am satisfied, is the person named in and who executed the within Agreement, and thereupon he did acknowledge that he signed, sealed and delivered the same as his voluntary act and deed, for the uses and purposes therein expressed.

          Cynthia K. Burke
          an Attorney at Law of the
          State of New Jersey.

STATE OF NEW JERSEY )
                    : SS.:
COUNTY OF MORRIS    )

BE IT REMEMBERED, that on this 11th day of JUNE, 1980, before me, the subscriber, an ATTORNEY of the State of New Jersey, personally appeared PATRICIA ANN HENDRICKSON, who, I am satisfied, is the person named in and who executed the within Agreement, and thereupon she did acknowledge that she signed, sealed and delivered the same as her voluntary act and deed, for the uses and purposes therein expressed.

_____
*John C. Howell*
*an attorney-at-law*
*of New Jersey*

# CERTIFICATE OF SERVICE

The undersigned declares as follows:

I am a citizen of the United States and employed in the County of Monterey, State of California. I am over the age of 18 and not a party to the within action; my business address is: JRG Attorneys at Law, 318 Cayuga Street, Salinas, California 93901.

On this date, I served the foregoing documents described as **DEFENDANTS' TRIAL BRIEF,** on the interested party(ies) listed below in this action as follows:

Isaiah Z. Weedn
SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626-1993
Telephone: (714) 513-5100
Facsimile: (714) 513-5130
iweedn@sheppardmullin.com
**Attorneys for MUFG Union Bank, N.A.**

Ryan A. Stubbe
JAURIGUE LAW GROUP
300 W. Glenoaks Boulevard, #300
Glendale, CA 91202
Telephone: (818) 630-7280
ryan@lglawyers.com

Babak Samini
THE SAMINI FIRM APC
2801 West Coast Highway, Suite 200
Newport Beach, CA 92663
Telephone: (949) 724-0900
bsamani@saminilaw.com

__X__ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 14, 2020, at Salinas, California.

*Kathleen F. Hutter* (signature)
Kathleen F. Hutter