LAW OFFICE OF WILLIAM J. HEALY
WILLIAM J. HEALY, #146158
748 Holbrook Pl.
Sunnyvale, CA 94087
Telephone: (408) 373-4680

ATTORNEYS FOR
Administrative Claimant
William J. Healy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

In re:                                    ) Case No. 15-50801
                                          )
ROBERT S. BROWER, Sr.,                    ) CHAPTER 11
                                          )
                                          ) **OBJECTION TO NOTICE OF UNION**
                    Debtor.               ) **BANK, N.A.'S APPLICATION FOR**
                                          ) **ALLOWANCE AND PAYMENT OF**
                                          ) **ADMINISTRATIVE CLAIM**
                                          )
_____)

COMES NOW, William J. Healy, assignee of the administrative claim of Campeau Goodsell Smith, L.C. ("Healy" or "Healy Administrative Claim"), and submits the following Objection to Union Bank, N.A.'s Application for Allowance and Payment of Administrative Claim ("Objection") in response to the Creditor Union Bank, N.A.'s Application for Allowance and Payment of Administrative Claim ("Union Bank Administrative Claim" or "Application") (Doc#284) as follows:

**I. Summary of Objection:**

The Application should be denied, in whole and in part, because it is premature, cannot be evaluated because the Trustee has not brought any money into the estate, and does not demonstrate any substantial net benefit to the estate through the services rendered; the associated payment request appears inconsistent with the Plan, the Liquidating Trust Agreement (hereinafter "Trust"), the Order Approving Stipulation Regarding

Condition of Effectiveness of Confirmed Plan (hereinafter "Stipulation"), and the Order approving Stipulation Regarding Payment of Fees and Plan Effectiveness Date; and it includes charges for matters not beneficial to the estate, not within the scope of employment, not compensable, and more suited for the Trustee.

**II. The Application Should Be Denied in Whole and in Part.**

    **A. The Application is Premature---There is Not Any Money on Hand.**

The Trustee Fee Notice provides ". . .

> "Funds on Hand. None as of the date of the filing of this Administrative Claim. The firm is informed and believes that approximately $930,851 is in an escrow account, which are the proceeds from the sale of the estate's real property in Carmel." (Trustee Fee Notice, Doc#281) page 3/6, lines 13-16).

This statement confirms that the Application, while timely relative to the Trustee's Effective Date notice, is premature, does not currently reflect any substantial net benefits have been provided to the Estate/Trust. Therefore, no monies should be approved or paid.

    Only when the Estate/Trust has obtained any funds can the court, or creditors and claimants, evaluate whether the Application demonstrates a substantial contribution and is fair and reasonable.

                        **1) The Application Is Not Based on Section 503(b)(3)(B).**

    Section 503(b)(3)(B) affords an administrative priority claim to a "creditor that recovers . . . for the benefit of the estate any property **transferred or concealed** by the debtor" (Bold Added). The Application does not appear to argue that the Estate Enhancement Action[1] is based on Section 503(b)(3)(B), namely that property was transferred or concealed by the Debtor.

    Quite the opposite, the Estate Enhancement Action sought and obtained a declaration that the shares of Costal Cypress held in the names on third parties (including Patricia Brower) were void under California law and that the shares of American Commercial Properties, Inc. ("ACP") were either Debtor's separate property or community property in the absence of sufficient evidence that such shares were Patricia Brower's separate property.

---

[1] AP Case No.: 17-5044.

### 2) Substantial Contribution Must Be Measured Relative to Monies Available at Confirmation and the Resulting Net Benefits.

Section 503(b)(3)(D) affords an administrative priority claim to a creditor "in making a substantial contribution in a case". (See also Application, Doc#284, page 2, lines 4-9).

The Application can only be based on Section 503(b)(3)(D) and a finding that the Estate Enhancement Action provided a substantial benefit to the Estate. Whether the Application eventually demonstrates a substantial benefit to the Estate can only be measured relative to what existed at the time of the Plan and what amount of benefit (money) eventually reaches the estate (i.e. net or 'enhancement').

### 3) The Application's Potential Ability to Demonstrative a Substantial Contribution or a Substantial Net Contribution to the Estate Is Currently Unknown.

More than three years ago, Union Bank ("Applicant") addressed the feasibility of the Plan and asserted, in part, that ". . . even accepting the Debtor's most recent assertion his interest in Coastal is only 24%, and that interest is worth $448,500, that amount significantly exceeds any expected administrative expenses." (Doc#233, page 25/52, lines 12-14).

The Estate Enhancement Action, in the simplest summary and as discussed hereinabove, resulted in the Debtor/Estate/Trust owning the balance of the shares of Coastal Cypress and all shares of ACP.

This Objection does not complain of the quality of the Applicant's underlying efforts and the successful nature of the related rulings, just questions whether such resulted in any substantial contribution, and more importantly any substantial net contribution, to the Estate/Trust.

