Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:    (415) 616-0466
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: jhayes@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Michael G. Kasolas,
Liquidating Trustee

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

In re

ROBERT BROWER, SR.,

Debtor.

Case No. 15-50801-MEH
Chapter 11

**STATUS CONFERENCE STATEMENT**

Date:  March 4, 2021
Time: 10:00 a.m.
Place:  Tele/videoconference

*Please check www.canb.uscourts.gov for
information regarding the Court's operations
due to the COVID-19 pandemic.*

Pursuant to the Court's Order Setting Status Conference (ECF No. 292), Liquidating

Trustee Michael G. Kasolas (the "Trustee") hereby files his status conference statement.

### I.    SUMMARY

The status conference scheduled on March 4, 2021 is at the request of William Healy,

who is the assignee of an administrative fee claim in the sum of $102,757 (the "Healy Fee

Case: 15-50801     Doc# 298     Filed: 02/23/21     Entered: 02/23/21 08:01:54     Page 1 of
22

Claim").[1]  At the heart of Mr. Healy's request for status conference is the mistaken assumption that the Trustee is required to pay, right now, the undisputed portion of the Healy Fee Claim. This is incorrect.  To date, the only monies in the Liquidating Trust are $926,707.28 in proceeds from the sale of real property located at 28088 Barn Court, Carmel, California (the "Property") and owned by American Commercial Properties, Inc. ("ACP").  For the reasons explained in more detail below, the Trustee cannot distribute these funds prior to evaluating and paying the liens encumbering (if any), and taxes owed, from those proceeds.  The Trustee does not have, and has not yet been able to obtain, the documents needed to conduct this analysis, such as ACP's tax returns.  The Trustee has explained this to Mr. Healy to no avail.  In addition to refusing to accept the Trustee's explanation, Mr. Healy has demanded payment of significant interest on his claim, but refuses to provide legal authority to support this request, despite the Trustee's requests.

## II.    Mr. Healy's Request for Status Conference

Mr. Healy requested that the Court hold a status conference to address the status of the Trustee's: (1) compliance with the confirmed Plan (ECF 233) and Liquidating Trust (ECF 233); (2) compliance with the Stipulation regarding Condition to Effectiveness of Confirmed Plan and related order (ECF Nos. 259, 261) (the "Healy Stipulation"); and (3) prompt distribution of monies being held in the Trustee's bank account ACP following the sale of the Property.  The Trustee addresses these issues below.

## III.    Relevant Provisions of the Healy Stipulation, Plan, and Liquidating Trust

The Healy Stipulation provides that:

> [T]he Liquidating Trustee will pay the Healy Fee Claim out of the first dollars of the net proceeds of any Liquidating Trust Assets sold or distributed by the Liquidating Trustee.

ECF 259, ¶1.  "Net proceeds" is not a defined term.

---

[1] Without citation to legal authority, Mr. Healy also claims he is owed costs and interest on the Healy Fee Claim accruing from and after August 9, 2017.  As of August 4, 2020, the amount of interest claimed by Mr. Healy was approximately $53,000.

Case: 15-50801    Doc# 298    Filed: 02/23/21    Entered: 02/23/21 08:01:54    Page 2 of 22

The Liquidating Trust Assets are defined as all assets of the Debtor's estate. (Plan, ECF 233, IX.B.1). These assets include 100% of the stock of ACP and 100% of the stock of Coastal Cypress Corporation ("Coastal Cypress"). (Adv. Proc. 17-5044, ECF 123, 158, 159).

The Plan became effective on September 11, 2020 (ECF 266).

**IV.    Union Bank's Pre-Plan Effective Date Sale of the Property**

The Liquidating Trustee has not yet sold or distributed any Liquidating Trust Assets. On or about August 21, 2020, *i.e.* prior to the Plan's effective date, the estate's principal creditor, MUFG Union Bank, N.A. ("Union Bank"), and not the Liquidating Trustee, closed the sale of the Property, title to which was held by ACP.