However, at this point it is unknown what, if any, substantial benefit Applicant's efforts have brought to the Estate/Trust, or more importantly, what, if any, net benefits Applicant to the Estate through the Estate Enhancement Action.

It is unknown whether there has been any benefit, substantial benefit, or substantial net benefit, because there is not any evidence of such. There is not any such evidence because (1) the 'additional' assets (additional shares of Coastal Cypress and the shares of ACP) have not been valued, liquidated, or brought into the Estate/Trust, (2) the value of the

additional shares of Coastal Cypress are apparently subject to the attorney's fees and costs incurred by Coastal Cypress in defending itself (and others) in the Estate Enhancement Action, liquidation issues and costs associated with liquidating Coastal Cypress's assets, and potential taxes before any monies come into the Estate/Trust, and the value of the shares of ACP are apparently subject to the attorney's fees and costs incurred by ACP in defending itself (and others) in the Estate Enhancement Action, liquidation issues and costs associated with liquidating ACP's primary asset (Carmel Property[2]), and potential capital gain taxes before any monies come into the Estate/Trust[3].

Although not addressed in the Application, the Objection understands (from Applicant and documents provided by Applicant) that not later than August 21, 2020 a total of $930,851.28 was deposited into an 'escrow' account with Chicago Title following the sale of the Carmel Property as the net sales proceeds (after payment of various closing costs and a third-party mortgage) from the sale of the Carmel Property and the $930,851.28 is broken down as $523,185.48 payable for notes issues by Coastal and $402,821.80 payable to ACP. However, the Trustee and the Trustee's CPA (see their respective fee notices) assert substantial tax issues (i.e. capital gains and income taxes) may have to be addressed before it is determined how much of these net sales proceeds may come into the Estate/Trust.

**B. The Application Should Be Denied in Whole and In Part Until There is Compliance With Plan, Payment of the Healy Administrative Claim, and Funding of the Trust Pursuant to the Plan[4].**

The above-quoted statement ("Funds on Hand. None . . .") begs the fundamental question----why are there not any funds in the trust?

The Plan, specifically Section IX A 1(Doc#233, page 16, line 21- page 17, line 2), provides, in pertinent part:

> "The Plan . . . shall be initially funded through the sale by the Liquidating Trustee of the Debtor's assets in a sufficient amount to pay all allowed Administrative

---

[2] Carmel Property was 28088 Barn Court, Carmel, CA.

[3] In fact, it is unknown whether the Estate Enhancement Action actually depleting/decreased the value of Debtor's shares as set forth in the Plan.

[4] And the Trust and Stipulation.

>Expenses, which sale shall occur on the Effective Date of the Plan. In other words, in order for this Plan to become effective, the Liquidating Trustee will need to collect funds from the sale of estate assets sufficient to pay all allowed Administrative Expenses. Such a sale would be negotiated by the Liquidating Trustee prior to the Effective Date, and would close on the Effective Date. On the Effective Date, the closing of such a sale would occur, and all proceeds of such sale over and above allowed Administrative Expenses, and all remaining assets of the Debtor . . . will be transferred to a Liquidating Trust."

Further, the Plan, specifically Section IX B 1(Doc#233, page 17, lines 8-19), provides, in pertinent part:

> "The establishment and funding of the Liquidating Trust shall occur in two stages. First, on the Confirmation Date, the Liquidating Trust will be established and the Liquidating Trustee shall be appointed. The Liquidating Trustee will then have the ability to market the assets of the estate for sale, which sale the Liquidating Trustee will not be able to accomplish until the Effective Date, when the assets of the Debtor's estate are transferred to the Liquidating Trust. **Stage two will occur on the Effective Date, at which time all assets of the Debtor's estate shall be transferred to the Liquidating Trust**, including without limitation the following: (a) all tangible and intangible assets of every kind and nature, including Causes of Action, and all proceeds thereof, existing as of the Effective Date and thereafter, (b) all property treated by the Plan . . . (the "*Liquidating Trust Assets*")." (Bold Added)

Therefore, the Plan requires the funds be used to pay the Healy Administrative Claim and then transferred (as of the Effective Date–September 15, 2020) into the Trust.

Although the responsibility for Plan and Trust compliance rests with the Trustee, the Application should be denied, in whole and in part, until there is compliance with the Plan, Trust, and Stipulation, payment of the Healy Administrative Claim, and funding of the Trust pursuant to the Plan and Trust.