**V.    The Liquidating Trustee's Appointment as Officer to ACP, Opening of an ACP Bank Account, and Receipt of Funds from Sale of the ACP Property**

On or about September 25, 2020, the Trustee became the sole officer and director of ACP. The Trustee opened a bank account for ACP at East West Bank on or about November 25, 2020. Funds from the proceeds of sale were transferred to that account on or about January 14, 2021.

**VI.    The Need for ACP's Tax Returns to Evaluate the Tax Consequences of Sale and Liens**

At the time of the closing of the sale of the Property, the Trustee's (then-proposed) accountant, Richard Pierotti, provided an analysis of the expected tax consequences of sale of the Property. Mr. Pierotti explained that, without current ACP tax returns, lacks the information necessary to analyze the tax consequences of sale. As explained by Mr. Pierotti in his email to the Trustee on August 18, 2020:

> I prepared a tax projection assuming 7% cost of sale (6% brokerage commission and 1% transfer tax, etc.). At a sales price of $1,036,000 it is likely the corporate income tax will be around $230k give or take if the property closes this year. In reviewing the 2010 corporate income tax returns that you forwarded to me, they show that the stock investment in the corporation was $476,145 which could be used as tax basis by the bankruptcy estate assuming Brower is the 100% owner of the corporate stock and the distribution of the money paid out of the corporation to the bankruptcy estate is in liquidation of the corporation. Before the corporation can be formally liquidated, the corporate income tax returns would need to be up to date and the debts of the corporation would need to be

Case: 15-50801    Doc# 298    Filed: 02/23/21    Entered: 02/23/21 08:01:54    Page 3 of 22

paid. I believe you told me that you are not aware of whether or not there are any corporate debts other than the property liens. I do not [know] what tax returns have been filed but if they have not been filed since 2010 there is likely at least $12k owed to the Franchise Tax Board. If there are no debts other than the liens, the cash flow should look something like the following based upon the information that I have-

| Sales price | $1,036,000 |
|---|---|
| Costs of sale-7% | $72,750 |
| Net sales price | $963,480 |
| Liens [Coastal Cypress] | $536,000 |
| Corporate income tax | $230,000 |
| Net cash in corporation assuming no other debts/liens | $197,480 |

If around $200k was distributed to the bankruptcy estate in a liquidating distribution there would not be any tax liability for the bankruptcy estate assuming the Brower tax basis in the corporate stock is $476,415. If the Coastal lien can be avoided freeing up an additional $495k and the total distribution to the bankruptcy estate was around $695k, there would not be any income taxes due by the bankruptcy estate assuming at least around $220k was paid out in administrative expenses.

I am not very familiar with the case so let me know if I have any of the facts wrong.

Attachment 1, August 18, 2020 Email from Richard Pierotti to Trustee.

Mr. Pierotti has made clear to the Trustee that he cannot complete his analysis and determine the tax consequences of sale without ACP's tax returns.

The Trustee is thus informed and believes that no funds can be disbursed from the proceeds of sale of the Property, until the Trustee first: (1) evaluates the tax consequences of the sale of the Property; and (2) pays any required taxes created by the sale of the Property.

In addition, in 2017, Coastal Cypress recorded two deeds of trust against the Property totaling $495,000. The Trustee needs corporate records, including ACP's tax returns, to evaluate whether the sale proceeds are encumbered by liens in favor of Coastal Cypress; and (2) if so, to address those liens by either repaying the debts secured by those liens or avoiding the liens through appropriate legal process.

STATUS CONFERENCE STATEMENT 4/6

## VII. The Trustee and His Accountant Have Been Unable to Obtain ACP's Recent Tax Returns; Thus, the Trustee Filed a Motion for Turnover, Which is Set for Hearing on March 18, 2021

The most recent tax return the Trustee has for ACP is from 2010. Thus far, and despite significant effort by the Trustee and Mr. Pierotti, they have been unable to obtain ACP's tax returns. The facts surrounding these efforts are set forth in the Trustee's Motion for Turnover and supporting declarations. ECF Nos. 293, 294. The Turnover Motion is scheduled for hearing on March 18, 2021.