**C. The Application Should Be Denied in Whole and In Part Because it Appears to Seek Payment Inconsistent With the Order Approving the Stipulation.**

The Stipulation (and the related Order (Doc#261)) was presented to the court to make the Plan effective and have the Trust and Trustee take control of the assets, prevent waste and mismanagement, and expedite distribution of the trust assets as set forth in the Plan and

Trust. The Stipulation provided, in pertinent part:

> "WHEREAS, Healy and the Bank **would like to allow for the Plan to go effective** without paying the Healy Fee Claim in full on the effective date, **in exchange for paying the Healy Fee Claim in full out of the first dollars of the sale of assets** by the Liquidating Trustee of Coastal Cypress Corporation and/or American Commercial Properties, Inc." and
>
> "Healy agrees to waive the condition precedent to effectiveness of the Plan that the Healy Fee Claim be paid in full on the Effective Date of the Plan. **In exchange, the Bank agrees that the Liquidating Trustee will pay the Healy Fee Claim out of the first dollars of the net proceeds of any Liquidating Trust Assets sold or distributed** by the Liquidating Trustee . . ."
> (Stipulation, Doc#259, page 3/5, lines 7-11 and 15- 21). (Bold Added)

Yet, Healy, or the Healy Fee Claim as described in the Stipulation, was not paid out of the first dollars of the net proceeds of the sale of the Carmel Property. Rather, said funds were placed in an 'escrow' account with Chicago Title and 'parked' in this escrow account notwithstanding the terms of the Plan, Trust, and the Stipulation and Order.

The 'parking' of the net sales proceeds in a third party's escrow account when no related person or entity has asserted, timely or otherwise, any appeal of this court's Order After Trial (Doc#158) or Judgment (Doc#159)[5], is without any reason or justification.

**D. The Application Should Be Denied in Whole and In Part Because it Appears to Seek Payment Inconsistent With the Order Approving Stipulation Regarding Payment of Fees and Plan Effectiveness Date.**

The Order approving Stipulation Regarding Payment of Fees and Plan Effectiveness Date (Doc#270), between the Trustee and the Applicant, provides, in pertinent part, that ". . . both the Bank and Sheppard Mullin shall subordinate any fees and/or substantial contribution claims to the fees of the Liquidating Trustee and his professionals. " (Doc#270, page 2/3, lines 4-6).

The Application, in particular, the related Notice (Doc#285) and supporting Declaration (Doc#284-1) are both entitled as seeking "Payment". This Objection simply

---

[5] Only Anthony Nobles (and maybe Richard Babcock) has filed a Notice of Appeal and such appears relative to his claim of 50,000 shares of Coastal Cypress (approximately 5%).

seeks formal confirmation that the inclusion of the 'payment' term in the notice and supporting declaration are subject to the terms and conditions of the Plan, Trust, Stipulation, and the stipulation and order subordinating the Applicant's Section 503(b) substantial contribution claim.

**E. The Application Contains Charges Also Subject to the Trustee's Fee Notice.**

The Trustee Fee Notice asserts, in pertinent part:

> ". . . To accomplish this task, the (sic Trustee) communicated extensively with counsel for Union Bank and others regarding the sale of real property located in 28088 Barn Way in Carmel-by-the-Sea, California . . . Various issues touching upon ownership, liens, and tax implications, among others, greatly contributed to the complexity of the marketing and sale of the property. **The Liquidating Trustee coordinated with counsel, Union Bank, the title company, accountants, and other professionals to effectuate a sale to provide the maximum benefit to the Liquidating Trust**. **The sale resulted in a recovery of approximately $930,851 to the Liquidating Trust**, which proceeds are currently held in an escrow account . . ." (Trustee Fee Notice, Doc#283, page 4, line 24-page 5, line 5) (Bold Added)

Yet, the Application asserts, in pertinent part:

> "Acting on behalf of the estate to coordinate the sale of American Commercial Properties, Inc.'s real estate assets in August 2020, and negotiating a related stipulation wit the debtor and the debtors's spouse to place the proceeds of that sale in a blocked account. (Declaration, Doc#284-1, page 2/3, lines 23-26).

Similarly, the Application contains various entries relating to subordination of the Healy Administrative Claim, sale of the Carmel Condo, tax issues relating the sale of the Carmel condo, and escrow of sale proceeds. These tasks appear to be the duties of the Trustee.

The court cannot compensate both the Trustee and the Applicant for the same services.

**III. Conclusion.**

The Application should be denied, in whole and in part, because it is premature, cannot be evaluated because the Trustee has not brought any money into the estate, and it does not demonstrate any substantial net benefit to the estate through the services rendered; the associated payment request appears inconsistent with the Plan, the Liquidating Trust Agreement (hereinafter "Trust"), the Order Approving Stipulation Regarding

Condition of Effectiveness of Confirmed Plan (hereinafter "Stipulation"), and the Order approving Stipulation Regarding Payment of Fees and Plan Effectiveness Date; and it includes charges for matters not beneficial to the estate, not within the scope of employment, not compensable, and more suited for the Trustee.

Dated: December 15, 2020

LAW OFFICE OF WILLIAM J. HEALY
/s/ William J. Healy
William J. Healy