## VIII. The Trustee Has Explained to Mr. Healy Why the Trustee Cannot Disburse Funds from ACP's Account Prior to the Tax and Lien Analysis

Only after the Trustee addresses the tax and lien issues will the Trustee have net proceeds from sale of the Property, if any, to distribute. The Trustee has explained to Mr. Healy multiple times, including in December 2020 and January 2021, that a distribution to him is premature and that the ACP tax returns are needed before the Trustee will be in a position to determine whether he can make any distribution from ACP's bank account; however, Mr. Healy does not like that answer. Attachments 2 and 3. The Trustee cannot properly discharge his duties in the absence of ACP's tax returns.

## IX. The Trustee Has Worked Diligently since the Plan Became Effective

Mr. Healy falsely claims that "nothing has happened" in the five months since the Plan has become effective. As set forth above, the Trustee has worked diligently to be appointed as ACP's sole officer and director, opened a bank account for ACP, obtained transfer of those sale proceeds to the ACP bank account, and has sought the missing ACP tax returns through multiple sources.

In addition to the above-described actions, the Trustee has accomplished significant other tasks including, but not limited to: engaging bankruptcy counsel and an accountant; communicating with and subpoenaing the Small Business Administration regarding an unauthorized ACP Small Business Administration Loan taken in July 2020; undertaking a

Case: 15-50801    Doc# 298    Filed: 02/23/21    Entered: 02/23/21 08:01:54    Page 5 of 22

nationwide search for bank and other financial accounts; conducting a probate search in Sussex County, Delaware, and Monterey County, California, following Mr. Brower's death in the fall of 2020; filing an application to employ brokers to sell Delaware property; providing status updates to the Trust's principal creditor, Union Bank; engaging contingency fee counsel to prosecute litigation claims; analyzing litigation claims and defendants; and identifying an undisclosed bank account for Coastal Cypress.

      **X.**      **Mr. Healy Has Been Simultaneously Obstreperous and Non-Responsive, Refusing to Provide Legal Support for the Extraordinary Amount of Interest He Claims**

      Mr. Healy's complaints about timing are particularly not well taken in light of the Trustee's diligence and efforts, and Mr. Healy's obstreperous conduct and lack of diligence. Since October 21, 2020, the Trustee has been asking Mr. Healy to substantiate the factual and legal grounds for his asserted claim to interest on the Healy Fee Claim in the approximate sum of $53,000 as of August 4, 2020. Attachments 4 and 5. To date, Mr. Healy has failed to provide the factual and legal grounds for his claim of interest. Accordingly, the Trustee is the process of drafting an objection to the interest portion of the Healy Fee Claim. The Trustee anticipates that his claim objection will be resolvable as a matter of law.

Dated February 23, 2021        FINESTONE HAYES LLP

*Jennifer C. Hayes*
Jennifer C. Hayes
Attorneys for Michael G. Kasolas,
Liquidating Trustee

ATTACHMENT 1

Mike,

I prepared a tax projection assuming 7% cost of sale(6% brokerage commission and 1% transfer tax, etc.). At a sales price of $1,036,000 it is likely the corporate income tax will be around $230k give or take if the property closes this year. In reviewing the 2010 corporate income tax returns that you forwarded to me, they show that the stock investment in the corporation was $476,145 which could be used as tax basis by the bankruptcy estate assuming Brower is the 100% owner of the corporate stock and the distribution of the money paid out of the corporation to the bankruptcy estate is in liquidation of the corporation. Before the corporation can be formally liquidated, the corporate income tax returns would need to be up to date and the debts of the corporation would need to be paid. I believe you told me that you are not aware of whether or not there are any corporate debts other than the property liens. I do not what tax returns have been filed but if they have not been filed since 2010 there is likely at least $12k owed to the Franchise Tax Board. If there are no debts other than the liens, the cash flow should look something like the following based upon the information that I have-

| | |
|---|---|
| Sales price | $1,036,000 |
| Cost of sale-7% | (72,520) |
| Net sales price | $963,480 |
| Liens | (536,000) |
| Corporate income tax | (230,000) |
| Net cash in corporation assuming no other debts/liens | $197,480 |

If around $200k was distributed to the bankruptcy estate in a liquidating distribution there would not be any tax liability for the bankruptcy estate assuming the Brower tax basis in the corporate stock is $476,415. If the Coastal lien can be avoided freeing up an additional $495k and the total distribution to the bankruptcy estate was around $695k, there would not be any income taxes due by the bankruptcy estate assuming at least around $220k was paid out in administrative expenses.

I am not very familiar with the case so let me know if I have any of the facts wrong.

Thank you,
Richard


Richard L. Pierotti, CPA, CIRA, CFF
Kokjer, Pierotti, Maiocco & Duck LLP
333 Pine Street, 5th Floor
San Francisco, CA 94104
Office Phone: 415-981-4224

ATTACHMENT 2

Thank you, Bill. I will defer to Richard Pierotti, however, I appreciate you sharing your thoughts and you may be right (but I have no idea). We are still working on trying to get the ACP tax returns.

Best regards,

Jennifer

Jennifer C. Hayes
Finestone Hayes LLP
456 Montgomery St., 20th Floor
San Francisco, CA 94104
415-616-0466
jhayes@fhlawllp.com
www.fhlawllp.com

---

**From:** William Healy <wjhealy7@gmail.com>
**Sent:** Monday, December 7, 2020 2:38 PM
**To:** Jennifer Hayes <jhayes@fhlawllp.com>; Michael Lauter <mlauter@sheppardmullin.com>
**Cc:** Richard Pierotti <rpierotti@kpmd.com>; Ryan Witthans <RWitthans@fhlawllp.com>
**Subject:** Re: In re Robert S. Brower, Sr.

Jennifer:
    You may want to discuss with the Trustee and/or Mr. Pierotti lowering ACP's 2020 taxes by paying the CGS/Healy Admin Claim per Plan, Trust, and Effective Date stip/order in 2020 and therefore increasing ACP's tax basis. Maybe be able to add other costs (i.e. various pending fee apps) as necessary to cause the sale.
    I am not qualified to fully appreciate the above 'thought' as I am not a tax professional, but offer it as a consideration which may benefit all.
Bill

On Fri, Dec 4, 2020 at 4:18 PM William Healy <wjhealy7@gmail.com> wrote:

> Jennifer:
>    Thanks for the update.
>    I am aware that Bob passed away (obituary on page 22 of the attached).
>    I have not had contact with and do not have contact information for Patty Brower, other than I am aware she executed the lease for the Selbyville Property, I have seen miscellaneous 'internet information' suggesting she resides(ed) there, and, as discussed below, I assume Patty still lives in the Selbyville Property because Bob's daughter said Bob died in that property.
>    Earlier today I had a rather fiery conversation with Bob's daughter from his first marriage, Dawn

Resh, an attorney in Maryland, in response to a state court pleading I had recently mailed to Bob's children and Patty. Although she clearly indicated she and her sister (Amy Santucci) want nothing to do with Bob, Patty, and even Bobby, she wanted to know how I found her name and why I used the address of Bobby's company (Beverage Power Partners). I told her I addressed my communication to her and her sister based on information on Bobby's company's website listing her as General Counsel and her sister, Bobby's wife, Bobby, and some others as part of the Team, each with specific titles. Ms. Resh categorically denied she and her sister had anything to do with that company (or anything relating to Bob, Patty, etc.). Interestingly, in the few hours since my conversation with Ms. Resh all names of the Team members were removed from the company's website. Clearly, there must be some level of communication between Bobby and Ms. Resh. Sorry, I don't believe I saved a screenshot of the webpage prior to today but those names were on that website for a long time, certainly as of September 1st.

   FYI---I first connected the names of Bob's children with Bobby's website after reading Patty's Trust Agreement (AP Trial exhibit) which lists Ms. Resh and Ms. Santucci as successor trustees and successor beneficiaries in Patty's trust. Based on today's conversation it is really surprising these 'step' children were listed in any document associated with Patty.

William J. Healy, Esq.
Law Office of William J. Healy
748 Holbrook Pl
Sunnyvale, CA 94087
(p) 408-373-4680
wjhealy7@gmail.com


On Fri, Dec 4, 2020 at 3:24 PM Jennifer Hayes <jhayes@fhlawllp.com> wrote:

> William,
>
> Mr. Kasolas has opened a bank account for ACP and is working to transfer the escrow funds from sale of the Carmel property into that account.  Unfortunately, he will not be able to disburse funds from that account until he gets copies of ACP's tax returns, which are needed for the Liquidating Trust's accountant, Richard Pierotti, to be able to analyze tax issues.  We have confirmation that ACP filed its tax returns each year; yet, we have been unable to obtain copies.  Mr. Brower, Sr. has died and we do not have any contact information for Patricia Brower, who is the only person we are aware of who may have copies.  Do you have any contact information for Patricia Brower?  I have copied Richard Pierotti, in case you have questions about the necessity of obtaining ACP's tax records before making any disbursement from the ACP bank account, once the funds are transferred from escrow to that account.
>
> Best regards,
>
> Jennifer C. Hayes
> Finestone Hayes LLP
> 456 Montgomery St., 20th Floor

San Francisco, CA 94104
415-616-0466
jhayes@fhlawllp.com
www.fhlawllp.com

---

**From:** William Healy <wjhealy7@gmail.com>
**Sent:** Friday, December 4, 2020 1:46 PM
**To:** Jennifer Hayes <jhayes@fhlawllp.com>; Ryan Witthans <RWitthans@fhlawllp.com>
**Subject:** In re Robert S. Brower, Sr.

Jennifer:
 Can you update me on where things stand vis a vis Plan implementation?
 Thanks.

William J. Healy, Esq.
Law Office of William J. Healy
748 Holbrook Pl
Sunnyvale, CA 94087
(p) 408-373-4680
wjhealy7@gmail.com

--
William J. Healy, Esq.
Law Office of William J. Healy
748 Holbrook Pl
Sunnyvale, CA 94087
(p) 408-373-4680
wjhealy7@gmail.com

ATTACHMENT 3

| From: | Jennifer Hayes |
|---|---|
| To: | William Healy; Isaiah Weedn; Michael Lauter; Ryan Witthans |
| Cc: | Richard Pierotti |
| Subject: | RE: In re Brower |
| Date: | Sunday, January 24, 2021 7:17:00 AM |

Bill,

Your email is not well taken.  The notion that the Trustee does not intend to honor the stipulation, or has not addressed it, is unsubstantiated and contradicted by the facts.  There continue to be no funds in the Liquidating Trust to pay your claim.  Rather, the funds from the Carmel property sale have been transferred into the bank account of ACP, which is a separate entity.  As I have previously explained, Mr. Kasolas is not able to disburse funds from that account until he gets copies of ACP's tax returns, which are needed for the Liquidating Trust's accountant, Richard Pierotti, to be able to analyze tax issues.  We have confirmation that ACP filed its tax returns each year; yet, we have been unable to obtain copies, despite continuing efforts to obtain them, including requesting them from the IRS.  I have copied Richard Pierotti, so he can update you as to the efforts to obtain the ACP tax returns and explain in more detail the necessity of obtaining ACP's tax records before making any disbursement from the ACP bank account.

Once there are funds available to pay your claim, there remains the issue of the improper interest you are claiming.  As I have previously explained, even if the lack of your claim's impairment were to mean that your claim accrues postconfirmation interest, which I would need to see authority for, and which you have not yet provided, the unpaid amount of the judgment ($102,757.30) at the federal judgment rate is a total of $4,042.50 in interest through October 21, 2020, which is the last time I emailed you about this, and to which you have not responded (please correct me if you responded with legal authority and I somehow missed it).  At that time, the interest calculation was as follows (and it's not going to change significantly given the low daily interest amount).

$3.46 (Daily Interest Amount) x 1169 (Accumulated Days) = **$4042.50** (Accumulated Interest Amount).

Furthermore, the plan is a new contract that supersedes prepetition contracts and you agreed pursuant to the stipulation to be paid out of the first dollars received by the Liquidating Trust.  There are no funds in the Liquidating Trust yet, and there was no concession of an entitlement to interest and all rights were reserved.   If there is legal support for your arguments that you are entitled to interest, please provide those to me.

Regards,

Jennifer C. Hayes
Finestone Hayes LLP
456 Montgomery St., 20th Floor
San Francisco, CA 94104
415-616-0466
jhayes@fhlawllp.com

www.fhlawllp.com

**From:** William Healy <wjhealy7@gmail.com>
**Sent:** Saturday, January 23, 2021 5:56 PM
**To:** Isaiah Weedn <IWeedn@sheppardmullin.com>; Jennifer Hayes <jhayes@fhlawllp.com>; Michael Lauter <mlauter@sheppardmullin.com>; Ryan Witthans <RWitthans@fhlawllp.com>; William Healy <WJHealy7@gmail.com>
**Subject:** In re Brower

Jennifer:

We understand the Barn Court sale proceeds were being held in an escrow account until such time as released by agreement or court order or until February 19th.

What is status of those monies?

When will the Trustee honor the sale stipulation/order regarding payment of the CGS admin claim (now Healy)?

Enough time has passed.

If the Trustee does not intend to honor the stipulation/order and distribute the monies to at least address the stipulation/order by January 31st then we intend to ask Judge Hammond to simply order it.

B

--

William J. Healy, Esq.
Law Office of William J. Healy
748 Holbrook Pl
Sunnyvale, CA 94087
(p) 408-373-4680
wjhealy7@gmail.com

ATTACHMENT 4

**From:** Jennifer Hayes
**To:** William Healy
**Subject:** RE: In re Robert S. Brower, #15-50801
**Date:** Wednesday, October 21, 2020 12:12:00 PM
**Attachments:** 259 Stip re Plan Effectiveness.pdf

William,

Even if the lack of impairment were to mean that your claim accrues postconfirmation interest, which I would need to see authority for, the unpaid amount of the judgment ($102,757.30) at the federal judgment rate is a total of $4,042.50 in interest through today.

$3.46 (Daily Interest Amount) x 1169 (Accumulated Days) = **$4042.50** (Accumulated Interest Amount).

Furthermore, the plan is a new contract that supersedes prepetition contracts and you agreed pursuant to the stipulation (attached) to be paid out of the first dollars received by the liquidating trust.  There was no concession of an entitlement to interest and all rights were reserved.

If there is legal support for your arguments that you are entitled to interest, please provide those to me once you're back in the office.

Thank you,

Jennifer


Jennifer C. Hayes
Finestone Hayes LLP
456 Montgomery St., 20th Floor
San Francisco, CA 94104
415-616-0466
jhayes@fhlawllp.com
www.fhlawllp.com

**From:** William Healy <wjhealy7@gmail.com>
**Sent:** Wednesday, October 21, 2020 11:53 AM
**To:** Jennifer Hayes <jhayes@fhlawllp.com>
**Subject:** Re: In re Robert S. Brower, #15-50801

Jennifer:
    I am not in my office, but here is a quick response to your inquiry.
    With respect to interest on the claim we believe that the Final Fee Order is
a federal judgment and subject to interest at the federal rate pursuant to 28 USC 1961.
    Further, as the Plan and Disclosure Statement provided that the claim was not impaired, and thus
not entitled to vote, the provision of the claim, including the terms of the underlying fee agreement,

remain.

William J. Healy, Esq.
Law Office of William J. Healy
748 Holbrook Pl
Sunnyvale, CA 94087
(p) 408-373-4680
wjhealy7@gmail.com


On Wed, Oct 21, 2020 at 11:27 AM Jennifer Hayes <jhayes@fhlawllp.com> wrote:

> William,
>
> I wanted to start the process of understanding the factual and legal grounds for your claim of
> interest on your allowed Chapter 11 administrative claim.  Please let me know.
>
> Thank you,
>
> Jennifer
>
> Jennifer C. Hayes
> Finestone Hayes LLP
> 456 Montgomery St., 20th Floor
> San Francisco, CA 94104
> 415-616-0466
> jhayes@fhlawllp.com
> www.fhlawllp.com
>
> ---
>
> **From:** William Healy <wjhealy7@gmail.com>
> **Sent:** Saturday, September 19, 2020 10:48 AM
> **To:** Jennifer Hayes <jhayes@fhlawllp.com>
> **Cc:** Michael Lauter <mlauter@sheppardmullin.com>; William Healy <WJHealy7@gmail.com>
> **Subject:** In re Robert S. Brower, #15-50801
>
> Jennifer:
>    I reviewed the Application to Employ your firm.
>    Please advise the basis for the statement at page 2, lines 11-13 in the Application, specifically:
>        "After the Liquidating Trustee's review, and if the Liquidating Trustee requests, assist
>        the Trustee in objecting to claims, including but not limited to the claim of William J. Healy . .
> ."
>
> William J. Healy, Esq.
> Law Office of William J. Healy
> 748 Holbrook Pl

Sunnyvale, CA 94087
(p) 408-373-4680
wjhealy7@gmail.com

ATTACHMENT 5

LAW OFFICE OF WILLIAM J. HEALY

WILLIAM J. HEALY

748 HOLBROOK PL.
SUNNYVALE, CALIFORNIA 94087
TELEPHONE: (408) 373-4680
EMAIL: WJHEALY7@GMAIL.COM

August 4, 2020

Via Email fran.aiello@ctt.com

Francesca Aiello
Assistant Vice President/Escrow Officer
Chicago title Company
250 Bonifacio
Monterey, CA 93940

> Re:     In re Robert S. Brower, Sr.
>          U.S. Bankruptcy Court Case No.: 15-50801

> Re:     Campeau Goodsell Smith, L.C. v. Robert S. Brower, Sr., et al
>          Santa Clara County Superior  Court Case No.: 1-19-CV343003

> Re:     28088 Barn Court, Carmel, CA
>          Escrow No.: 5252000426

Dear Francesca:

Campeau Goodsell Smith, L.C. ("CGS") as assignor and me as assignee of an August 9, 2017 Final Order Allowing Fees and Expenses ("CGS Compensation Order"), beneficiaries of a confirmed Third Amended Combined Plan or Reorganization ("Chapter 11 Plan"), and parties to a February 20, 2020 Order Approving Stipulation ("Effective Date Order") and CGS as judgment creditor pursuant to a March 12, 2020 judgment against Robert S. Brower, Sr. (Santa Clara Superior Court Case No.: 1-19-cv-343003)(CGS State Court Judgment), a related, recorded Abstract of Judgment (Monterey Document#2020033712), and a July 20, 2020 Order Granting Motion For Assignment of Rights and Restraining Disposition of Right to Payment ("Assignment/Restraining Order") hereby submit, subject to the Chapter 11 Plan and related orders, the following demands for payment:

**CGS Compensation Order:**

> August 9, 2017 $102,757.50 plus daily interest from August 9, 2017 through
> August 4, 2020 for a total of $106,581.89 (as of August 4, 2020).

**CGS State Court Judgment:**

Marc h12, 2020 $149,795.82 plus daily interest from March 12, 2020 through August 4, 2020 (145 days/$41.04 interest/day) for a total of $155,746.61 (as of August 4, 2020)(said total is exclusive of post-judgment costs which have not been calculated and are not waived).

If you have any questions please call me.

Very truly yours,
LAW OFFICE OF WILLIAM J. HEALY
/s/ William J. Healy
William J. Healy